# Exhibit F

# CARTER LEDYARD MILBURN

Alan S. Lewis
Partner
lewis@clm.com

28 Liberty Street
New York, NY 10005
D / 212-238-8647

April 17, 2024

**<u>CONFIDENTIAL COMMUNICATION</u>**

**BY EMAIL**

Susan Davis, Esq.
Cohen, Weiss and Simon LLP
900 Third Avenue
New York, NY 10022-4869
(sdavis@cwsny.com)

Dear Ms. Davis:

  As you know, we represent Liang Wang, a member of Local 802 who, as you also know, has been the subject of recent media attention. I write to express concerns about comments attributed to the Union's President, Ms. Cutler, in a recent New York Times article, and more broadly, to provide you and Ms. Cutler with some context for those and related concerns and to request a meeting.

  Your firm and ours were co-counsel for the Union during the arbitration of its grievance relating to the Philharmonic's termination of Mr. Wang. Your partner, Bruce Simon, participated in the arbitration. I recognize that neither you nor Ms. Cutler (nor others who today occupy leadership positions in the Union) were involved in the 20-day long 2019 arbitration that favorably adjudicated the Union's grievance against the Philharmonic for terminating Mr. Wang. I hope that my letter will be helpful in providing factual information pertinent to the renewed attention being given to the matter.

  Before elaborating on facts particular to Mr. Wang, we join in the position and arguments that we understand are being expressed by Mr. Muckey's lawyers with regard to the Union's duty of fair representation to both musicians. This letter will therefore focus primarily on additional facts and concerns particular to Mr. Wang.

  An important fact, evidently not grasped by the reporter who wrote the recent New York Magazine article that triggered a tsunami of attention and misunderstanding, is that the reasons given by the Philharmonic for terminating Messrs. Wang and Muckey involved *different events* for each of them (that took place in different years, in different states). The arbitration decision underscores this point, noting at the outset that "[t]hese cases, while heard with the grievants and their counsel in attendance together in virtually

CARTER LEDYARD MILBURN

-2-

all sessions, *arise from wholly independent events*."[1] While *the New York Magazine article* created the misimpression that Cara Kizer's accusation involved allegations against both Mr. Muckey and Mr. Wang, *the arbitration record* makes it clear that this was not so, as to *Mr. Wang*. Indeed, after I made this non-controversial point during the arbitration, Kathleen McKenna, the employer's lead counsel, confirmed that the Philharmonic was not accusing Liang Wang of misconduct relating to Kizer/Vail: "Mr. Lewis is right. *We don't say that [Mr. Wang] engaged in misconduct in Vail."* Tr. 939:23-940:8 (emphasis added).

Despite the clarity of both the arbitration hearing record and the arbitrator's opinion on this point, the New York Magazine writer (who *claimed* to have reviewed the arbitration decision), created the misimpression in his article that Mr. Wang had been accused of complicity in an assault on Kizer in Vail. The article ignited a firestorm, not only for Muckey, but for Mr. Wang as well, despite the incontrovertible fact that the alleged drugging and assault of Kizer, which was the focus of the article, was *not something that Mr. Wang* was accused of, either when he was terminated by the Philharmonic in 2018 or in the resulting arbitration. Yet, not only has Muckey been required by the Philharmonic to step away from the orchestra—for an undetermined period—but so has Mr. Wang. In this respect, he is collateral damage that resulted from a sloppy magazine story.

Regrettably, the public comments made to date by Ms. Cutler reflect a failure to understand the actual facts of the arbitration and are inconsistent with the Union's fidelity to its obligation of fair representation *owed to Mr. Wang*. In particular, I observe that Ms. Cutler is quoted in Monday's New York Times as *endorsing* the Philharmonic's act of keeping Mr. Liang off stage as a "*good* first step[]." According to the article, the explanation given by Ms. Cutler for siding with the employer *over the union member* was her reaction to "what was in the story." Respectfully, when a unionized employer prohibits its tenured employee from appearing for work merely based on allegations in a magazine piece about contentions that were already

---

[1] The grievance against Liang Wang concerned an allegation relating to a sexual encounter in 2006 between Mr. Wang and a friend, who was not then affiliated with the Philharmonic. The friend/complainant testified in the arbitration to having had a long term (albeit occasional) consensual sexual relationship with Mr. Wang for several years. In fact, on the very next day after the alleged assault in 2006, she acknowledged that she called Mr. Wang, asked to stay at his apartment, and that when there, *voluntarily* engaged in sexual activity with him. This letter does not otherwise concern this matter because the arbitration decision fully explains why it was neither clear nor convincing that such conduct amounted to any misconduct, that matter has not been the subject of recent discussion in the media or otherwise, and the individual in question is entitled to the confidentiality that she was promised. Sadly, she was thrust into the arbitration because the interview conducted of her by Barbara Jones was not thorough enough to uncover the many reasons why Mr. Wang's relationship with that person did not amount to misconduct. At the time of the arbitration and continuing through today, Mr. Wang has not been the subject of any complaints of sexual misconduct or other such behavior during his nearly 20 years of service to the Philharmonic.

CARTER LEDYARD MILBURN                                                                    -3-

adjudicated in a binding arbitration hearing, the Union should stand up for the rights of its member, the worker, rather than assume the guilt of a Union member based on reading a magazine article. The Union does a disservice to its role of protecting worker rights by endorsing the employer's act of caving to public pressure triggered by unfavorable media. The fact that here, the public pressure is grounded in incorrect facts as described by a reporter who *did not even have access* to the confidential hearing record he purported to report upon, makes the Union's endorsement of the employer's action based on that story an even more egregious failure to fulfill its solemn obligation to advocate for the due process and contractual rights of its member—Mr. Wang.[2] At minimum, Mr. Wang properly expects better of the Union than its President's endorsement of further collateral damage to Mr. Wang- through unsound reactive decisions of the Philharmonic.

It should go without saying that it is wrong for a union to credit an accusation against its member, *simply because it was made*—and this applies no matter what the nature *of the accusation*. By endorsing Liang's Wang's suspension in the statement made to the New York Times, based on a misimpression gained from a flawed magazine article – and about a matter in which the Union has both *full access to the actual facts* and a *clear legal duty to Mr. Wang* as a union member - the Union has done a grave disservice to Mr. Wang and his reputation.

I ask to meet with you and/or Ms. Cutler as immediately as is possible, in person or remotely. I trust that when the current Union leadership soon reconsiders the matter and obtains a full and accurate understanding of the actual facts as they pertain to Mr. Wang, the Union will stand up for Mr. Wang and support his request to immediately return to full time duty with the Philharmonic.

                                                                Sincerely,

                                                                *[signature]*

                                                                Alan S. Lewis

ASL:bp

---

[2] Because Mr. Wang was *not* accused of misconduct directed *at another Union member*, in his case, the Union's duty of fair representation is owed solely and exclusively to him.

Carter Ledyard & Milburn LLP / clm.com

11291186.4