UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LIANG WANG,<br><br>Plaintiff,<br><br>vs.<br><br>THE PHILHARMONIC SYMPHONY SOCIETY OF NEW YORK, INC. and ASSOCIATED MUSICIANS OF GREATER NEW YORK, LOCAL 802, AMERICAN FEDERATION OF MUSICIANS,<br><br>Defendants. | Case No. 1:24-cv-03356 (AS) (RWL)<br>[Rel: Case No. 1:24-cv-03348 (AS)(RWL)] |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF DEFENDANT ASSOCIATED MUSICIANS OF GREATER NEW YORK, LOCAL 802, AMERICAN FEDERATION OF MUSICIANS**

Susan Davis
Olivia R. Singer
COHEN, WEISS and SIMON LLP
909 Third Avenue, 12th Floor
New York, New York 10022-4869
Tel: (212) 563-4100
sdavis@cwsny.com
*Attorneys for Defendant Associated Musicians of Greater New York, Local 802, American Federation of Musicians*

# TABLE OF CONTENTS

**Pages(s)**

PRELIMINARY STATEMENT ........ 1

STATEMENT OF FACTS ........ 3

The Parties ........ 3

The Events Leading up to the 2020 Arbitration Award ........ 3

The 2024 *Vulture* Article ........ 4

The Events Following the *Vulture* Article ........ 4

Wang's Communications with Local 802 ........ 5

ARGUMENT ........ 6

I. STANDARD OF REVIEW ........ 6

II. WANG FAILS TO STATE A HYBRID SECTION 301/DUTY OF FAIR REPRESENTATION CLAIM. ........ 7

A. Wang Fails to Plausibly Allege a Breach of the Collective Bargaining Agreement. ........ 7

B. Wang Fails to State a Claim for Breach of the Duty of Fair Representation ........ 8

C. Wang Fails to Allege a Plausible Causal Connection Between Local 802's Alleged Misconduct and Any Damages Incurred. ........ 13

III. WANG'S STATE LAW CLAIMS ARE NOT COGNIZABLE. ........ 14

A. The Duty of Fair Representation Preempts Wang's Prima Facie Tort Claim. ........ 14

B. Section 301 of the LMRA Preempts Wang's State Law Claims. ........ 15

C. Wang's State Law Claims Must Be Dismissed Under *Martin v. Curran*. ........ 17

D. Wang Fails to State a Sex Discrimination Claim Under the NYSHRL and NYCHRL. ........ 18

E. Wang Fails to State a Prima Facie Tort Claim. ........ 19

CONCLUSION ........ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Ackley v. W. Conf. of Teamsters*,
958 F.2d 1463 (9th Cir. 1992) ....................13

*Agosto v. Corr. Offs. Benevolent Ass'n*,
107 F. Supp. 2d 294 (S.D.N.Y. 2000) ....................15

*Air Line Pilots Ass'n, Int'l v. O'Neill*,
499 U.S. 65 (1991) ....................8, 9, 12

*Allis-Chalmers Corp. v. Lueck*,
471 U.S. 202 (1985) ....................14, 15

*Alston v. Int'l Ass'n of Firefighters, Loc. 950*,
998 F.3d 11 (1st Cir. 2021) ....................11

*Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. v. Lockridge*,
403 U.S. 274 (1971) ....................9, 12

*Anderson v. Aset Corp.*,
416 F.3d 170 (2d Cir. 2005) ....................16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................6

*Associated Musicians of Greater N.Y., Loc. 802 v. League of Am. Theatres & Producers, Inc.*,
No. 05-CV-2769 (KMK), 2006 WL 3039995 (S.D.N.Y. Oct. 25, 2006) ....................17

*Barr v. United Parcel Serv., Inc.*,
868 F.2d 36 (2d Cir. 1989) ....................11

*Barrett v. Loc. 804 Union Bhd. of Teamsters (IBT)*,
No. 22-CV-06925 (NCM)(LB), 2024 WL 1345218 (E.D.N.Y. Mar. 28, 2024) ....................7

*Baskin v. Hawley*,
807 F.2d 1120 (2d Cir. 1986) ....................14

*Batson v. Rim San Antonio Acquisition, LCC*,
No. 15-cv-07576 (ALC), 2016 WL 6901312 (S.D.N.Y. Nov. 22, 2016) ....................7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................6

*BIW Deceived v. Loc. S6*,
132 F.3d 824 (1st Cir. 1997)....................15

*Canady v. Union 1199*,
253 F. Supp. 3d 547 (W.D.N.Y. 2017), *aff'd*, 736 F. App'x 259 (2d Cir. 2018) ....................19

*Cappelli v. Jack Resnick & Sons, Inc.*,
No. 1:13–cv–4381–GHW, 2014 WL 4188084 (S.D.N.Y. Aug. 22, 2014) ....................9

*Cestaro v. Prohaska*,
669 F. Supp. 3d 276 (S.D.N.Y. 2023) ....................19

*Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*,
494 U.S. 558 (1990) ....................7

*Cortec Indus., Inc. v. Sum Holding L.P.*,
949 F.2d 42 (2d Cir. 1991) ....................7

*Cruz v. UAW Union Loc. 2300*,
No. 3:18-CV-0048 (GTS/ML), 2019 WL 3239843 (N.D.N.Y. July 18, 2019)....................18

*Curiano v. Suozzi*,
469 N.E.2d 1324 (N.Y. 1984)....................20

*Douds v. Associated Musicians of Greater N.Y., Loc. 802*,
123 F. Supp. 798 (S.D.N.Y. 1954)....................17

*Dougherty v. Am. Tel. & Tel. Co.*,
902 F.2d 201 (2d Cir. 1990) ....................16

*Feldleit v. Long Island Rail Rd.*,
723 F. Supp. 892 (E.D.N.Y. 1989)....................10

*Ferrara v. Leticia, Inc.*,
No. 09–CV–3032 (RRM)(CLP), 2012 WL 4344164 (E.D.N.Y. Sept. 21, 2012)....................16

*George v. Nw. Airlines, Inc.*,
351 F. Supp. 2d 310 (E.D. Pa. 2005)....................10

*Golden v. Loc. 55 of Int'l Ass'n of Firefighters*,
633 F.2d 817 (9th Cir. 1980) ....................11

*Good Samaritan Med. Ctr. v. NLRB*,
858 F.3d 617 (1st Cir. 2017)....................11

*Goodman v. Port Auth. of N.Y. & N.J.*,
No. 10 Civ. 8352, 2011 WL 3423800 (S.D.N.Y. Aug. 4, 2011) ....................16, 17

