UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------

LIANG WANG,

                Plaintiff,

      v.

THE PHILHARMONIC-SYMPHONY SOCIETY OF
NEW YORK, INC., AND ASSOCIATED
MUSICIANS OF GREATER NEW YORK, LOCAL
802, AMERICAN FEDERATION OF MUSICIANS,

                Defendants.

-------------------------------------------------------------------

1:24-cv-03356-AS

[rel. 1:24-cv-03348-AS,
1:24-cv-03987-AS]


**MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO
DISMISS OF DEFENDANT THE
PHILHARMONIC-SYMPHONY
SOCIETY OF NEW YORK, INC.**

**<u>ORAL ARGUMENT REQUESTED</u>**

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ......................................................................................1

STATEMENT OF FACTS ...........................................................................................3

    A.    The Parties ............................................................................................3

    B.    The Collective Bargaining Agreement and Wang's Individual Agreement ...........3

    C.    Prior Investigation, Wang's 2018 Termination, and 2020 Reinstatement ..............4

    D.    Current Investigations and Wang's Placement on Leave with Pay .......................5

STANDARD OF REVIEW ...........................................................................................5

ARGUMENT ..............................................................................................................6

    A.    WANG'S HYBRID DUTY OF FAIR REPRESENTATION ("DFR") AND SECTION 301 CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ................................................................................6

        1.    Wang Has Not Alleged a Plausible Violation of the Union's DFR ............6

        2.    Wang's Section 301 and Breach of Contract Claims Should be Dismissed ................................................................................7

    B.    WANG'S STATE LAW CLAIMS SHOULD BE DISMISSED AS PREEMPTED ................................................................................10

        1.    Wang's Breach of Contract Claim Is Preempted by Section 301 ............12

        2.    Wang's Discrimination Claims are Preempted by Section 301 ...............13

        3.    Wang's *Prima Facie* Tort Claim is Preempted and Should Be Dismissed ................................................................................16

    C.    WANG'S DISCRIMINATION AND TORT CLAIMS FAIL TO STATE A CLAIM ................................................................................17

        1.    Wang's Discrimination Claims Fail to State a Claim for Relief ..............17

        2.    Wang's *Prima Facie* Tort Claim Also Fails to State a Claim for Relief ................................................................................18

    D.    WANG'S CLAIM FOR INJUNCTIVE RELIEF IS INAPPROPRIATELY PLED AS A SEPARATE CAUSE OF ACTION AND SHOULD BE DISMISSED ................................................................................20

CONCLUSION ..........................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allis-Chalmers Corp. v. Lueck*,
    471 U.S. 202 (1985) ...........................................................................................11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................6, 19

*Avedisian v. Quinnipiac Univ.*,
    387 F. App'x 59 (2d Cir. 2010) .......................................................................11

*Backer v. Cooperatieve Rabobank U.A.*,
    338 F. Supp. 3d 222 (S.D.N.Y. 2018) ............................................................19

*Beals v. Kiewit Pac. Co.*,
    114 F.3d 892 (9th Cir. 1997) ...........................................................................12

*Bloor v. Falstaff Brewing Corp.*,
    454 F. Supp. 258 (S.D.N.Y. 1978), *aff'd*, 601 F.2d 609 (2d Cir. 1979) .................................10

*Brown v. N.Y.C. Trans. Auth.*,
    2024 WL 1347283 (S.D.N.Y. Mar. 29, 2024) ...............................................14

*Brown v. NFL*,
    219 F. Supp. 2d 372 (S.D.N.Y. 2002) ............................................................16

*Cestaro v. Prohaska*,
    669 F. Supp. 3d 276 (S.D.N.Y. 2023) ............................................................18

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002) ..............................................................................6

*Cooper v. Franklin Templeton Invs.*,
    2023 WL 3882977 (2d Cir. 2023) ...................................................................14

*Cordova v. Mike Bloomberg 2020, Inc.*,
    2023 WL 6119448 (2d Cir. Sept. 19, 2023) .....................................................6

*Creaven v. Erickson*,
    2023 WL 4247213 (2d Cir. June 29, 2023) ....................................................10

*De Lorenzo v. King Kullen Grocery Co.*,
    2020 WL 7047314 (E.D.N.Y. Aug. 12, 2020), *report and recommendation
    adopted*, 2020 WL 7042835 (E.D.N.Y. Nov. 30, 2020) .................................18

ii

*Deltondo v. Sch. Dist. of Pittsburgh,*
    2023 WL 2534817 (W.D. Pa. Mar. 16, 2023) ..........................................................................8

*Domnister v. Exclusive Ambulette, Inc.,*
    2007 WL 4244151 (E.D.N.Y. Nov. 29, 2007) ........................................................................15

*Dumas v. New United Motor Mfg., Inc.,*
    2011 WL 5006462 (N.D. Cal. Oct. 20, 2011) ..........................................................................8

*Ferrara v. Leticia, Inc.,*
    2012 WL 4344164 (E.D.N.Y. Sept. 21, 2012) .......................................................................20

*Fischer v. G4S Secure Sols. USA, Inc.,*
    2011 WL 3859742 (D.N.J. Aug. 31, 2011) ............................................................................13

*Fox v. Parker Hannifin Corp.,*
    914 F.2d 795 (6th Cir. 1990) ................................................................................................12

*Freihofer v. Hearst Corp.,*
    490 N.Y.S.2d 735 (N.Y. 1985) .............................................................................................19

*Goodman v. Loc. 804 Union of Int'l Brotherhood of Teamsters,*
    2022 WL 4586309 (E.D.N.Y. Sept. 29, 2022) .......................................................................11

*Henderson v. Merck & Co.,*
    998 F. Supp. 532 (E.D. Pa. 1998) ........................................................................................12

*Henderson v. Physician Affiliate Grp. of N.Y. P.C.,*
    2019 WL 3778504 (S.D.N.Y. Aug. 12, 2019) .......................................................................18

*Joseph v. Leavitt,*
    465 F.3d 87 (2d Cir. 2006) ...................................................................................................18

*Laborers' Int'l Union of N. Am. (LIUNA), Local __,*
    2022 BNA LA 106 (Lowe, 2022) ...........................................................................................8