*Griffin v. Facebook*,
No. 19-CV-7821 (CS), 2020 WL 5645986 (S.D.N.Y. Sept. 21, 2020) ....................................7

*Hardwick v. Sunbelt Rentals, Inc.*,
719 F. Supp. 2d 994 (C.D. Ill. 2010), *aff'd*, 430 F. App'x 536 (7th Cir. 2011)......................11

*Harisch v. Goldberg*,
No. 14-cv-9503 (KBF), 2016 WL 1181711 (S.D.N.Y. March 25, 2016) ..............................20

*Humphrey v. Moore*,
375 U.S. 335 (1964) ...............................................................................................................11

*I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*,
936 F.2d 759 (2d Cir. 1991) .....................................................................................................7

*IBEW v. Hechler*,
481 U.S. 851 (1987) ...............................................................................................................14

*Jiggetts v. Loc. 32BJ, SEIU*,
No. 10 Civ. 9082(DAB)(JCF), 2011 WL 4056312 (S.D.N.Y. Aug. 10, 2011)........................7

*Johnson v. UFCW, Int'l Union Loc. No. 23*,
828 F.2d 961 (3d Cir. 1987) ...................................................................................................15

*Joseph v. Leavitt*,
465 F.3d 87 (2d Cir. 2006) .....................................................................................................18

*Loc. 174, Teamsters v. Lucas Flour Co.*,
369 U.S. 95 (1962) .................................................................................................................15

*Marquez v. Screen Actors Guild*,
525 U.S. 33 (1998) ..............................................................................................................9, 11

*Martinez v. Staten Island Univ. Hosp.*,
No. 19-CV-02672 (CBA)(RER), 2020 WL 13837813 (E.D.N.Y. June 19, 2020)....................................................................................................................................16

*Novick v. Village of Wappingers Falls*,
376 F. Supp. 3d 318 (S.D.N.Y. 2019) ....................................................................................19

*Palladino v. CNY Centro, Inc.*,
23 N.Y.3d 140 (2014)..............................................................................................................17

*Performing Arts Ctr. of Suffolk Cnty. v. Actor's Equity Ass'n*,
No. CV 20-2531 (JS)(AYS), 2022 WL 16755284 (E.D.N.Y. Aug. 25, 2022).......................17

*Peters v. N.Y. Hotel & Motel Trades Council*,
No. 86 Civ. 4019 (WCC), 1986 WL 11195 (S.D.N.Y. Sept. 30, 1986).................................15

*Peterson v. Air Line Pilots Ass'n, Int'l*,
759 F.2d 1161 (4th Cir. 1985) ....................15

*Price v. UAW*,
795 F.2d 1128 (2d Cir. 1986)....................12

*R.M. Perlman Inc. v. N.Y. Coat, Suit, Dresses, Rainwear & Allied Workers' Union Loc. 89-22-1*,
789 F. Supp. 127 (S.D.N.Y. 1992)....................17

*Rael v. Smith's Food & Drug Ctrs., Inc.*,
No. 1:15-CV-00983-SCY/KK, 2016 WL 10179339 (D.N.M. Sept. 19, 2016), *aff'd*, 712 F. App'x 802 (10th Cir. 2017) ....................16

*Rakestraw v. United Airlines, Inc.*,
981 F.2d 1524 (7th Cir. 1992) ....................13

*Richardson v. United Steelworkers*,
864 F.2d 1162 (5th Cir. 1989) ....................15

*Rodriguez v. Verizon Telecom*,
No. 13-cv-6969 (PKC)(DCF), 2014 WL 6807834 (S.D.N.Y. Dec. 3, 2014)....................19

*Rothman v. Gregor*,
220 F.3d 81 (2d Cir. 2000) ....................7

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*,
75 F.3d 801 (2d Cir. 1996) ....................7

*Sanozky v. Int'l Ass'n of Machinists*,
415 F.3d 279 (2d Cir. 2005) ....................11

*Scales v. N.Y. Hotel & Motel Trades Council, Loc. 6*,
No. 21 Civ. 8142 (JPC), 2023 WL 1779617 (S.D.N.Y. Feb. 6, 2023) ....................10

*Sim v. N.Y. Mailers' Union No. 6*,
166 F.3d 465 (2d Cir. 1999) ....................13

*Spellacy v. Air Line Pilots Ass'n, Int'l*,
156 F.3d 120 (2d Cir. 1998) ....................9, 12, 13

*Sullivan v. Gelb*,
No. 1:23-cv-5194-GHW, 2024 WL 2702106 (S.D.N.Y. May 23, 2024)....................16

*Textile Workers Union v. Lincoln Mills*,
353 U.S. 448 (1957) ....................15

*United Steelworkers v. Rawson*,
495 U.S. 362 (1990) .....9

*Ustad v. Int'l Bhd. of Teamsters, Loc. 747*,
No. 10-CV-3894 (FB)(RER), 2014 WL 1311573 (E.D.N.Y. Apr. 01, 2014),
*aff'd*, 607 F. App'x 67 (2d Cir. 2015) .....10

*Vaca v. Sipes*,
386 U.S. 171 (1967) .....9, 14

*Walsh v. IBEW Loc. 503*,
62 F. Supp. 3d 300 (S.D.N.Y. 2014) .....15

*Walsh v. N.Y.C. Hous. Auth.*,
828 F.3d 70 (2d Cir. 2016) .....18

*Wang v. Sussman*,
No. 1:24-cv-03987 (S.D.N.Y. filed May 23, 2024) .....4, 14

*Watkins v. Town of Webster*,
592 F. Supp. 3d 96 (W.D.N.Y. 2022) .....20

*Whitehurst v. 1199SEIU United Healthcare Workers E.*,
928 F.3d 201 (2d Cir. 2019) .....16

*Wolfe v. Gen. Elec. Co.*,
No. CIV 14-0088.....16

*Zeuner v. Suntrust Bank Inc.*,
181 F. Supp. 3d 214 (S.D.N.Y. 2016) .....7

**Statutes**

Labor Management Relations Act § 301, 29 U.S.C. § 185 .....2, 15, 16

New York City Human Rights Law .....2, 16, 18, 19

New York General Association Law § 13 .....17

New York Human Rights Law .....2, 16, 18

**Rules**

Federal Rule of Civil Procedure 12 .....1, 6

**PRELIMINARY STATEMENT**

Defendant Associated Musicians of Greater New York, Local 802, American Federation of Musicians ("Local 802" or the "Union") submits this memorandum of law in support of its motion to dismiss Plaintiff's Complaint ("Compl.") [Dkt. No. 1] pursuant to Federal Rule of Civil Procedure 12(b)(6).