*Lettieri v. Anti-Defamation League Found.,*
    2023 WL 5152447 (S.D.N.Y. Aug. 10, 2023) .......................................................................14

*Luciano v. Handcock,*
    433 N.Y.S.2d 257 (N.Y. App. Div. 1980) .............................................................................19

*McCarty v. Reynolds Metals Co.,*
    883 F. Supp. 356 (S.D. Ind. 1995) .......................................................................................12

*Middleton v. City of Tucson,*
    2018 WL 1581628 (D. Ariz. Mar. 31, 2018) ..........................................................................8

iii

*Monumental Blunders, Inc. v. CBS Corp.*,
2000 WL 777893 (S.D.N.Y. June 15, 2000) .......................................................13

*Morrissey v. Verizon Commc'ns Inc.*,
2011 WL 2671742 (S.D.N.Y. July 7, 2011) .......................................................15

*Nelson v. Amalgamated Transit Union Local 1181-1061, AFL-CIO*,
2015 WL 1529723 (E.D.N.Y. Apr. 3, 2015), *aff'd*, 652 F. App'x 47 (2d Cir.
2016) ...........................................................................................................16

*Nnebe v. City of New York*,
2023 WL 2393920 (S.D.N.Y. Jan. 30, 2023)*, report and recommendation
adopted*, 2023 WL 2088526 (S.D.N.Y. Feb. 17, 2023).........................................18

*Ohanian v. Avis Rent A Car Sys., Inc.*,
779 F.2d 101 (2d Cir. 1985)...............................................................................10

*Perkins v. 199 SEIU United Healthcare Workers E.*,
73 F. Supp. 3d 278 (S.D.N.Y. 2014)....................................................................7

*Risher v. J. Diamon Grp., Inc.*,
2018 WL 3539832 (D.N.M. May 11, 2018) ..........................................................8

*Roenick v. Flood*,
2021 WL 2355108 (S.D.N.Y. June 9, 2021) .......................................................17

*Sanchez v. S&P Glob., Inc.*,
2023 WL 8372990 (S.D.N.Y. Dec. 4, 2023) ........................................................9

*Seibel v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
655 F. Supp. 3d 212 (S.D.N.Y. 2023)..................................................................20

*Spellacy v. Airline Pilots Ass'n-Int'l*,
156 F.3d 120 (2d Cir. 1998)................................................................................7

*Stadt v. Fox News Network LLC*,
719 F. Supp. 2d 312 (S.D.N.Y. 2010)..................................................................10

*Stinnett v. Delta Air Lines, Inc.*,
803 F. App'x 505 (2d Cir. 2020).....................................................................14, 17

*Sullivan v. Am. Airlines, Inc.*,
424 F.3d 267 (2d Cir. 2005)................................................................................11

*Sullivan v. Gelb*,
2024 WL 2702106 (S.D.N.Y. May 23, 2024) .......................................................11

*Tomney v. Int'l Ctr. for Disabled*,
   357 F. Supp. 2d 721 (S.D.N.Y. 2005)..................................................................7

*Twin Lab'ys, Inc. v. Weider Health & Fitness*,
   900 F.2d 566 (2d Cir. 1990)..............................................................................19

*United Nurses and Allied Professionals, Local __*,
   2021 BNA LA 193 (Copeland, 2021)................................................................8

*United Steelworkers of Am., AFL-CIO-CLC v. Rawson*,
   495 U.S. 362 (1990)..........................................................................................11

*University Hospital*,
   1997 BNA LA Supp. 103253 (Goldberg, 1997).................................................8

*Wang v. Sussman, et al.*,
   Case No. 1:24-cv-03987, ECF No. 1 (S.D.N.Y. May 23, 2024) .........................20

*Wheeler v. Praxair Surface Techs., Inc.*,
   2023 WL 6282903 (S.D.N.Y. Sept. 26, 2023)..................................................14

*White v. White Rose Food*,
   237 F.3d 174 (2d Cir. 2001)...........................................................................6, 7

*Whitehurst v. 1199SEIU United Healthcare Workers E.*,
   928 F.3d 201 (2d Cir. 2019)..........................................................................11, 15

*Young v. Anthony's Fish Grottos, Inc.*,
   830 F.2d 993 (9th Cir. 1987) ..........................................................................13

## Statutes & Rules

29 U.S.C. § 185(a) ...........................................................................................11

Labor-Management Relations Act § 301 ............................................. *passim*

Fed. R. Civ. P.12(b)(6).............................................................1, 5, 6, 20

Defendant The Philharmonic-Symphony Society of New York, Inc. ("Society") submits this Memorandum of Law in support of its Motion to Dismiss the Complaint filed by Plaintiff Liang Wang ("Wang") under Federal Rule of Civil Procedure ("Rule") 12(b)(6).

## PRELIMINARY STATEMENT

Wang, a member of the Society's orchestra, brings this action against the Society and Local 802 of the American Federation of Musicians ("Union"), based on his placement on *paid* leave pending investigations into the culture of and conduct by employees of the Society. The investigations were initiated after publication of an article containing allegations of sexual misconduct against Wang and another orchestra member. Wang contests his paid leave under several theories, all of which are premised on the Society's alleged violation of his rights under the collective bargaining agreement ("CBA") between the Society and the Union, his individual agreement with the Society ("Agreement"), and the 2020 Arbitration Award ("Award") that ordered his reinstatement after his termination following sexual misconduct allegations.

Wang's claims are all preempted under Section 301 of the Labor-Management Relations Act ("LMRA") and/or fail to state a claim upon which relief can be granted.

Wang's hybrid duty of fair representation ("DFR") and Section 301 claims against the Society and the Union, respectively, should be dismissed. The DFR claim (Count I), a prerequisite to a Section 301 claim against the Society (Count II), fails due to the strong deference afforded to labor unions to decide whether to pursue a grievance. The Union has not grieved the Society's actions at this time because it appropriately concluded that no grievable event has occurred.