Local 802 is a labor union that represents musicians employed by the New York Philharmonic (the "Philharmonic"). Plaintiff Liang Wang ("Wang") is the Principal Oboe for the Philharmonic. In 2018, following a lengthy investigation by former federal judge Barbara Jones, the Philharmonic terminated Wang (and his colleague, Matthew Muckey ("Muckey")) in response to allegations against both musicians of sexual misconduct. Local 802 filed a grievance challenging the terminations and, in 2020, an arbitrator issued an award ordering that they be reinstated with back pay. It is undisputed that the Philharmonic complied fully with the award.

In April 2024, *Vulture*, an online *New York* magazine website, published an article discussing the events leading up to Wang's and Muckey's terminations. The article described in detail Muckey's alleged rape of a fellow musician that occurred in Vail, Colorado, and the role that Wang allegedly played prior to the rape. Following the release of this article, members of the New York Philharmonic Orchestra (the "Orchestra") expressed significant concern regarding the sexual misconduct allegations involving their fellow musicians. The Philharmonic temporarily took the two musicians off the rehearsal and performance schedule while continuing their full pay and benefits. It then retained an investigator to determine whether there were any other instances of sexual misconduct by any musician in the Orchestra and commissioned an investigation into the workplace culture at the Philharmonic.

Shortly thereafter, counsel for Wang requested that Local 802 take action to enforce the 2020 arbitration award and return him to the schedule. Local 802 did not decline to

do so, but instead notified Wang's counsel that it would await the results of the investigation before determining what action to take on his behalf.

Wang brings the present action against both the Philharmonic and Local 802. In his Complaint, Wang challenges the Philharmonic's decision to take him off the schedule during the pendency of its investigation and Local 802's decision to await the results of the investigation before determining what action to take. Wang, while conceding that he continues to receive full contractual pay and benefits, contends that the Philharmonic's failure to assign him work violates the 2020 arbitration award and the collective bargaining agreement ("CBA").

Wang asserts four claims against Local 802: 1) a hybrid claim under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 ("§ 301") for breach of the CBA and the Union's duty of fair representation ("DFR") (First Cause of Action), 2) a New York Human Rights Law ("NYSHRL") discrimination claim (Sixth Cause of Action), 3) a New York City Human Rights Law ("NYCHRL") discrimination claim (Eighth Cause of Action), and 4) a prima facie tort claim (Tenth Cause of Action).

Wang's § 301/DFR claim is twofold. He claims first that the Union breached its DFR by refusing to file an action to enforce the 2020 arbitration award and, additionally, that a statement made by Local 802's President that appeared in a *New York Times* article constituted a separate breach of the DFR. As explained in Part II, Wang's § 301/DFR claim should be dismissed because Wang: 1) fails to plausibly allege a breach of the CBA, 2) fails to plausibly allege arbitrary, discriminatory, or bad faith conduct by Local 802, and 3) fails to plausibly assert a causal connection between Local 802's alleged misconduct and any damages alleged. As discussed in Part III, Wang's state law claims fail because: 1) his prima facie tort claim is preempted by the DFR, 2) they are preempted by § 301, 3) Wang fails to allege that every

member of Local 802 ratified the Union's actions, an essential element of these claims under *Martin v. Curran*, and 4) he fails to plausibly allege the essential elements of these claims.

**STATEMENT OF FACTS**

The Parties

Local 802 is a labor union that represents professional musicians, including musicians employed by the Philharmonic. Compl. ¶20. The Philharmonic is a premiere symphony orchestra based in New York City. *Id.* ¶2. Local 802 and the Philharmonic are parties to a CBA. *Id.* ¶1; *see also* June 5, 2024 Declaration of Olivia R. Singer ("Singer Decl.") Ex. A. Wang, the Principal Oboe at the Philharmonic, has held a tenured position in the Orchestra since 2006. Compl. ¶¶19, 89.

The Events Leading up to the 2020 Arbitration Award

In 2010, a probationary player for the Philharmonic, Cara Kizer ("Kizer"), accused Muckey of raping her during an Orchestra trip to Vail, Colorado. *Id*. ¶¶15, 25. According to Kizer, during the hours immediately before the alleged rape, Wang provided her with a drink before she blacked out. *Id.*; Singer Decl. Ex. B. Wang admits that he was with Muckey and Kizer but denies providing Kizer a drink. Compl. ¶¶15, 25; Singer Decl. Ex. B. In 2018, the Philharmonic undertook an investigation into Muckey's alleged rape of Kizer and separate alleged sexual misconduct by Wang. Compl ¶28; Singer Decl. Ex. B. At the conclusion of the investigation, the Philharmonic terminated both musicians. Compl. ¶30. Wang contends that his termination was for "different events at a different time (several years before 2010)." *Id.* ¶30 n.2.

Local 802 proceeded to arbitration on behalf of both Wang and Muckey. *Id.* ¶34. On April 4, 2020, the arbitrator issued an arbitration award (the "Award") sustaining Local 802's

grievance and ordering the Philharmonic to reinstate Wang and Muckey. *Id*. ¶35. The Philharmonic then "fully reinstated" Wang and Muckey with backpay. *Id.* ¶36.

The 2024 *Vulture* Article

On April 12, 2024 (the Complaint erroneously states April 11), an article appeared on *Vulture*, a *New York* magazine website. *Id*. ¶37; Singer Decl. Ex. B. In the article, entitled "A Hidden Sexual-Assault Scandal at the New York Philharmonic," Kizer describes how, after a concert in Vail, she "agreed to join Muckey and Wang for a glass of wine at Muckey's condo." Singer Decl. Ex. B. She alleges that Muckey and Wang got into a hot tub and tried to persuade her to join them, but she refused. *Id.* She also claims that "Wang brought her a glass of red wine" and that she "has no memories of what happened after she drank from that glass." *Id.* Kizer contends that later that evening, Muckey sexually assaulted her. *Id.*

Although Wang recently filed a defamation lawsuit against the reporter and publisher of the *Vulture* article, *Wang v. Sussman*, No. 1:24-cv-03987 (S.D.N.Y. filed May 23, 2024), the resolution of that conflict is irrelevant to this case. Indeed, Wang's defamation lawsuit, seeking $100 million in damages, alleges that the *Vulture* article, not Local 802's conduct, caused his alleged reputational harm and damages.