There is no basis to second-guess the Union's decision because Wang cannot demonstrate a violation of the CBA, Wang's Agreement, or the Award. Specifically, Wang alleges the Society "suspended" him with pay "without just cause," which he claims violates the CBA's obligation to

"employ" him for the entirety of the year, provide him "solo opportunities" and "raise his profile" pursuant to his Agreement, and reinstate him pursuant to the Award. But the Society's placing Wang on *paid leave* pending the ongoing investigations is a non-disciplinary measure and did not sever the employment relationship. The CBA does not require the Society to schedule Wang for particular performances or rehearsals.

Wang cannot sustain his Section 301 (Count II) or breach of contract (Count IV) claims against the Society based on his unsigned, unenforceable Agreement. In any event, the "best efforts" clause of the Agreement is not a guarantee of work and must be read in light of the circumstances, which include publication of the article about Wang's alleged sexual misconduct and the ongoing investigations. Nor does the 2020 Award—which ordered Wang's reinstatement and back-pay—preclude the Society from placing Wang on *paid* leave during these new investigations.

Wang tries to take several bites at the apple by asserting causes of action that restate the same allegations and alleged CBA violations, cloaked as state law breach of contract (Count IV), sex discrimination under the New York State Human Rights Law ("NYSHRL") (Count V) and New York City Human Rights Law ("NYCHRL") (Count VII), and *prima facie* tort (Count IX). These claims are completely preempted by Section 301 because they are substantially dependent upon the terms of and arise under collectively-bargained agreements. The gravamen of these claims is the Society violated Wang's rights under the CBA, his Agreement (which is a creature of the CBA and incorporates the CBA), and the Award (which is "final and binding" pursuant to the CBA). Because the Court must grapple with interpreting these agreements to adjudicate Wang's state law claims, they are completely preempted and should be dismissed.

Even if not preempted by Section 301, Wang has failed to plausibly allege a violation of

state and city anti-discrimination laws or *prima facie* tort. Wang does not allege any facts evidencing discriminatory intent because he does not identify any similarly situated female orchestra member who was treated more favorably, as required under the NYCHRL and NYSHRL. Wang's NYSHRL claim also fails because paid leave pending investigation is not an adverse employment action. Wang's *prima facie* tort claim, which impermissibly duplicates his other causes of action, fares no better. Wang does not state a claim under the elements of this cause of action; he does not allege the Society acted in a "malevolent" manner, the "touchstone" of this tort, and does not demonstrate "special damages," among other deficiencies. Finally, Wang's plea for an injunction (Count III) should be dismissed as it is a form of relief, not a cause of action.

## STATEMENT OF FACTS

### A. The Parties

Wang is an orchestra member of the Society, a renowned cultural institution. (Complaint ("Compl.") ¶¶ 1, 19, 21.) The Union is the exclusive collective bargaining representative of the Society's orchestra members. (*Id.* ¶ 20.)

### B. The Collective Bargaining Agreement and Wang's Individual Agreement

During Wang's employment with the Society, his employment terms have been governed by the CBA, which is in effect through September 20, 2024. (*See* Declaration of Howard Z. Robbins, Ex. B, Art. II; Compl. ¶¶ 59, 64-65.) Among other things, the CBA establishes that orchestra members, such as Wang, shall be "employed" by the Society for "fifty-two (52) weeks in each year of the term of the Agreement", and gives the Society broad discretion in "schedul[ing] whatever activities of the Orchestra it may determine, both in the United States and abroad . . . ." (Ex. B, Art. III; Compl. ¶ 64.) Included within these 52 weeks of employment are nine weeks of vacation, as well as "relief weeks" and paid leave. (*Id.*) The CBA also establishes a maximum

number of performances and rehearsals that may be required during a "basic work week." (*Id.*) There is no minimum number of performances or rehearsals. The "Society may take disciplinary measures . . . for other just cause." (Ex. B, Art. VII(E).) The CBA contains a grievance-arbitration procedure to resolve disputes; either the Union or the Society may submit the dispute to an Arbitrator whose decision shall be "final and binding." (*Id.*, Art. XV(B).)

The CBA contemplates that orchestra members may negotiate individual agreements with the Society concerning overscale salary (*i.e.*, above base pay). (*See id.*, Art. IV(D), Ex. A (referring to "contractual scale and overscale rates" and stating that "previously negotiated overscale increases…will be maintained throughout the term"); *see also* Arts. III(B), III(C)(2), VIII(D), XXI(C).) Wang entered into an individual Agreement with the Society on March 6, 2013, which expired at the end of the 2016-17 Season. (*See* Ex. C.) In the 2013 Agreement, the Society agreed to "use its best efforts to raise [Wang's] profile . . . [and] to provide additional solo opportunities," and to provide a minimum of six solo performances every three seasons. (*Id.*; Compl. ¶ 55.) The 2013 Agreement explicitly incorporated the terms and conditions of the CBA. (Ex. C; Compl. ¶ 56.) Wang and the Society entered into an Agreement for the period September 19, 2022 through September 17, 2023. (Ex. C.) The Society prepared an Agreement covering the 2023-24 Season, incorporating the 2013 Agreement, which stated that it is binding upon the signature of all parties. (*Id.*) Wang did not sign the 2023 Agreement. (*Id.*)

### C. Prior Investigation, Wang's 2018 Termination, and 2020 Reinstatement

In 2017, the Society was alerted to allegations of sexual misconduct involving orchestra member Matthew Muckey ("Muckey"), relating to events that allegedly occurred in 2010. (Compl. ¶¶ 25-26.) Wang was a witness in connection with those allegations. (*Id.* ¶ 25.) The Society engaged Judge Barbara Jones to investigate the matter and, based on her findings, terminated the

4

employment of Muckey for his role in the incident that allegedly occurred in 2010 and Wang concerning unrelated allegations of sexual misconduct. (*Id.* ¶ 30; Ex. D.) The Union grieved their terminations and submitted the matter to arbitration before Arbitrator Richard I. Bloch. (*Id.* ¶ 34.) After a confidential hearing in 2019, Arbitrator Bloch issued his Award in April 2020, finding the Society lacked just cause to terminate Wang and Muckey, and ordering their reinstatement and make-whole relief. (*Id.* ¶ 35.) The Society complied with the Award. (*Id.* ¶ 36.)