The Events Following the *Vulture* Article

Following the publication of the *Vulture* article, as a result of concerns expressed by members of the Orchestra, *see* Singer Decl. Ex. D, the Philharmonic advised Wang and Muckey that while the two musicians would continue to be paid in full, they temporarily would not be at rehearsals or performances. Compl. ¶¶41, 54; Singer Decl. Ex. G. Although Wang characterizes the Philharmonic's action as a "suspension" (Compl. ¶6), he concedes that he is being paid in full and has suffered no monetary loss. *Id.* ¶¶6, 54, 59, 90.

On April 15, 2024, the *New York Times* published an article concerning the *Vulture* piece. *Id.* ¶¶44–47, Singer Decl. Ex. E. The article quoted the following statement made by the Philharmonic Orchestra Committee issued shortly after the *Vulture* piece: "[It is] the overwhelming sentiment of the orchestra that we believe Cara [and that] we don't believe these are isolated incidents involving Matt Muckey and Liang Wang." Singer Decl. Ex. E. The Committee criticized the Philharmonic's practice of "not taking musician complaints seriously so musicians often do not feel safe in raising accusations of sexual harassment and assault." *Id.* The Committee then called on the Philharmonic to take action to provide a safe workplace. *Id.*

The *New York Times* article also contained a statement from the Local 802 President in response to these events: "[T]he decision to keep Mr. Wang and Mr. Muckey offstage for the time being 'are good first steps but they can't be the last. . . . As a woman, a musician, and a new union president, I am horrified by what was in the story and we are committing the full resources of Local 802 to erase the culture of complicity that has raged at the N.Y. Philharmonic for too long.'" Compl. ¶47; Singer Decl. Ex. E.

On April 18, 2024, the Philharmonic announced publicly that it was undertaking an independent investigation into its workplace culture. Compl. ¶¶49, 97, 130, 142; Singer Decl. Ex. C. It also had retained an investigator to determine whether there were any additional allegations against any musician in the Orchestra of sexual misconduct. Singer Decl. Exs. C, I.

<u>Wang's Communications with Local 802</u>

On April 17, 2024, counsel for Wang wrote Local 802's counsel concerning the Philharmonic's decision to not assign Wang work "for the time being." Compl. ¶63; Singer Decl. Ex. F. Wang's counsel observed that the *Vulture* article had "triggered a tsunami of attention and misunderstanding" and "ignited a firestorm." Singer Decl. Ex. F. On April 18, Local 802's counsel responded that the "Philharmonic advised Local 802 that Mr. Wang is being

paid in full" and that if Wang objected to the Philharmonic's action, "the proper course is for him to reach out to the Union, which he has not done." Singer Decl. Ex G. On April 19, counsel for Wang again wrote to counsel for Local 802, claiming that the Award had been violated and demanding that Local 802 immediately seek Wang's "reinstatement to his position." Compl. ¶63; Singer Decl. Ex. H. On April 26, Local 802's counsel explained that the Philharmonic had "fully complied with the [A]ward more than four years ago" and that the Award "does not give Mr. Wang a guarantee of lifetime employment regardless of whether new allegations of wrongdoing or different circumstances arise." Compl. ¶63; Singer Decl. Ex. I. Local 802's counsel further noted that the Philharmonic had engaged an investigator "to determine whether there were any new or different allegations of sexual misconduct by any members of the Orchestra," and that "Local 802 has determined to await the outcome of that investigation before determining how to proceed . . . ." Singer Decl. Ex. I. The instant lawsuit followed.

## ARGUMENT

### I. STANDARD OF REVIEW

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff's claims must be more than just "conceivable" or "speculative." *Twombly*, 550 U.S. at 555, 570. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must be dismissed if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* at 679.

On a Rule 12(b)(6) motion, the court may consider documents whose authenticity is not in dispute which, although not attached to the complaint, a plaintiff refers to or relies on in

the complaint. *See Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *see also Zeuner v. Suntrust Bank Inc.*, 181 F. Supp. 3d 214, 218–19 (S.D.N.Y. 2016). Additionally, if a plaintiff partially quotes or attaches documents integral to a complaint, the court may "consider the full text of those documents in ruling on [a] motion to dismiss." *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 809 (2d Cir. 1996); *see also I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co*., 936 F.2d 759, 762 (2d Cir. 1991); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991); *Griffin v. Facebook*, No. 19-CV-7821 (CS), 2020 WL 5645986, at *3 (S.D.N.Y. Sept. 21, 2020). Moreover, if a document incorporated by reference in a complaint contradicts the plaintiff's conclusory allegations in the complaint, the court is not required to accept the plaintiff's contradictory allegations as true. *See Batson v. Rim San Antonio Acquisition, LCC*, No. 15-cv-07576 (ALC), 2016 WL 6901312, at *3 (S.D.N.Y. Nov. 22, 2016) (citing *I. Meyer Pincus*, 936 F.2d at 762).

## II. WANG FAILS TO STATE A HYBRID SECTION 301/DUTY OF FAIR REPRESENTATION CLAIM.

### A. Wang Fails to Plausibly Allege a Breach of the Collective Bargaining Agreement.

In order to prevail on a § 301/DFR claim, a plaintiff must establish *both* that the employer breached the CBA *and* that the union violated its DFR. *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 564 (1990); *see also Barrett v. Loc. 804 Union Bhd. of Teamsters (IBT),* No. 22-CV-06925 (NCM)(LB), 2024 WL 1345218, at *4 (E.D.N.Y. Mar. 28, 2024). As the Supreme Court explained in *DelCostello v. International Brotherhood of Teamsters*, claims for breach of a CBA and the DFR are "inextricably interdependent." 462 U.S. 151, 164–65 (1983) (quoting *United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 66 (1981) (Stewart, J., concurring in the judgment)). A failure to prevail on a breach of contract claim necessarily results in a failure to prevail on a DFR claim. *Id.*; *see, e.g., Jiggetts v. Loc. 32BJ,*

*SEIU*, No. 10 Civ. 9082(DAB)(JCF), 2011 WL 4056312, at *6 (S.D.N.Y. Aug. 10, 2011) (dismissing § 301/DFR claim where plaintiff failed to allege any actions that violated the CBA), *report and recommendation adopted*, No. 10 Civ. 9082 (DAB), 2011 WL 4072033 (S.D.N.Y. Sept. 13, 2011).