### D.  Current Investigations and Wang's Placement on Leave with Pay

On April 11, 2024, *Vulture* magazine published an article describing allegations of sexual misconduct underlying the terminations of Wang and Muckey. (Comp. ¶¶ 37-39; Ex. D.) The Article did not address allegations of misconduct concerning any other orchestra member. (Ex. D.) The Society then commenced two investigations: an "independent investigation into the culture of the New York Philharmonic in recent years," (Compl. ¶ 50) and a workplace investigation by Tracey Levy, who will "receive and investigate allegations of sexual harassment or otherwise inappropriate conduct by musicians or other current employees of the Philharmonic." (Ex. E.) On April 13, 2024, the Society placed Wang (and Muckey) on paid leave pending the outcome of the investigations, during which time they could not participate in any performances or rehearsals. (Compl. ¶ 41.) Wang approached the Union about filing a grievance, and he alleges the Union "refused to take any action on Wang's behalf" at this time, because "Wang had suffered no adverse employment action because he is being paid during his suspension" and the "CBA does not afford Philharmonic members with any rights whatsoever to be 'placed on the schedule for any . . . performance.'" (*Id.* ¶¶ 63, 67.) Wang then commenced this action.

### STANDARD OF REVIEW

Rule 12(b)(6) provides for the dismissal of a complaint for a plaintiff's failure "to state a

claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order "[t]o survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Allegations must consist of more than mere labels, legal conclusions, or a "formulaic recitation of the elements of a cause of action," and bare legal conclusions are "not entitled to the assumption of truth." *Id.* at 678.

A district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Cordova v. Mike Bloomberg 2020, Inc.*, 2023 WL 6119448, at *1 (2d Cir. Sept. 19, 2023) (summary order). Here, although Wang surprisingly fails to attach to the Complaint the documents upon which he chiefly bases his allegations (such as the article, the CBA, and the Agreement), the Complaint quotes and cites extensively to them, and they may be properly considered on a motion to dismiss. (Compl. ¶¶ 4, 15, 31-32, 37, 55-56, 59-60, 64-66, 89, 91-94, 100-104, *et seq.*)

## ARGUMENT

### A.  WANG'S HYBRID DUTY OF FAIR REPRESENTATION ("DFR") AND SECTION 301 CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

#### 1.  Wang Has Not Alleged a Plausible Violation of the Union's DFR

"To establish a hybrid § 301/DFR claim, a plaintiff must prove both (1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation vis-à-vis the union members." *White v. White Rose Food*, 237 F.3d 174, 178 (2d Cir. 2001). "It is well-settled that an employee may maintain a breach of contract action based upon a CBA directly against the employer *only* if 'the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's

grievance.'" *Tomney v. Int'l Ctr. for Disabled*, 357 F. Supp. 2d 721, 738 (S.D.N.Y. 2005) (emphasis added) (citation omitted). A plaintiff must show the union's "conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith," and then, "they must then also prove that there was 'a causal connection between the union's wrongful conduct and their injuries.'" *White*, 237 F.3d at 179 (citations omitted). A union's actions are "are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' as to be irrational." *Id.* (citation omitted).

As demonstrated in greater detail in the Union's Motion to Dismiss, Wang's DFR claim fails because the Union proffered multiple valid reasons for not pursuing a grievance at this time: Wang suffered no adverse employment action and the CBA does not afford any orchestra member the right to be placed on the schedule for any rehearsal or performance. *See Perkins v. 199 SEIU United Healthcare Workers E.*, 73 F. Supp. 3d 278, 284 (S.D.N.Y. 2014) (DFR "is not breached where the union fails to process a meritless grievance, engages in mere negligent conduct, or fails to process a grievance due to error in evaluating the merits of the grievance"); *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 128 (2d Cir. 1998) (union did not breach DFR based on reasonable position that pursuing grievance would be fruitless). Accordingly, Wang's Section 301 claim against the Society (Count II) and his state law breach of contract, discrimination, and *prima facie* tort claims (Counts IV, V, VII, IX), which are preempted by LMRA Section 301 (*see, infra,* Section B), should be dismissed.

> 2. <u>Wang's Section 301 and Breach of Contract Claims Should be Dismissed</u>

Even if Wang's DFR claim survives, his Section 301 and state law breach of contract claims against the Society (Counts II, IV) should be dismissed for failure to state a claim.

*First*, Wang asserts that the Society violated CBA Article VII because it "had no just cause to indefinitely suspend" him. (Compl. ¶ 92.) Wang ignores that the "just cause" standard applies

only to "disciplinary measures." (*Id.* ¶ 101.) Both the Society and the Union are of the view that paid leave during an investigation—which Wang mischaracterizes as a "suspension"—is not discipline. This interpretation is shared by labor arbitrators and courts: "A suspension is a disciplinary measure imposed after the employer concludes that the employee committed misconduct. A paid administrative leave places the employee in a non-disciplinary status, during which the employer investigates whether the misconduct occurred at all[.]" *United Nurses and Allied Professionals, Local __*, 2021 BNA LA 193 (Copeland, 2021); *Risher v. J. Diamon Grp., Inc.*, 2018 WL 3539832, at *4 (D.N.M. May 11, 2018) (unpaid administrative leave was not "disciplinary action" under suspension provision of CBA). Wang fails to cite a single CBA provision that equates paid leave to discipline, and there is none. *See, e.g., Deltondo v. Sch. Dist. of Pittsburgh*, 2023 WL 2534817 (W.D. Pa. Mar. 16, 2023) (claims related to paid suspension dismissed in part because plaintiff failed to identify any provision of the CBA stating that a suspension with pay constitutes a "disciplinary action" under the CBA).