Here, Wang alleges that the Philharmonic breached the CBA and the Award by not assigning him work pending the results of its investigation. Compl. ¶¶6, 50, 79. The Award, however, only required the Philharmonic to reinstate Wang with backpay and benefits in 2020. *Id.* ¶35. As Wang concedes, the Philharmonic fully complied with the Award at the time of its issuance. *Id.* ¶36. The Award nowhere guarantees Wang the right to rehearse or perform indefinitely regardless of the occurrence of subsequent events.

Additionally, nothing in the CBA requires the Philharmonic to schedule a musician to rehearse or perform. Rather, the CBA only mandates that members of the Orchestra be "employed," *i.e.*, paid, for 52 weeks each year. Singer Decl. Ex. A, 1 (Article III.A). The CBA does not equate employment with assignment to any particular performance schedule. Additionally. although it sets a *maximum* number of required services per "basic work week," *id*. at 5 (Article VI.A), it does not set a minimum number of concerts or rehearsals for each musician. Moreover, the availability of "vacation" under the CBA does not, as Wang asserts, create an obligation to provide performance opportunities, but simply ensures guaranteed time periods when musicians may not be required to perform. *Id.* at 2 (Article III.C). Thus, because Wang is being paid in full, no breach of the CBA has occurred.

B. Wang Fails to State a Claim for Breach of the Duty of Fair Representation

Dismissal of Wang's § 301/DFR claim is also warranted because Wang fails to plead a cognizable claim for breach of the DFR. Courts afford unions "wide latitude" in making decisions, including those involving whether to pursue a particular grievance. *Air Line Pilots*

*Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 78 (1991); *Vaca v. Sipes*, 386 U.S. 171, 191–93 (1967); *see also Cappelli v. Jack Resnick & Sons, Inc*., No. 1:13–cv–4381–GHW, 2014 WL 4188084, at *6 (S.D.N.Y. Aug. 22, 2014) (dismissing breach of DFR claim where union reasonably determined that plaintiff's claims lacked merit). Thus, a union breaches the DFR only if its conduct was discriminatory, in bad faith, or "so far outside a 'wide range of reasonableness'" as to be "wholly 'irrational' or 'arbitrary.'" *O'Neill*, 499 U.S. at 78 (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953)).

Here, Wang claims that Local 802 breached its DFR by refusing to seek enforcement of the Award and by the Local 802 President's statement that was quoted in the *New York Times* article. Compl. ¶¶81–82. Under established DFR precedent, Wang must set forth a plausible claim that Local 802: (1) for the "arbitrary" DFR prong, acted without any "rational basis," *Marquez v. Screen Actors Guild*, 525 U.S. 33, 45–46 (1998) (union is accorded "room to make discretionary decisions"), (2) for the "discriminatory" DFR prong, acted "invidious[ly]," *O'Neill,* 499 U.S. at 81, with discrimination that was "intentional, severe, and unrelated to legitimate union objectives, " *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. v. Lockridge*, 403 U.S. 274, 301 (1971), or (3) for the "bad faith" DFR prong, acted fraudulently or dishonestly so as to intentionally mislead the plaintiff, as demonstrated by "substantial evidence of fraud, deceitful action or dishonest conduct," *id.* at 299 (quoting *Humphrey v. Moore*, 375 U.S. 335, 348 (1964)); *see also Spellacy v. Air Line Pilots Ass'n, Int'l*, 156 F.3d 120, 126 (2d Cir. 1998). Evidence that a union made a mistake in judgment is insufficient to establish a DFR breach. *United Steelworkers v. Rawson*, 495 U.S. 362, 372–73, 376 (1990).

Here, Local 802 has not declined to act on Wang's behalf. Rather, it informed him that it intends to await the results of the Philharmonic's investigation before determining how to proceed. Compl. ¶12; *see also* Singer Decl. Ex. I. A union does not breach its DFR by awaiting the results of an investigation before filing a grievance. *See, e.g.*, *Ustad v. Int'l Bhd. of Teamsters, Loc. 747,* No. 10-CV-3894 (FB)(RER), 2014 WL 1311573 (E.D.N.Y. Apr. 01, 2014) (no DFR breach where union filed grievance only after employee was terminated, and not while he was on paid leave pending investigation), *aff'd,* 607 F. App'x 67 (2d Cir. 2015); *Feldleit v. Long Island Rail Rd*., 723 F. Supp. 892 (E.D.N.Y. 1989) (no DFR breach where union filed grievance only after employee accused of sexual harassment was demoted, and not while he was on paid leave pending investigation); *George v. Nw. Airlines, Inc*., 351 F. Supp. 2d 310 (E.D. Pa. 2005) (no DFR breach where union did not file grievance while employer conducted investigation, noting that plaintiffs "were on paid leave . . . throughout the investigation" and thus suffered no harm"). To date, Wang continues to receive his salary and benefits and has experienced no adverse employment action. Furthermore, as detailed *supra* at 8, because there is no requirement under the CBA that the Philharmonic schedule Wang to rehearse and perform, Local 802 has reasonably determined that there are no current contractual issues ripe for adjudication. *See Scales v. N.Y. Hotel & Motel Trades Council, Loc. 6,* No. 21 Civ. 8142 (JPC), 2023 WL 1779617, at *7 (S.D.N.Y. Feb. 6, 2023) (union's determination not to pursue a grievance, "correct or not," did not rise to level of arbitrariness where it reflected a "reasonable interpretation of the MOA").

Next, to the extent Wang's DFR claim rests on Local 802's refusal to seek enforcement of the Award, as explained in Part II.A, Wang has failed to allege any plausible violation of the Award. He certainly does not allege, nor could he, that the Award, which

ordered reinstatement in 2020, guaranteed permanent employment regardless of the occurrence of subsequent events. A union does not violate the DFR when it has a reasonable basis not to seek enforcement of an arbitration award. *See, e.g.*, *Sanozky v. Int'l Ass'n of Machinists,* 415 F.3d 279, 283 (2d Cir. 2005); *Hardwick v. Sunbelt Rentals, Inc.*, 719 F. Supp. 2d 994, 1005 (C.D. Ill. 2010), *aff'd*, 430 F. App'x 536 (7th Cir. 2011); *Golden v. Loc. 55 of Int'l Ass'n of Firefighters*, 633 F.2d 817, 822–23 (9th Cir. 1980). Such is the case here, as the Philharmonic fully complied with the Award at the time of issuance and Local 802 reasonably determined that it was not appropriate to seek enforcement four years later. *See* Singer Decl. Ex. I.