*Second*, Wang alleges that the Society breached CBA Article III(A), which "requires the [Society] to employ" him "52 weeks per year." (Compl. ¶ 102.) But it is undisputed that the Society continues to "employ" Wang during his paid leave. Courts and labor arbitrators distinguish between paid leave and employment termination, finding the former does not sever the employment relationship. *See Dumas v. New United Motor Mfg., Inc.*, 2011 WL 5006462, at *7 (N.D. Cal. Oct. 20, 2011); *Middleton v. City of Tucson*, 2018 WL 1581628 (D. Ariz. Mar. 31, 2018); *Laborers' Int'l Union of N. Am. (LIUNA), Local __*, 2022 BNA LA 106 (Lowe, 2022) (employee was "placed on unpaid administrative leave" and "was not terminated . . . ."); *University Hospital*, 1997 BNA LA Supp. 103253 (Goldberg, 1997) (grievant was placed on administrative

leave with pay and only terminated four months later). The Society continues to "employ" Wang under the terms of the CBA, as he concedes he continues to be paid. (Compl. ¶ 91.)

*Third*, Wang's references "to the musicians' 'basic work week' and . . . 'vacation' [during] nine of the 52 basic work weeks" (Compl. ¶ 64) do not provide the basis for a CBA violation. The "basic work week" provision establishes a *maximum* number of services the Society may schedule (Ex. B, Art. VI); it is not a guarantee of rehearsals or performances. Similarly, the vacation benefits in Article III(C) *limit* musicians' workload. (Compl. ¶ 64.) Nothing in the CBA prohibits the Society from placing Wang on paid leave or otherwise declining to schedule him for work.

*Fourth*, Wang alleges that the Society breached CBA Article XV by failing to treat the Award as "final and binding." (Compl. ¶ 100.) Wang concedes, however, that the Award required only that the Society reinstate him in 2020 and provide make-whole relief, which it did. (*Id.* ¶¶ 35, 36.) Wang does not cite any provision of the Award that requires the Society to schedule him for rehearsals and performances regardless of the circumstances.

*Finally*, Wang attempts to support his Section 301 claim (and separate breach of contract claim) by alleging that the Society violated the terms of his "individual employment agreement," which "requires the Philharmonic to 'raise [Wang's] profile' and provide Wang with 'solo opportunities.'" (Compl. ¶¶ 103-05.) First, the 2023 Agreement is not enforceable because Wang failed to sign it, and the parties indicated their intent to be bound only when the Agreement is "signed by all parties." (Ex. C.) *See Sanchez v. S&P Glob., Inc.*, 2023 WL 8372990, at *1 (S.D.N.Y. Dec. 4, 2023) (dismissing breach of contract claim where the contract reflected "the parties did not intend to be bound absent a fully executed agreement . . . .").

Wang also fails to state a claim for breach of the Agreement based on his allegation that the Society failed to satisfy its "best efforts" obligations in the Agreement, which provides that

"[t]he Society . . .will use its best efforts to raise your profile . . . and will use its best efforts to provide additional solo opportunities." (Compl. ¶¶ 55, 59.) "Best efforts" clauses are not guarantees; they simply "impose[] an obligation to act with good faith in light of one's own capabilities," and "'best efforts' is a term 'which necessarily takes its meaning from the circumstances.'" *Bloor v. Falstaff Brewing Corp.*, 454 F. Supp. 258, 266 (S.D.N.Y. 1978), *aff'd*, 601 F.2d 609, 613 n.7 (2d Cir. 1979). A "best efforts" obligation is *not* a guarantee of work or achieving certain results. *See, e.g., Ohanian v. Avis Rent A Car Sys., Inc.*, 779 F.2d 101, 108 (2d Cir. 1985); *Creaven v. Erickson*, 2023 WL 4247213, at *4 (2d Cir. June 29, 2023). The Society's commitment to use its "best efforts" was not a guarantee that it would succeed in raising Wang's profile or providing him additional solo opportunities, particularly under these unique circumstances, including publication of the article and the ongoing investigations.

Wang also asserts that the Society breached his Agreement because his paid leave means he will not participate in the upcoming tours in China and Vail, which he alleges would have entitled him to "additional compensation." (Compl. ¶ 123.) Wang must cite a "specific provision[] of the contract upon which the breach of contract claim is based," *Stadt v. Fox News Network LLC*, 719 F. Supp. 2d 312, 318 (S.D.N.Y. 2010), but has failed to do so. Indeed, the Agreement (which Wang fails to attach) does not guarantee his appointment for those tours. (*See* Ex. C.)

For these reasons, Wang's claims that the Society breached the CBA in violation of Section 301 (Count II) and breached his Agreement (Count IV) should be dismissed.

### B.  WANG'S STATE LAW CLAIMS SHOULD BE DISMISSED AS PREEMPTED

Wang improperly asserts several state law theories of liability as vehicles to press his grievances under the CBA, including breach of contract (Count IV), the anti-discrimination provisions of the NYCHRL and NYSHRL (Counts V and VII), and *prima facie* tort (Count IX). Wang's state law claims are completely preempted by Section 301 and should be dismissed.

Under Section 301, federal district courts may hear suits based on contractual disputes between an employer and labor union. 29 U.S.C. § 185(a). Courts must apply federal law in resolving controversies involving collective-bargaining agreements, *United Steelworkers of Am., AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 368 (1990), and a state law claim within the scope of Section 301 is "transformed, for jurisdictional purposes, into federal claims—*i.e.,* completely preempted." *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 272 (2d Cir. 2005). When a state law claim is "inextricably intertwined with consideration of the terms of the labor contract[,]" *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985), meaning it is "founded directly on rights created by collective-bargaining agreements" or "substantially dependent on analysis of a collective-bargaining agreement," that claim must be treated under Section 301 or dismissed as preempted by federal law. *Whitehurst v. 1199SEIU United Healthcare Workers E.*, 928 F.3d 201, 206 (2d Cir. 2019) (citation omitted). This includes breach of contract, discrimination, and tort claims. *See Avedisian v. Quinnipiac Univ.*, 387 F. App'x 59, 62-63 (2d Cir. 2010) (breach of contract claim preempted); *Whitehurst*, 928 F.3d at 206 (NYCHRL and NYSHRL claims preempted); *Sullivan v. Gelb,* 2024 WL 2702106, at *13 (S.D.N.Y. May 23, 2024) (tort claims preempted where plaintiff "failed to allege any duties owed…beyond those rooted in the CBA").