Finally, Wang has failed to credibly allege that the Local 802 President's statement in the *New York Times* violated the Union's DFR. Viewed in the context of the Orchestra members' stated concerns about other instances of sexual misconduct by Wang (and Muckey), as well as their concerns about the Philharmonic's non-responsiveness when dealing with allegations of sexual misconduct, the statement can hardly be viewed as "arbitrary" or "without rational basis." *Marquez*, 525 U.S. at 46. It is well established that a union may balance competing interests within the bargaining unit without breaching its DFR. *See Humphrey,* 375 U.S. at 349–50; *Barr v. United Parcel Serv., Inc.*, 868 F.2d 36, 43–44 (2d Cir. 1989). Faced with Wang's alleged facilitation of the rape of a colleague and the bargaining unit's understandable concerns about sexual violence amongst its members, the President's statement reasonably balanced the competing interests of bargaining unit members. *See Good Samaritan Med. Ctr. v. NLRB*, 858 F.3d 617, 641–42 (1st Cir. 2017) (union may reasonably consider one employee's mistreatment of another as it is relevant to its representation of its constituency as a whole); *Alston v. Int'l Ass'n of Firefighters, Loc. 950*, 998 F.3d 11, 27 (1st Cir.

2021) (union had an "obligation both to protect its members from perceived threats to their safety and to ensure that any discipline. . . comported with the CBA").

Additionally, as the statement did not malign or disparage Wang in any way, it cannot credibly be considered "invidious," *O'Neill*, 499 U.S. at 81, "intentional, severe, and unrelated to legitimate union objectives," *Lockridge*, 403 U.S. at 301, or "fraud, dishonesty, and other intentionally misleading conduct," *Spellacy*, 156 F.3d at 126. The President certainly was not quoted as saying that the temporary paid leave was a "good first step" towards Wang's termination. Rather, read in the context of the entire quote, she commended the Philharmonic for beginning to take steps to address a culture of sexism and harassment in the Orchestra. Such a statement, particularly in light of today's #MeToo climate and the concerns expressed by the Orchestra, can hardly be considered arbitrary, discriminatory, or in bad faith.

Moreover, the statement did not even implicate the DFR because it did not involve the Union's representation of Wang with his employer: "[T]he duty of fair representation is co-extensive only with the power of exclusive representation." *Price v. UAW*, 795 F.2d 1128, 1134 (2d Cir. 1986) (quoting *Kolinske v. Lubbers*, 712 F.2d 471, 481 (D.C. Cir. 1983)), *vacated on other grounds*, 487 U.S. 1229 (1988). "Given this, '[i]f a union does not serve as the exclusive agent for the members of the bargaining unit with respect to a particular matter, there is no corresponding duty of fair representation.'" *Id.* (quoting *Freeman v. Loc. Union No. 135*, 746 F.2d 1316, 1321 (7th Cir.1984)). Here, the Union was not acting in a representational capacity, *i.e.*, not in connection with the negotiation or administration of the CBA, when the President commented to the press about a matter of significant concern to the entire bargaining unit.

C. Wang Fails to Allege a Plausible Causal Connection Between Local 802's Alleged Misconduct and Any Damages Incurred.

To state a DFR claim, a plaintiff must also allege an injury and "demonstrate a causal connection between the union's wrongful conduct and their injuries." *Spellacy*, 156 F.3d at 126; *see also Sim v. N.Y. Mailers' Union No. 6*, 166 F.3d 465, 472–73 (2d Cir. 1999); *Ackley v. W. Conf. of Teamsters*, 958 F.2d 1463, 1473 (9th Cir. 1992) (plaintiffs must prove that but for the union's misconduct, the injury they allegedly suffered would not have occurred); *Rakestraw v. United Airlines, Inc.*, 981 F.2d 1524, 1534 (7th Cir. 1992) ("[A] wrong is actionable only when it causes injury . . . .").

Wang does not plausibly allege how Local 802's conduct caused his alleged injury. Wang has suffered no financial harm, as he is still being paid in full. Compl. ¶6. Although he seeks economic damages for emotional harm, reputational harm, lost business opportunities, and attorneys' fees, *id.* ¶85, he has failed to plead a plausible causal connection between Local 802's alleged misconduct and his claimed harms. Wang's alleged removal from several professional engagements, *id.* ¶¶69–73, is obviously attributable to the widely circulated *Vulture* article and his removal from the schedule, which Wang alleges "ignited a firestorm." Singer Decl. Ex. F. Local 802's decision—*communicated only to Wang's attorney*—to wait for the results of the Philharmonic's investigation before deciding whether to pursue a grievance could not plausibly be viewed as the cause of any alleged damages. *See* Singer Decl. Ex. I.

Similarly, the Local 802 President's *New York Times* statement could not plausibly have caused the harm asserted by Wang, who at the point of publication was *already* taken off the schedule by the Philharmonic and *already* publicly accused in the widely read *Vulture* article of facilitating a rape of a fellow musician. *Cf. Sim*, 166 F.3d at 472–73 (no DFR causation where union's misconduct affected at most two votes and tentative agreement passed

by 24 votes). Indeed, in his recently filed defamation suit against the author of the *Vulture* article, New York Media (*i.e.*, *New York* magazine), and Vox Media (the owner of *New York* magazine), he directly attributes his economic and reputational harm *exclusively* to the publication of the article and the reporter's subsequent podcast interview. *See* Compl. ¶¶73–84, 90, 99, *Wang v. Sussman*, No. 1:24-cv-03987, (S.D.N.Y. May 23, 2024).

Finally, Wang cannot recover for his alleged emotional distress because such damages are available in a DFR claim "*only if* the defendant has engaged in 'extreme and outrageous conduct intentionally or recklessly caus[ing]' that distress." *Baskin v. Hawley*, 807 F.2d 1120, 1133 (2d Cir. 1986) (emphasis added) (quoting Restatement (Second) of Torts, § 46 (1965)). Here, Local 802 decided to await the outcome of the investigation before filing a grievance, an eminently reasonable interpretation of the CBA because Wang was still "employed." It gave weight to the concerns of the bargaining unit as a whole, an entirely appropriate consideration because it owes a DFR to the entire unit. Such conduct is hardly extreme or outrageous, nor did Local 802 intentionally and recklessly cause Wang distress.