Wang's state law claims are completely preempted by Section 301 because they are founded directly on rights created by the CBA and substantially dependent on an interpretation of the CBA. Indeed, Wang attempts to support *each* claim based on the very same CBA violations he asserts in his hybrid DFR/Section 301 claim—*i.e.,* that the Society's placing of Wang on paid leave during the investigations violated the CBA, his Agreement, and the Award. The state law causes of action are thus completely preempted by Section 301 and should be dismissed. *See Goodman v. Loc. 804 Union of Int'l Brotherhood of Teamsters*, 2022 WL 4586309, at *4

(E.D.N.Y. Sept. 29, 2022) (state law cause of action completely preempted by Section 301 where plaintiff pleaded hybrid DFR/Section 301 claim based on same allegations).

     1.  <u>Wang's Breach of Contract Claim Is Preempted by Section 301</u>

Wang alleges that the Society breached the terms of his Agreement under a state law breach of contract theory (Count IV). This claim, however, is "founded directly on rights created by" the CBA because the Agreement does not exist independent of the CBA. Courts have held that individual agreements cannot exist as "independent contract[s]" outside of a CBA if they became effective while the CBA was in effect, as is the case here. *See Henderson v. Merck & Co.*, 998 F. Supp. 532, 537 (E.D. Pa. 1998) (state law claims preempted "where plaintiffs alleged the formation of independent contracts *while* governed by a collective bargaining agreement") (emphasis in original); *see also Beals v. Kiewit Pac. Co.*, 114 F.3d 892, 894 (9th Cir. 1997) ("any 'independent agreement of employment [concerning job position covered by CBA] could be effective only as part of the collective bargaining agreement'") (citation omitted); *Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 801 (6th Cir. 1990) ("employees covered by a CBA cannot rely upon the existence of a separate, individual employment contract giving rise to state law claims") (citation omitted). "The rationale behind these cases is that the collective bargaining process extinguishes an individual employee's power to order her relations with her employer and creates a power vested in the union to act in the interests of all employees. Thus, once a plaintiff is covered by a CBA, 'any contract would necessarily involve interpretation of the CBA and its provisions and is thus preempted.'" *McCarty v. Reynolds Metals Co.*, 883 F. Supp. 356, 362 (S.D. Ind. 1995) (citation omitted).

Preemption applies here because the CBA and the Agreement are inextricably intertwined. The CBA permits negotiation of individual agreements (*see* Ex. B, Art. III(C)(2), IV(D), VIII(D), XXI(C) and Ex. A), and the Agreement explicitly incorporates the CBA. (*See* Ex. C, 2023

Agreement, Sections I(a), (b); Compl. ¶ 56.) As the Agreement is a creature of the CBA, any dispute concerning the Agreement must be processed through the CBA's grievance-arbitration machinery, or in a hybrid DFR/Section 301 suit—Wang essentially concedes as much by alleging a breach of his Agreement in his Section 301 claim. (Compl. ¶¶ 104-05.) Wang cannot plead a state law breach of contract because the "individual contract claim is thus effectively a claim for breach of the CBA." *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997-98 (9th Cir. 1987).

Wang's breach of contract claim is also "substantially dependent" on interpretation of the CBA. Where a purported independent contract allegedly alters the terms and conditions of an employee subject to a CBA, claims for breach of the independent contract are preempted by Section 301. *See, e.g., Fischer v. G4S Secure Sols. USA, Inc.*, 2011 WL 3859742, at *4 (D.N.J. Aug. 31, 2011) (claims concerning employee manual outside of CBA preempted because the "contractual rights . . . do not arise independently from state law" and "are subject to modification" by the CBA); *Monumental Blunders, Inc. v. CBS Corp.*, 2000 WL 777893, at *3 (S.D.N.Y. June 15, 2000) (breach of contract claim regarding personal services contract independent of a CBA preempted because claim required "interpretation of a term in a collective bargaining agreement" regarding severance pay). Here, Wang alleges the Society failed to satisfy its "best efforts" obligations to provide Wang "with opportunities to perform" and to "raise his profile as a performing musician." (Compl. ¶ 118.) To resolve this claim, the Court must interpret these obligations in light of the entirety of the CBA, which compels Section 301 preemption.

2.   Wang's Discrimination Claims are Preempted by Section 301

Wang alleges that the Society discriminated against him on the basis of sex under the NYSHRL (Count V) and NYCHRL (Count VII) by placing him and Muckey (but no female musicians) on paid leave and removing them from rehearsals and performances. Wang's claims

under both laws are preempted by Section 301 because they depend on interpretation of the labor agreements governing his employment.

To state a claim for discrimination under the NYCHRL, a plaintiff must allege that he was "treated 'less well'. . . because of a discriminatory intent." *Lettieri v. Anti-Defamation League Found.*, 2023 WL 5152447, at *5 (S.D.N.Y. Aug. 10, 2023) (citation omitted). Under the NYCHRL, "the plaintiff must . . . show that the challenged 'conduct is caused by a discriminatory motive.'" *Stinnett v. Delta Air Lines, Inc.*, 803 F. App'x 505, 508 (2d Cir. 2020) (summary order).

Although the NYSHRL was amended in 2019 to require a liberal construction and "some courts in this Circuit 'have interpreted the amendment as rendering the standard for claims closer to the standard of the NYCHRL[,]'" *see Cooper v. Franklin Templeton Investments*, 2023 WL 3882977, at *3 (2d Cir. 2023) (citations omitted), other courts addressing post-amendment NYSHRL claims require a plaintiff to establish a *prima facie* case, by plausibly alleging that (1) he was within a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *See Brown v. N.Y.C. Trans. Auth.*, 2024 WL 1347283, at *9-11 (S.D.N.Y. Mar. 29, 2024); *Wheeler v. Praxair Surface Techs., Inc.*, 2023 WL 6282903, at *13 (S.D.N.Y. Sept. 26, 2023).

Wang's apparent basis for asserting that he has was treated "less well" (to state a claim under the NYCHRL) and that he suffered an adverse action (the third element of a *prima facie* NYSHRL case) is his allegation that the Society placed him on leave "in clear violation" of the Award and of the "terms of [Wang's] employment"—including the CBA and his Agreement that he incorrectly alleges "expressly require that he be given opportunities to perform and excel as a musician." (Compl. ¶¶ 129, 155.) That means Wang's claims require interpretation of the CBA

(including the Agreement and the Award), to determine whether there has actually been a violation of the labor agreements.