## III. WANG'S STATE LAW CLAIMS ARE NOT COGNIZABLE.

### A. The Duty of Fair Representation Preempts Wang's Prima Facie Tort Claim.

As explained in Part II.B, the DFR is the statutory duty of an exclusive bargaining representative of employees in a bargaining unit to fairly represent them in collective bargaining and contract administration. *Vaca*, 386 U.S. at 177. The Supreme Court has repeatedly explained that Congress intended that uniform federal principles, derived from federal labor law, exclusively govern a union's representational conduct. *See, e.g.*, *IBEW v. Hechler*, 481 U.S. 851, 856–59 (1987); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 208–13 (1985). In developing the DFR doctrine, federal courts have rejected the application of state law principles in favor of narrow principles of federal labor law and the unique role of unions in collective bargaining. To

maintain the uniformity of federal DFR standards, courts have consistently held that the DFR preempts state law claims that fall within its scope. *See, e.g.*, *BIW Deceived v. Loc. S6*, 132 F.3d 824, 830 (1st Cir. 1997); *Peterson v. Air Line Pilots Ass'n, Int'l*, 759 F.2d 1161, 1171 (4th Cir. 1985); *Johnson v. UFCW, Int'l Union Loc. No. 23*, 828 F.2d 961, 967 (3d Cir. 1987); *Richardson v. United Steelworkers*, 864 F.2d 1162, 1166 (5th Cir. 1989); *Agosto v. Corr. Offs. Benevolent Ass'n*, 107 F. Supp. 2d 294, 310–11 (S.D.N.Y. 2000); *Peters v. N.Y. Hotel & Motel Trades Council*, No. 86 Civ. 4019 (WCC), 1986 WL 11195, at *2–3 (S.D.N.Y. Sept. 30, 1986).

Here, Wang's allegations in support of his prima facie tort claim precisely mirror those in his § 301/DFR claim. *Compare* Compl. ¶81 (DFR claim for non-enforcement of Award), *with id.* ¶189 (prima facie tort claim for same); *compare id.* ¶82 (DFR claim for President's statement) with *id.* ¶190 (prima facie tort claim for same). The DFR preempts a state law claim "if [the state law claim] imposes an obligation on the union already imposed by the duty of fair representation." *Walsh v. IBEW Loc. 503*, 62 F. Supp. 3d 300, 303 (S.D.N.Y. 2014). Such is the case here.

B. Section 301 of the LMRA Preempts Wang's State Law Claims.

Wang's state law claims against Local 802 are preempted by § 301 because they require interpretation of, and are inextricably intertwined with, the CBA. The Supreme Court has held that federal common law applies to suits alleging a breach of a CBA under Section 301, *see Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456 (1957), and preempts state law claims that also are based on alleged breaches of a CBA, *see Loc. 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 102 (1962). In *Allis-Chalmers Corp. v. Lueck*, the Supreme Court expanded the scope of § 301 preemption to apply not only in suits claiming breach of a CBA, but also to state law claims that are "inextricably intertwined with consideration of the terms of the labor contract." 471 U.S. at 213.

Courts in this Circuit have consistently found state and local discrimination claims to be preempted where the claims require interpretation of a CBA or are inextricably intertwined with rights under a CBA. *See, e.g., Whitehurst v. 1199SEIU United Healthcare Workers E.*, 928 F.3d 201, 208–09 (2d Cir. 2019) (finding NYSHRL and NYCHRL claims preempted by § 301 where CBA was the "source of the rights" plaintiff "[sought] to vindicate"); *Goodman v. Port Auth. of N.Y. & N.J.*, No. 10 Civ. 8352, 2011 WL 3423800, at *9 (S.D.N.Y. Aug. 4, 2011) ("Since the essence of Plaintiff's [NYSHRL] claims against the Union is that the employers took adverse employment actions against him which violated the CBA, and that the Union failed to remedy these breaches, his NYSHRL claim against the Union is preempted."); *Martinez v. Staten Island Univ. Hosp*., No. 19-CV-02672 (CBA)(RER), 2020 WL 13837813, at *9 (E.D.N.Y. June 19, 2020) ("Because [plaintiff]'s claims against [union] under NYSHRL and NYCHRL are all substantially dependent upon an analysis of the CBA and the rights it gives rise to, those claims are preempted by § 301 of the LMRA and must be dismissed with prejudice."). Since the essence of Wang's NYCHRL and NYSHRL discrimination claims is that the Philharmonic took adverse action against him in violation of the CBA and Local 802 failed to remedy this breach, § 301 preempts these claims. *Goodman*, 2011 WL 3423800, at *9.

With respect to Wang's prima facie tort claim, courts in this and other Circuits routinely hold state law tort claims to be preempted by § 301. *See, e.g., Dougherty v. Am. Tel. & Tel. Co.*, 902 F.2d 201, 203–04 (2d Cir. 1990); *Anderson v. Aset Corp*., 416 F.3d 170, 171–72 (2d Cir. 2005); *Sullivan v. Gelb*, No. 1:23-cv-5194-GHW, 2024 WL 2702106, at *9 (S.D.N.Y. May 23, 2024); *Ferrara v. Leticia, Inc.*, No. 09–CV–3032 (RRM)(CLP), 2012 WL 4344164, at *5–7 (E.D.N.Y. Sept. 21, 2012) (prima facie tort); *Wolfe v. Gen. Elec. Co.*, No. CIV 14-0088 JB/KBM, 2014 WL 12782797, at *3 (D.N.M. Dec. 16, 2014) (same); *Rael v. Smith's Food &*

*Drug Ctrs., Inc*., No. 1:15-CV-00983-SCY/KK, 2016 WL 10179339, at *5 (D.N.M. Sept. 19, 2016) (same), *aff'd*, 712 F. App'x 802 (10th Cir. 2017). Thus, to the extent that Wang's prima facie tort claim rests on Local 802's alleged failure to seek his "reinstatement" and "enforcement of the Arbitration Award" (Compl. ¶189), this claim is preempted because any right Wang may have derives from the CBA and the Award rendered thereunder.

C. <u>Wang's State Law Claims Must Be Dismissed Under *Martin v. Curran*.</u>

In 1951, the Court of Appeals held in *Martin v. Curran* that under New York General Association Law § 13, damages are unrecoverable against a voluntary association unless plaintiffs prove "the individual liability of every single member." 303 N.Y. 276, 282 (1951). Over the last more than seventy years, New York courts have repeatedly followed *Martin* to require plaintiffs to plead and prove that *each and every* member of the association authorized or approved the alleged misconduct. *See, e.g.*, *Palladino v. CNY Centro, Inc.*, 23 N.Y.3d 140, 150–52 (2014) (confirming ongoing validity of *Martin* and upholding dismissal of damages claims against union); *R.M. Perlman Inc. v. N.Y. Coat, Suit, Dresses, Rainwear & Allied Workers' Union Loc. 89-22-1*, 789 F. Supp. 127, 133 (S.D.N.Y. 1992) (dismissing prima facie tort claim against union under *Martin*); *Goodman*, 2011 WL 3423800, at *10.