Wang's discrimination claims are like those found preempted in *Domnister v. Exclusive Ambulette, Inc.*, 2007 WL 4244151, at *12 (E.D.N.Y. Nov. 29, 2007), where the plaintiffs claimed that the defendant's failure to apply certain provisions of the CBA to them was an adverse action under the NYSHRL and NYCHRL, and was due to their Russian national origin; the court concluded that such claims "necessarily involve 'interpretation' of the CBA in order to determine whether Plaintiffs were, in fact, entitled to be covered by the provisions of the . . . CBA."

Likewise, in *Whitehurst,* the Second Circuit held that an employee's disability discrimination claims under the NYSHRL and NYCHRL regarding her termination were completely preempted because they turned on whether she had a right to avail herself of the grievance process as a probationary employee, which required interpreting the CBA. 928 F.3d at 207. The Second Circuit reasoned that if the employee could have been fired for any reason as a probationary employee under the CBA, then the hospital did not violate any rights to reinstatement under the discrimination laws. *Id. See also Morrissey v. Verizon Commc'ns Inc.*, 2011 WL 2671742, at *5 (S.D.N.Y. July 7, 2011) (discrimination claims against employer preempted because they depended on interpretation of CBA's seniority provisions).

Wang's discrimination claims are "inextricably intertwined" with and "substantially dependent upon" construing the CBA, his Agreement incorporating the CBA, and the Award issued under the CBA. Wang cannot avoid preemption under Section 301 by asserting that no other female musicians were treated in the same manner. Based on Wang's own allegations, the Court must interpret the "terms of his employment," which include the CBA, his Agreement and Award to determine whether the Society acted in compliance with those labor agreements and whether

15

Wang was treated "less well" compared to other female musicians and suffered an "adverse employment action"—preempting his discrimination claims, warranting dismissal with prejudice.

### 3.  Wang's *Prima Facie* Tort Claim is Preempted and Should Be Dismissed

Wang tries to assert a *prima facie* tort claim (Count IX) by alleging that the Society refused to abide by the Award "without justification," and that he suffered damages as a result. (Compl. ¶¶ 182-85.) This merely restates a claim for a violation of CBA Article XV, which mandates that arbitration awards are "final and binding," albeit without mentioning the CBA. Wang makes the same allegation in his Section 301 claim—that the Society violated CBA Article XV by allegedly failing to comply with the Award. (*Id.* ¶¶ 100, 105.)

"In determining whether a purported tort claim is merely a restatement of a claim for violation of a CBA, a court must determine if 'the duty to the employee of which the tort is a violation is created by a collective-bargaining agreement and without existence independent of the agreement.'" *Brown v. NFL*, 219 F. Supp. 2d 372, 379 (S.D.N.Y. 2002) (citation omitted). In *Nelson v. Amalgamated Transit Union Local 1181-1061, AFL-CIO*, 2015 WL 1529723, at *5-6 (E.D.N.Y. Apr. 3, 2015), *aff'd*, 652 F. App'x 47 (2d Cir. 2016), plaintiff asserted a state law claim premised on the employer's failure to follow the CBA provision that "[t]he decision of the arbitrator shall be final and binding upon both parties," and the court dismissed the claim as preempted because "the collective bargaining agreement is the very source from which plaintiff's claim springs. . . . [W]ithout it, the employee would have no right to sue his employer at all . . . [and] the right being asserted is not independent of the CBA[.]" *Id.* at *6. This case compels the same result, as the duty allegedly owed to Wang to comply with the Award derives from CBA Article XV and does not exist independent of the CBA.

### C.  WANG'S DISCRIMINATION AND TORT CLAIMS FAIL TO STATE A CLAIM

1.  <u>Wang's Discrimination Claims Fail to State a Claim for Relief</u>

Even if Wang could avoid Section 301 preemption of his discrimination claims, those claims should be dismissed because they fail to state a plausible claim for relief. (*See, infra,* Section B.2, for the applicable standards for stating claims under the NYCHRL and NYSHRL.)

Wang does not plausibly allege any facts to suggest he was treated differently *because of* his sex. To plausibly allege an inference of sex discrimination under the NYCHRL and NYSHRL based on the treatment of female comparators, a plaintiff must plead facts to show "[he] was similarly situated in all material respects" to similarly situated comparators who "engaged in comparable conduct" and received preferential treatment. *Roenick v. Flood*, 2021 WL 2355108, at *5 (S.D.N.Y. June 9, 2021) (citations omitted). Wang merely alleges "upon information and belief" that the Society has not placed tenured female musicians on leave during a pending investigation (Compl. ¶¶ 131-32, 157-58), but the Complaint is devoid of a single similarly situated female comparator who was under investigation at all—much less under investigation for comparable sexual misconduct—and who was not placed on leave in the same manner as Wang (and Muckey). Wang's claims are further undermined by his allegation that he and Muckey were treated differently than "every other member of the Philharmonic[,]" including other *male* members. (*Id.* ¶ 61.)

Since Wang does not allege any facts "suggesting that the . . . putative comparators engaged in conduct similar to [him] . . . ," his allegations are "too general and conclusory" to plausibly state an inference of sex discrimination. *Stinnett*, 803 F. App'x at 509 (summary order) (NYCHRL gender discrimination claim properly dismissed where "pleadings [gave] no indication that [plaintiff] was sufficiently similarly situated to [comparators] plausibly to suggest a discriminatory

motive"); *Henderson v. Physician Affiliate Grp. of N.Y. P.C.*, 2019 WL 3778504, at *5 (S.D.N.Y. Aug. 12, 2019) (dismissing NYSHRL and NYCHRL discrimination claims where plaintiff failed "to identify *any* similarly situated comparator, alleging only 'upon information and belief' that the 'other' physicians" in her department were treated differently) (emphasis in original); *Nnebe v. City of New York*, 2023 WL 2393920, at *14 (S.D.N.Y. Jan. 30, 2023), *report and recommendation adopted*, 2023 WL 2088526 (S.D.N.Y. Feb. 17, 2023) (dismissing NYCHRL claim where plaintiff did not allege comparators engaged in conduct of comparable seriousness). This deficiency is fatal to Wang's claims under the NYCHRL and NYSHRL.