Local 802, a labor organization (Compl. ¶20), is a voluntary unincorporated association. *See Douds v. Associated Musicians of Greater N.Y., Loc. 802*, 123 F. Supp. 798, 799 (S.D.N.Y. 1954) (Local 802 is an "unincorporated association"); *Associated Musicians of Greater N.Y., Loc. 802 v. League of Am. Theatres & Producers, Inc.*, No. 05-CV-2769 (KMK), 2006 WL 3039995, at *1 (S.D.N.Y. Oct. 25, 2006) (same); *Performing Arts Ctr. of Suffolk Cnty. v. Actor's Equity Ass'n*, No. CV 20-2531 (JS)(AYS), 2022 WL 16755284, at *5–6 (E.D.N.Y. Aug. 25, 2022) (finding union to be a voluntary association where plaintiff failed to plead that union was a "corporate entity, registered partnership, or other kind of recognized legal entity"

and union's official name did not include any corporate signifier), *report and recommendation adopted*, No. 20-CV-2531 (JS)(AYS), 2022 WL 4977112 (E.D.N.Y. Sept. 30, 2022); *Cruz v. UAW Union Loc. 2300*, No. 3:18-CV-0048 (GTS/ML), 2019 WL 3239843, at *17 (N.D.N.Y. July 18, 2019) (same).

Here, Wang did not, and could not, contend that Local 802's entire membership authorized or ratified the alleged misconduct at issue, *i.e.*, Local 802's decision, which was *only* communicated to Wang's counsel, not to seek enforcement of the Award, and a public statement made by the Local 802 President, not by its entire membership. Accordingly, Wang's state law claims against Local 802 should be dismissed under *Martin v. Curran* and its progeny.

D. Wang Fails to State a Sex Discrimination Claim Under the NYSHRL and NYCHRL.

To state a claim for sex discrimination under the NYSHRL, a plaintiff must plead that "(1) she was within the protected class, (2) she was qualified for the position, (3) she was subject to an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination." *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 75 (2d Cir. 2016). Here, Wang's NYSHRL discrimination claim fails because he has not experienced an adverse employment action and his allegations do not give rise to a plausible inference of discrimination. As discussed *supra* at 8, the Philharmonic's decision not to assign him to rehearsals or performances for a finite period, while paying him in full, does not constitute disciplinary action under the CBA, has no impact on Wang's tenure with the Philharmonic, and is akin to a paid administrative leave. The Second Circuit has made clear that "administrative leave with pay during the pendency of an investigation does not, without more, constitute an adverse employment action." *Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006); *see*

*also Canady v. Union 1199*, 253 F. Supp. 3d 547, 558 (W.D.N.Y. 2017), *aff'd*, 736 F. App'x 259 (2d Cir. 2018).

Additionally, to raise a plausible inference of discrimination, a plaintiff must identify comparators who were "similarly situated in all material aspects." *See, e.g.*, *Novick v. Village of Wappingers Falls*, 376 F. Supp. 3d 318, 344 (S.D.N.Y. 2019). Here, although Wang generally claims that the Union has "never before endorsed an employer's indefinite suspension of a tenured female musician" (Compl. ¶147), he fails to identify a single specific instance involving an individual "similarly situated in all material aspects," *Novick*, 376 F. Supp. 3d at 344.

Wang's NYCHRL claim also fails. To state a claim under the NYCHRL an employee must allege that she was treated "less well than other similarly situated employees." *Rodriguez v. Verizon Telecom*, No. 13-cv-6969 (PKC)(DCF), 2014 WL 6807834, at *8 (S.D.N.Y. Dec. 3, 2014). As stated above, Wang fails to plausibly allege that he was treated less well than other similarly situated employees.

E. <u>Wang Fails to State a Prima Facie Tort Claim.</u>

Prima facie tort claims are "highly disfavored" in New York and "should not become a 'catch-all' alternative for every cause of action which cannot stand on its legs." *Cestaro v. Prohaska*, 669 F. Supp. 3d 276, 282 (S.D.N.Y. 2023) (first quoting *Nevin v. Citibank*, 107 F. Supp. 2d 333, 347 (S.D.N.Y. 2000); and then quoting *Gertler v. Goodgold*, 107 A.D.2d 481, 490 (N.Y. App. Div. 1985)). A prima facie tort claim should be dismissed where, as here, "the basis for [the] claim is 'precisely the same' as the 'substantive acts' underlying the plaintiff's other 'causes of action.'" *Id.* (quoting *Gertler*, 107 A.D.2d at 490).

A plaintiff asserting a prima facie tort must plead: 1) intentional infliction of harm, 2) causing special damages, 3) without excuse or justification, 4) by an act or series of acts

that would otherwise be lawful. *Curiano v. Suozzi*, 469 N.E.2d 1324, 1327 (N.Y. 1984). Wang fails to identify special damages, *i.e.*, the *specific* monetary loss that he allegedly suffered. *See Harisch v. Goldberg*, No. 14-cv-9503 (KBF), 2016 WL 1181711, at *13 (S.D.N.Y. March 25, 2016); *Watkins v. Town of Webster*, 592 F. Supp. 3d 96, 130–31 (W.D.N.Y. 2022). He also fails to allege the "intentional infliction of harm . . . without excuse or justification." *Curiano*, 469 N.E.2d at 1327. To satisfy these elements, a plaintiff must plead "that the sole motivation for the [conduct] was 'disinterested malevolence.'" *Id.* (quoting *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 333 (1983)). Here, Local 802 acted in response to resurfaced allegations of a grievous sexual assault within its bargaining unit, the bargaining unit's stated concerns about the allegations and their safety, and an investigation into other possible instances of sexual misconduct. It advised Wang's attorney that it was not denying his request, but rather postponing a decision until after the conclusion of the Philharmonic's investigation. Under these circumstances, there can be no reasonable inference that Local 802's decision was solely motivated by disinterested malevolence.

## CONCLUSION

For the foregoing reasons, Wang's First, Sixth, Eighth, and Tenth Causes of Action should be dismissed with prejudice.

Dated: June 5, 2024
New York, New York

Respectfully submitted,

*/s/ Susan Davis*
Susan Davis
Olivia R. Singer