Wang's NYSHRL claim is subject to dismissal for the additional reason that he cannot show that he suffered an "adverse employment action." The Second Circuit has held that "administrative leave with pay during the pendency of an investigation does not, without more, constitute an adverse employment action." *Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006) (Title VII context); *see also De Lorenzo v. King Kullen Grocery Co.*, 2020 WL 7047314, at *11-12 (E.D.N.Y. Aug. 12, 2020)*, report and recommendation adopted,* 2020 WL 7042835 (E.D.N.Y. Nov. 30, 2020) ("leave with full pay during the pending investigation does not constitute adverse employment action" for a NYSHRL retaliation claim, which takes a "broader" view of adverse actions than discrimination claims).

For these reasons, Wang's discrimination claims (Counts V, VII) should be dismissed.

### 2. Wang's *Prima Facie* Tort Claim Also Fails to State a Claim for Relief

Even if Wang's *prima facie* tort claim were not preempted, Count IX should be dismissed because it impermissibly serves "as a fallback reiteration of his other theories of liability." *Cestaro v. Prohaska*, 669 F. Supp. 3d 276, 282 (S.D.N.Y. 2023). Where "the basis for a *prima facie* tort claim is 'precisely the same' as the 'substantive acts' underlying the plaintiff's other 'causes of

action,' there can be no *prima facie* tort claim." *Id.* (citation omitted). The crux of the claim is that the Society violated the Award by placing Wang on paid leave, which is the same substantive act Wang pleads in his other causes of action. (Compl. ¶¶ 99-100, 129, 155.)

Wang's *prima facie* tort claim also fails to plausibly state a claim for relief. "For an action to lie in *prima facie* tort, plaintiff must prove the following elements: (1) intentional infliction of harm; (2) resulting in special damages; (3) without excuse or justification; (4) by an act that would otherwise be lawful." *Backer v. Cooperatieve Rabobank U.A.*, 338 F. Supp. 3d 222, 232 (S.D.N.Y. 2018) (citation omitted). "The touchstone [of a *prima facie* tort claim] is 'disinterested malevolence,' meaning that the plaintiff cannot recover unless the defendant's conduct was not only harmful, but done with the sole intent to harm." *Twin Lab'ys, Inc. v. Weider Health & Fitness*, 900 F.2d 566, 571 (2d Cir. 1990) (citation omitted). Wang does not and cannot assert the Society placed him on paid leave with the "sole intent to harm" him; the Society placed Wang on leave due to the pending investigations and the allegations concerning him. Wang's conclusory allegation that the Society refused to comply with the Award "without justification" (Compl. ¶ 183) is the type of "formulaic recitation of the elements of a cause of action" and bare legal conclusion "not entitled to the assumption of truth" on a motion to dismiss. *Iqbal*, 556 U.S. at 678.

In addition, to state a *prima facie* tort claim, a plaintiff must demonstrate "special damages" by alleging "specific and measurable loss." *See Freihofer v. Hearst Corp.*, 490 N.Y.S.2d 735, 741 (N.Y. 1985). "[S]uch damages must be alleged with sufficient particularity to identify actual losses and be related causally to the alleged tortious acts." *Luciano v. Handcock,* 433 N.Y.S.2d 257, 258 (N.Y. App. Div. 1980) (citation omitted). Wang points to lost non-Society "rehearsals, concerts and projects as a result of the suspension" (Compl. ¶ 185), but he fails to specifically tie the purported losses to the *Society's* conduct—as opposed to the publication of the article; notably,

Wang recently commenced a related action against the publisher of the article for defamation, seeking $100 million in damages (*see Wang v. Sussman, et al.*, Case No. 1:24-cv-03987, ECF No. 1 (S.D.N.Y. May 23, 2024))—and he does not plead with sufficient particularity the actual losses he alleges to have suffered.

Finally, Wang fails to plead that the Society engaged in an act that is "otherwise lawful," the fourth element of the cause of action. Wang alleges the tort is premised on the Society's placement of him on leave "in contumacious disregard of the Award" (Compl. ¶ 182), but he also alleges in the Complaint that this conduct constitutes a breach of contract and violates the discrimination laws. (Compl. ¶¶ 100, 129.) He cannot have it both ways—asserting that the Society's conduct is both lawful and unlawful. *See Ferrara v. Leticia, Inc.*, 2012 WL 4344164, at *5 (E.D.N.Y. Sept. 21, 2012) ("Since defendant has alleged that the conduct is an unlawful breach of contract, it cannot also argue that it is 'otherwise lawful' conduct that can be the subject of a *prima facie* tort claim."). Accordingly, Wang's *prima facie* tort claim should be dismissed under Rule 12(b)(6).

### D. WANG'S CLAIM FOR INJUNCTIVE RELIEF IS INAPPROPRIATELY PLED AS A SEPARATE CAUSE OF ACTION AND SHOULD BE DISMISSED

Wang styles a claim against the Society for "Injunctive Relief" (Count III), which should be dismissed because "injunctions are a form of relief, not a claim to be pleaded as a separate count." *Seibel v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 655 F. Supp. 3d 212, 223 (S.D.N.Y. 2023) (citation omitted) (dismissing cause of action for injunctive relief).

### CONCLUSION

For these reasons, the Society respectfully requests that the Court dismiss Counts I-V, VII, and IX of the Complaint with prejudice, and dismiss the Society from this action.

Dated: New York, New York
       June 5, 2024

Respectfully submitted,

*/s/ Howard Z. Robbins*
Howard Z. Robbins (Lead Trial Counsel)
Joshua S. Fox
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Telephone: 212.969.3000
Facsimile: 212.969.2900
hrobbins@proskauer.com
jfox@proskauer.com

*Attorneys for Defendant The Philharmonic-Symphony Society of New York, Inc.*