UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------- X

LIANG WANG,                                  :
                                             :  Case No.
                          Plaintiff,         :  1:24-cv-03356 (AS)
                                             :
          vs.                                :  [rel. 1:24-cv-03348 (AS)]
                                             :
THE PHILHARMONIC-SYMPHONY SOCIETY            :
OF NEW YORK, INC. AND ASSOCIATED             :
MUSICIANS OF GREATER NEW YORK, LOCAL         :
802, AMERICAN FEDERATION OF MUSICIANS,       :
                                             :
                          Defendants.        :
------------------------------------------- X

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY
JUDGMENT IN RESPONSE TO DEFENDANT LOCAL 802'S RULE 56.1 STATEMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Local Rules of the United States District Court for the Southern District of New York, Plaintiff Liang Wang respectfully submits this Reply in further support of his Motion for Partial Summary Judgment in response to the Rule 56.1 Statement of Defendant Associated Musicians of Greater New York, Local 802, American Federal of Musicians' ("Local 802").

**GENERAL OBJECTIONS**

Plaintiff sets forth the following General Objections to Local 802's responses to Plaintiff's Statement of Undisputed Material Facts:

1. General Objection 1: To the extent that Local 802 objects to the Statements of Fact ("SOF") on the technical ground that citations to allegations in the unverified Complaint are inadmissible pursuant to Fed. R. Civ. P. 56(c) and Local Civil Rule 56.1(d), Plaintiff notes that he has filed a Motion for Leave to Amend the Complaint to include a verification page, which will address and cure Local 802's technical objection. And in any event, the Court may

11348510.4

exercise its discretion to credit the facts as undisputed. *See Wang v. Vahldieck*, No. 09-CV-3783, 2012 WL 119591, at *1 (E.D.N.Y. Jan. 9, 2012) (noting court's broad discretion to review the record to determine whether proposed undisputed facts were disputed). This is particularly appropriate where, as here, such objections are accompanied, in most instances, with an admission that Local 802 does not dispute the substance of Plaintiff's statements of material fact.

2. General Objection 2: Local 802 does not expressly admit or deny a statement. To the extent that Local 802 does not explicitly deny a statement of fact, such statement is deemed admitted. *See Buckman v. Calyon Secs.*, 817 F. Supp. 2d 322, 328 n. 42 (S.D.N.Y. 2011) ("56.1 statements not explicitly denied by plaintiff are deemed admitted."). *See, e.g.* SOF ¶ 10, 18, 21.

3. General Objection 3: Local 802 introduces further arguments in an apparent effort to mitigate the impact of the admissions they are compelled to make. Those additional arguments and citations should be disregarded when determining whether a fact is genuinely disputed. *See U.S. Info. Sys., Inc. v. Int'l Broth. of Elec. Workers Local Union No. 3*, No.00 Civ. 4763 RMB JCF, 2006 WL 2136249, at *3 (S.D.N.Y. Aug. 1, 2006) ("[P]laintiffs cannot evade the impact of accepting a fact by adding legal argument to their counterstatements."). *See, e.g.* SOF ¶¶ 16, 20; *Goldstick v. The Hartford, Inc.*, 2002 WL 1906029, at *1 (plaintiffs' statement does not comply with Local Rule 56.1 where it "adds argumentative and often lengthy narrative in almost every case the object of which is to "spin" the impact of the admissions plaintiff has been compelled to make.").

4. General Objection 4: Local 802 asserts that a fact is undisputed, and thus admitted, but then includes additional commentary or equivocal statements. Such extraneous statements should be disregarded. *Baity v. Kralik*, 51 F. Supp. 3d 414, 421 (S.D.N.Y. 2014) (finding 56.1

responses non-compliant where "counsel neither admits nor denies a particular fact, but instead responds with equivocal statements such as: 'Admit, but defendant omits the balance of plaintiff's testimony[.]'"). *See, e.g.* SOF ¶¶ 20, 27.

## PLAINTIFF'S REPLY TO LOCAL 802'S RESPONSES

1.      Wang has been employed since 2006 by Defendant, The Philharmonic-Symphony Society of New York ("the Philharmonic"). He has long been a tenured member of the orchestra and held the prestigious position of principal oboe. Complaint of Liang Wang dated May 1, 2024 (Doc. No. 1) ("Compl.") ¶19; Declaration of Liang Wang in Support of Motion for Partial Summary Judgment ("Wang Decl.") ¶1, Ex. A.

**Local 802's Response to ¶ 1:**

Portions of this statement are not supported by a citation to admissible evidence as required by Fed. R. Civ. P. 56(c) and Local Civil Rule 56.1(d). Without waiver of this objection, Local 802 does not dispute that Wang has been employed since 2006 by the Philharmonic and that he holds a tenured position with the Orchestra as Principal Oboe.

**Plaintiff's Reply:**

**Defendant has ADMITTED SOF ¶ 1 in substance. Plaintiff refers the Court to General Objection #1, addressing Local 802's technical objection. *See* Gen. Obj. 1.**

2.      Wang is now, and has been at all relevant times, a member in good standing of the union that represents all musicians in the orchestra, Defendant Associated Musicians of Greater New York, Local 802, American Federation of Musicians ("Union" or "Local 802"). Compl. ¶¶19, 75.

**Local 802's Response to ¶ 2:**

This statement is not supported by a citation to admissible evidence as required by Fed. R. Civ. P. 56(c) and Local Civil Rule 56.1(d). Without waiver of this objection, Local 802 does not dispute that Plaintiff is a member in good standing of Local 802.

**Plaintiff's Reply:**

**Defendant has ADMITTED SOF ¶ 2 in substance. *See also* Gen. Obj. 1.**

3.      Defendant Local 802 is a "labor organization" within the meaning of 29 U.S.C § 152 and is the exclusive bargaining representative between members of the orchestra, including Wang, and the Philharmonic.  Compl. ¶¶20, 76.

**Local 802's Response to ¶ 3:**

This statement is not supported by a citation to admissible evidence as required by Fed. R. Civ. P. 56(c) and Local Civil Rule 56.1(d).  Without waiver of this objection, Local 802 does not dispute that Local 802 is a "labor organization" within the meaning of 29 U.S.C. § 152 and is the exclusive bargaining representative for a bargaining unit of musicians, including Plaintiff, who are employed by the Philharmonic.

**Plaintiff's Reply:**

**Defendant has ADMITTED SOF ¶ 3 in substance. *See also* Gen. Obj. 1.**

4.      The Philharmonic and the Union are parties to a collective bargaining agreement entitled "Trade Agreement" with an effective date of September 21, 2020 through September 20, 2024 (the "CBA").  Compl. ¶31; Wang Decl. Ex. I, Article II.

**Local 802's Response to ¶ 4:**

Admits.

**Plaintiff's Reply:**

**ADMITTED.**

5.      Mr. Wang is a "musician" as that term is used in the CBA.  Compl. ¶89.

**Local 802's Response to ¶ 5:**

This statement is not supported by a citation to admissible evidence as required by Fed. R. Civ. P. 56(c) and Local Civil Rule 56.1(d).  Without waiver of this objection, Local 802 does not dispute that Plaintiff is a "musician" as that term is used in the CBA.

**Plaintiff's Reply:**

**Defendant has ADMITTED ¶ 5 in substance.** *See also* **Gen. Obj. 1.**

6.       In 2018, the Philharmonic undertook an investigation into specific allegations of misconduct by a musician named Cara Kizer against another musician, Matthew Muckey, relating to alleged events that occurred in Vail, Colorado in 2010 (the "Vail Investigation"). Compl. ¶¶26, 28.

**Local 802's Response to ¶ 6:**

This statement is not supported by a citation to admissible evidence as required by Fed. R. Civ. P. 56(c) and Local Civil Rule 56.1(d).  Without waiver of this objection, Local 802 does not dispute that the Philharmonic conducted an investigation into allegations of misconduct by a musician named Cara Kizer against another musician, Matthew Muckey ("Muckey"), relating to alleged events that occurred in Vail Colorado in 2010.

**Plaintiff's Reply:**

**Defendant has ADMITTED SOF ¶ 6 in substance.** *See also* **Gen. Obj. 1.**

7.       Wang was a witness in the Vail Investigation and was *not* accused by the Philharmonic of misconduct directed at Kizer in Vail or anywhere.  Compl. ¶¶15, 25, 30.

**Local 802's Response to ¶ 7:**

This statement is not supported by a citation to admissible evidence as required by Fed. R. Civ. P. 56(c) and Local Civil Rule 56.1(d).  Without waiver of this objection, Local 802 does not dispute that Plaintiff was interviewed as a witness during the Philharmonic's 2018 investigation of

Kizer's allegations against Muckey and that during the 2018 investigation the Philharmonic did not accuse Plaintiff of any alleged misconduct involving Kizer.

**Plaintiff's Reply:**

**Defendant has ADMITTED SOF ¶ 7 in substance. *See also* Gen. Obj. 1.**

8.      During the Vail Investigation, a separate individual accused Wang of misconduct that allegedly occurred years before the events of 2010 that gave rise to Kizer's accusation against Muckey.  Wang denied the allegations.  Compl. ¶34.

**Local 802's Response to ¶ 8:**

This statement is not supported by a citation to admissible evidence as required by Fed. R. Civ. P. 56(c) and Local Civil Rule 56.1(d).  Without waiver of this objection, Local 802 does not dispute that during the 2018 investigation a separate individual accused Plaintiff of misconduct and that Plaintiff denied the allegations.

**Plaintiff's Reply:**

**Defendant has ADMITTED SOF ¶ 8 in substance. *See also* Gen. Obj. 1.**

9.      At the conclusion of the Vail Investigation, the Philharmonic terminated Muckey. The Philharmonic also terminated Wang for wholly separate reasons.  Compl. ¶30; *see* Declaration of Alan S. Lewis ("Lewis Decl.") Ex. E.

**Local 802's Response to ¶ 9:**

Local 802 does not dispute that at the conclusion of its 2018 investigation the Philharmonic terminated both Plaintiff and Muckey.  Local 802 also does not dispute that the Philharmonic terminated Plaintiff and Muckey based on separate allegations of misconduct.

**Plaintiff's Reply:**

**The statement should be deemed ADMITTED as Defendant does not dispute the facts set forth in SOF ¶ 9.**

10.     Article VII of the CBA provides that the Philharmonic may only discipline musicians "for just cause."  Compl. ¶32; Wang Decl. Ex. I, Article VII.

**Local 802's Response to ¶ 10:**

Refers to the document for its contents.  Article VII.E.7 of the CBA provides that the "Society may take disciplinary measures in the event of the violation of these rules or for other just cause." July 29, 2024 Declaration of Liang Wang, Dkt. No. 38 ("Pl. Decl.") Ex. I.

**Plaintiff's Reply:**

**The statement should be deemed ADMITTED as Defendant does not dispute the fact set forth in SOF ¶ 10.**

11.     Article XV of the CBA between the Philharmonic and the Union expressly provides that, in the case of termination of a member, the Union may demand arbitration of the dismissal pursuant to the Voluntary Labor Arbitration Rules of the American Arbitration Society.  Such rules require joint selection of a neutral third party to arbitrate the dispute.  Article XV of the CBA further provides as follows:

> The decision of the Arbitrator shall be ***final and binding*** upon the Society, the Union and the individual Orchestra member involve….

Compl. ¶31; Wang Decl. Ex. I.

**Local 802's Response to ¶ 11:**

Refers to the document for its contents.  Article XV.A of the current CBA provides:

> In the event a notice of termination is given to any Orchestra member in accordance with Article XIV above, a copy of such notice shall be mailed to the Union by registered mail within two (2) weeks after it is mailed to the member. If the individual concerned protests such termination, the Union shall then instruct the Orchestra Committee to call a meeting of the Orchestra so that a Dismissal Review Committee of nine (9) shall be elected. The Union, in conjunction with the Dismissal Review Committee and the Society, shall meet immediately to settle the dispute. If the matter is not settled within two (2) weeks after notice to the Union, then the propriety of the termination may be submitted to arbitration by the Union within sixty (60) days after receipt of said notice, under the Voluntary Labor Arbitration Rules of the

American Arbitration Association. The standard of proof applicable to any disputes adjudicated pursuant to this section will be the "preponderance of evidence" standard. The decision of the Arbitrator shall be final and binding upon the Society, the Union, and the individual Orchestra member involved, and the costs of the arbitration shall be borne equally by the Society and the Union. The provisions of this Section A shall apply to all members of the Orchestra except probationary employees.

Pl. Decl. Ex. I.

**Plaintiff's Reply:**

**The statement should be ADMITTED as to the quoted language as Defendant Local 802 does not dispute the fact set forth in SOF ¶ 11.** ***See*** **Gen. Obj. 2 and 4.**

12.    Local 802 grieved Wang's 2018 termination.  Compl. ¶34.

**Local 802's Response to ¶ 12:**

This statement is not supported by a citation to admissible evidence as required by Fed. R. Civ. P. 56(c) and Local Civil Rule 56.1(d).  Without waiver of this objection, Local 802 does not dispute that Local 802 filed a grievance challenging Plaintiff's 2018 termination.

**Plaintiff's Reply:**

**Defendant has ADMITTED SOF ¶ 12 in substance.** ***See also*** **Gen. Obj. 1.**

13.    Local 802 also grieved Muckey's 2018 termination. Compl. ¶31.

**Local 802's Response to ¶ 13:**

This statement is not supported by a citation to admissible evidence as required by Fed. R. Civ. P. 56(c) and Local Civil Rule 56.1(d).  Without waiver of this objection, Local 802 does not dispute that Local 802 filed a grievance challenging Muckey's 2018 termination.

**Plaintiff's Reply:**

**Defendant has ADMITTED SOF ¶ 13 in substance.** ***See also*** **Gen. Obj. 1.**

14.     Both grievances were submitted to arbitration pursuant to Article XV of the CBA

then in effect. For reasons of convenience, the parties agreed to have a single arbitrator adjudicate

the two otherwise distinct grievances. Compl. ¶31.

**Local 802's Response to ¶ 14:**

This statement is not supported by a citation to admissible evidence as required by Fed. R.

Civ. P. 56(c) and Local Civil Rule 56.1(d).  Without waiver of this objection, Local 802 does not

dispute that Local 802 submitted the grievances concerning Plaintiff's and Muckey's terminations to

arbitration and that a single arbitrator adjudicated the grievances.

**Plaintiff's Reply:**

**Defendant has ADMITTED SOF ¶ 14 in substance.** *See also* **Gen. Obj. 1.**

15.     The parties jointly selected Richard I. Bloch, as the neutral third party, and the

arbitration was held over the course of eight months during 2019. Twenty-two witnesses testified

over 20 days, including Wang. Compl. ¶34; Lewis Decl. ¶13.

**Local 802's Response to ¶ 15:**

This statement is not supported by a citation to admissible evidence as required by Fed. R.

Civ. P. 56(c) and Local Civil Rule 56.1(d).  Without waiver of this objection, Local 802 does not

dispute that the parties selected Richard I. Bloch to serve as arbitrator and that the arbitration took

place over the course of eight months during 2019.  Local 802 further does not dispute that 22

witnesses testified over 20 days, including Plaintiff.

**Plaintiff's Reply:**

**Defendant has ADMITTED SOF ¶ 15 in substance.** *See also* **Gen. Obj. 1.**

16.     In April 2020, arbitrator Bloch issued a decision determining that the

Philharmonic had failed to meet its burden to show it had just cause to terminate Wang (or

Muckey), and ordered both musicians reinstated and made whole, including restoration of seniority and all benefits, and back pay. Compl. ¶35.

**Local 802's Response to ¶ 16:**

This statement is not supported by a citation to admissible evidence as required by Fed. R. Civ. P. 56(c) and Local Civil Rule 56.1(d).  Without waiver of this objection, Local 802 does not dispute that the Arbitrator Bloch issued an April 2020 decision determining that the Philharmonic had failed to meet its burden to show by "clear and convincing evidence" that it had just cause to terminate Plaintiff or Muckey. Cutler Decl. ¶ 2. Further notes that the arbitrator also stated: "Nothing in this opinion should be read as concluding that all doubt has been removed concerning the actions of the grievants in this matter." *Id.*  Local 802 does not dispute that the Philharmonic ordered both musicians reinstated and made whole, including restoration of seniority and all benefits, and back pay.

**Plaintiff's Reply:**

**Defendant has ADMITTED SOF ¶ 16 in substance, *See also* Gen. Obj. 1 and 4.**

17.    The Philharmonic paid Wang all withheld wages and reinstated him (and Muckey), not only by restoring his salary and benefits, but also by restoring him to the performance and rehearsal schedule, commensurate with his peers. Compl. ¶36; Wang Decl. ¶11.

**Local 802's Response to ¶ 17:**

Admits that the Philharmonic paid Plaintiff all withheld wages and reinstated him and Muckey.  As Plaintiff notes in ¶ 16 *supra*, the arbitrator only ordered the Philharmonic to reinstate Plaintiff to his position as a tenured member of the orchestra and to make him whole for any lost wages, benefits or seniority.  The arbitrator expressly stated that he was awarding no other remedies. Cutler Decl. ¶3.  It is unclear what is meant by Plaintiff's characterization of his performance and rehearsals schedule as "commensurate with his peers."  Plaintiff provides no detail as to his definition

of "commensurate with" or "his peers." For this reason, Local 802 is unable to respond to this statement.

**Plaintiff's Reply:**

**Defendant has ADMITTED ¶ 17 in substance. *See also* Gen. Obj. 1. Local 802 does not dispute the facts set forth in Plaintiff's SOF ¶ 17 up to "commensurate with his peers" and Local 802's objection to that phrase does not properly controvert or explicitly deny it and should be disregarded. *See* Gen. Obj. 2.**

18.      Since Wang's reinstatement in 2020 through April 12, 2024, Wang was performing, rehearsing and participating in other Philharmonic activities regularly, commensurate with his peers. Compl. ¶38; Wang Decl. ¶11.

**Local 802's Response to ¶ 18**

Admits that Plaintiff regularly performed and rehearsed with the Orchestra from his reinstatement in 2020 until his placement on paid administrative leave in April 2024. It is unclear what is meant by Plaintiff's characterization of his performance and rehearsals schedule as "commensurate with his peers." Plaintiff provides no detail as to his definition of "commensurate with" or "his peers." For this reason, Local 802 is unable to respond to this statement.

**Plaintiff's Reply:**

**Defendant has ADMITTED ¶ 18 in substance. Local 802 does not dispute the facts set forth in Plaintiff's SOF ¶ 18 up to "commensurate with his peers" and Local 802's objection to that phrase does not properly controvert or explicitly deny it and should be disregarded. *See* Gen. Obj. 2.**

19.      On April 12, 2024, New York Magazine published an article online bearing the headline "A Hidden Sexual-Assault Scandal at the New York Philharmonic: two musicians were

fired for sexual misconduct. Why are they back with the orchestra?" (the "Article"). The "two musicians" referred to are Muckey and Wang. Compl. ¶37; Lewis Decl. ¶14, Ex. I.

**Local 802's Response to ¶ 19:**

Admits.

**Plaintiff's Reply:**

**ADMITTED.**

20.    The Article's focus was the alleged sexual assault of Cara Kizer in Vail, Colorado, in 2010. Kizer's allegation was a subject of the binding arbitration, which the Article criticized. *Id*.

**Local 802's Response to ¶ 20**

Refers to the article for its contents.  July 29, 2024 Declaration of Alan S. Lewis, Dkt. No. 29 ("Lewis Decl.") Ex. I.  Admits that the Article's main focus was the alleged sexual assault of Cara Kizer in Vail, Colorado in 2010.  Plaintiff's characterization of the article as criticizing the arbitration is not a "fact" to which a response is required under Fed. R. Civ. P. 56(c) and Local Civil Rule 56.1(d).

**Plaintiff's Reply:**

**ADMITTED in substance, as Defendant does not dispute the fact set forth in SOF ¶ 20, notwithstanding the quibble regarding Plaintiff's characterization of article as "criticiz[ing]" arbitration.**

21.    Notably, the Article contained no new allegations, or no new facts relating to those allegations, that had not been fully vetted by the arbitrator. Compl. ¶49.

**Local 802's Response to ¶ 21**

This is statement is not supported by admissible evidence as required by Fed. R. Civ. P. 56(c) and Local Civil Rule 56.1(d).

**Plaintiff's Reply:**

**Defendant has ADMITTED SOF ¶ 21 in substance. *See* Gen. Obj. 1, 2.**

22.     On April 13, Wang's counsel, Alan S. Lewis, received a telephone call from Howard Z. Robbins, attorney for the Philharmonic, instructing that Wang should not come to rehearsals or performances until told otherwise. Robbins referred to the Article when communicating this decision and did not specify any reason for the decision other than strong reactions to the Article. Robbins implied that the Philharmonic needed a few weeks to deal with public relations issues relating to the Article before again restoring Wang to his position. Neither on April 13, nor subsequently, has the Philharmonic ever claimed that Wang was suspended for a reason that could constitute just cause. Lewis Decl. ¶2.

**Local 802's Response to ¶ 22:**

Denies knowledge sufficient to admit or deny this statement since Local 802 was not a party to the phone call between counsel for Plaintiff and counsel for the Society. Disputes that Plaintiff was ever "suspended." Plaintiff has failed to provide admissible evidence as required by Fed. R. Civ. P. 56(c) and Local Civil Rule 56.1(d) supporting his assertion that the Philharmonic "suspended" him. In contrast, the undisputed evidence demonstrates that the Philharmonic informed Plaintiff that it would continue to pay him but would not assign him to rehearse or perform for the time being and that the Philharmonic placed Plaintiff on paid administrative leave pending investigation. *See*, *e.g.*, Lewis Decl. Ex. C (5/21/24 Email from Society Counsel to Plaintiff Counsel) ("Please note that your client, Mr. Wang, remains on *paid leave pending the completion of the Philharmonic's on-going investigation . . .*") (emphasis added); *id.* ¶2 (On April 13, 2024, Society Counsel advised Plaintiff Counsel "Wang was not to report to performances or rehearsals for the time being"); Pl. Decl. Ex. B (4/13/24 Email from then Society CEO to Orchestra) ("Please note that for the time being Matthew Muckey and Liang Wang will not be at rehearsals or performances"); Lewis Decl. Ex. A (4/17/24 Email from then Society Counsel to Plaintiff Counsel) ("Please note that the New York Philharmonic is changing its program and Mr. Wang will not be appearing in the concerts where he was to be a

soloist beginning May 8."); Pl. Decl. Ex. C (4/18/24 Posting by Society CEO to Philharmonic Community) ("At my direction, the Philharmonic has engaged Katya Jestin, co-managing partner of the law firm Jenner & Block, to launch an investigation into the culture of the New York Philharmonic…For the time being, musicians Matthew Muckey and Liang are not being assigned to any Philharmonic activity as we work through this process…").  A determination as to whether Plaintiff's placement on paid administrative leave constitutes discipline is a legal rather than factual issue.

**Plaintiff's Reply:**

**Defendant has ADMITTED SOF ¶ 22 in substance.  Such statement was not denied, and thus should be deemed admitted, as set forth further in General Objection 2.   To the extent Defendant objects to Wang's characterization of his employment status as a "suspension," for purported lack of admissible evidence, Wang disputes that assertion.  *See* Lewis Decl. at ¶¶ 2-8 and the exhibits referenced therein.  *See also* ECF 52 ¶ 22 (admitting that Philharmonic did not send Wang or his counsel any communications labeling his employment status as a "paid leave" prior to the May 21 email.)**

23.    On April 13, Gary Ginstling, who was at that time President and CEO of the Philharmonic, emailed members of the orchestra. The email read in full:

> Dear NY Phil Colleagues,
>
> Please note that for the time being, Matthew Muckey and Liang Wang will not be at rehearsals or performances.
>
> Thank you,
>
> Gary

Compl. ¶41, Wang Decl. Ex. B.

**Local 802's Response to ¶ 23:**

Refers to the email for its contents.  Local 802 does not dispute that the email contained the language quoted above.

**Plaintiff's Reply:**

**ADMITTED, as Defendant does not dispute the fact set forth in SOF ¶ 23.**

24.    In an article published by the New York Times on April 15, 2024, titled "The Philharmonic Sidelines 2 Players It Tried to Fire for Misconduct" (the "April 15th Article"), it was reported as follows:

> *The Philharmonic said* that the players — the principal oboist, Liang Wang, and the associate principal trumpet, Matthew Muckey— would *not appear as the orchestra deals with the fallout from a New York magazine article* published on Friday.

Lewis Decl. Ex. J (emphasis added).

**Local 802's Response to ¶ 24:**

Admits that the *New York Times* published an article on April 15, 2024 titled "Philharmonic Sidelines 2 Players It Tried to Fire for Misconduct" and refers to the article for its contents.  Lewis Decl. Ex. J.

**Plaintiff's Reply:**

**ADMITTED as to existence and contents, as Defendant does not dispute the language quoted and set forth in SOF ¶ 24.**

25.    The April 15th Article also quotes Ginstling as acknowledging that the decision reinstating Mr. Wang (and Muckey) to the orchestra was made "through binding arbitration", with Ginstling then emphasizing that "binding is the key word." Compl. ¶44; Lewis Decl. Ex. J.

**Local 802's Response to ¶ 25:**

Admits that the April 15th *New York Times* article quoted Gary Ginstling and refers to the article for its contents.  The article stated:

> Gary Ginstling, the Philharmonic's current president and chief executive, said in an interview on Monday that the New York magazine report had "prompted a lot of strong feels" and confirmed that Mr. Muckey and Mr. Wang were not playing with the orchestra at the moment.
>
> Mr. Ginstling declined to say when they might rejoin the ensemble, or whether the orchestra would once again seek their termination. But he noted that the Philharmonic faced constraints because of the 2020 ruling, which the orchestra criticized at the time.
>
> "The determination was through binding arbitration," Mr. Ginstling said. "Binding is the key word.

**Plaintiff's Reply:**

**ADMITTED as to existence and contents, as Defendant does not dispute the fact set forth in SOF ¶ 25. *See* Gen. Obj. 2 and 4.**

26.     The April 15th Article also quotes the Philharmonic's orchestra committee, a division of the Union that pursuant to Section XI of the CBA represents "musicians" (as that term is defined therein), Wang Decl. Ex. I, as stating that "we believe Cara" and asserting "we don't believe these are isolated incidents involving … Liang Wang." Compl. ¶45; Lewis Decl. Ex. J.

**Local 802's Response to ¶ 26:**

Admits that the April 15th *New York Times* article also quoted the Orchestra Committee, a committee established pursuant to Article XI of the CBA, Pl. Decl. I., and refers to the article for its contents.  The article stated:

> The orchestra committee, which represents players, said in a statement that it is "the overwhelming sentiment from the orchestra that we believe Cara" and that "we don't believe these are isolated incidents involving Matt Muckey and Liang Wang."  The committee added that the orchestra has a culture of "not taking musician complaints seriously so musicians often do not feel safe in raising accusations of sexual harassment and assault" and called on management to take action to provide a safe workplace.

Lewis Decl. Ex. J.

**Plaintiff's Reply:**

**Defendant has ADMITTED as to existence and contents, as Defendant does not dispute the fact set forth in SOF ¶ 26.** *See* **Gen. Obj. 2 and 4.**

27.      The April 15th Article also reported that Union President Sara Cutler, "said in a statement on Monday that the decision to keep Mr. Wang and Mr. Muckey offstage for the time being 'are good first steps but they can't be the last'" and also said "As a woman … I am horrified by what was in the story." Compl. ¶44; Lewis Decl. Ex. J.

**Local 802's Response to ¶ 27:**

Admits that the April 15th *New York Times* article also quoted Local 802 President Sara Cutler and refers to the article for its contents.  Directly following the statement by the Orchestra Committee, the article stated:

> Sara Cutler, the president and executive director of Local 802, who took office last year, struck a different tone than her predecessors. She said in a statement on Monday that the decision to keep Mr. Wang and Mr. Muckey offstage for the time being "are good first steps but they can't be the last."
>
> "As a woman, a musician and a new union president," she said, "I am horrified by what was in the story and we are committing the full resources of Local 802 to erase the culture of complicity that has raged at the N.Y. Philharmonic for too long."

Lewis Decl. Ex. J.

**Plaintiff's Reply:**

**Defendant has ADMITTED as to existence and contents, as Defendant does not dispute the fact set forth in SOF ¶ 27.** *See* **Gen. Obj. 2, 3, and 4.**

28.      The April 15th Article also quoted Lewis as saying: "The Philharmonic decided that it would be best for Liang and the other musician to take a couple of weeks off while the Philharmonic manages the firestorm that the distorted article ignited." Lewis Decl. Ex. J.

**Local 802's Response to ¶ 28:**

Admits that the April 15th *New York Times* article also quoted Lewis and refers to the article for its contents.  Lewis Decl. Ex. J.

**Plaintiff's Reply:**

**Defendant has ADMITTED as to existence and contents.**

29.     On April 17, Robbins, notified Lewis by email stating "Please note that **the New York Philharmonic is changing its program and Mr. Wang will not be appearing in the concerts where he was to be a soloist beginning May 8**." Lewis Decl. Ex. A (bold in original).

**Local 802's Response to ¶ 29:**

Refers to the email for its contents.  Admits the April 17th email from Robbins to Lewis stated in part: "Please note that the New York Philharmonic is changing its program and Mr. Wang will not be appearing in the concerts where he was to be a soloist beginning May 8" and notes that in Exhibit A to the Lewis Declaration this statement does not appear in bold.

**Plaintiff's Reply:**

**ADMITTED as to existence and contents (except bolding).**

30.     On April 18, Ginstling sent an email to the entire New York Philharmonic Community that read in full as follows:

Dear New York Philharmonic Community,

The details revealed in the New York magazine article are horrifying to me personally, and, while not yet a year into my tenure as President and CEO of the New York Philharmonic, I am deeply concerned about not only the specifics but broader issues of institutional culture. Therefore, I have taken the following immediate steps:

a.  At my direction, the Philharmonic has engaged Katya Jestin, co-managing partner of the law firm Jenner & Block, to launch an independent investigation into the culture of the New York Philharmonic in recent years. Katya has extensive experience handling sexual misconduct investigations and related matters involving extremely sensitive interviews. I am empowering Katya to look at everything and to leave no stone unturned, including any new allegations as they are reported. I pledge to share the recommendations with our board, our staff and our musicians as well as with the general public. More details on the process will be coming shortly.

b.  For the time being, musicians Matthew Muckey and Liang Wang are not being assigned to any Philharmonic activity as we work through this process, and a decision about their future with the New York Philharmonic will be made in due course.

c.  The New York Philharmonic is preparing to seek changes to its audition and tenure review policies and procedures to provide more transparency, oversight and equity to the process. We look forward to working with Local 802 and our musician colleagues on these changes. Nothing is more important than the culture of our orchestra and the safety of our musicians and staff, and it is only through this process that we will build the kind of vibrant and inclusive culture we all want.

Thank you,
Gary Ginstling

Compl. ¶¶49, 50; Wang Decl. Ex. C.

**Local 802's Response to ¶ 30:**

Admits that Ginstling distributed a message to the "New York Philharmonic Community" on April 18, 2024 with the above text. The cited evidence is a Facebook post not an email. Pl. Decl. Ex. C.

**Plaintiff's Reply:**

**Defendant has ADMITTED as to existence and contents.  Wang does not dispute that the admitted content appeared in a Facebook post, not an email.**

31.      On April 19, 2024, Ginstling emailed the Philharmonic's musicians, notifying them that the Philharmonic had retained attorney Tracey Levy, to "investigate new allegations of sexual harassment, violence and/or abuse alleged to have been committed by any musicians employed by the Philharmonic." Thus, the Levy investigation did not exist at the time the Philharmonic suspended Wang. Wang Decl. Ex. D.

**Local 802's Response to ¶ 31:**

As to the first sentence of paragraph 31, admits that Ginstling emailed the Philharmonic's musicians on April 19 and refers to the email for its contents.  The email, in part, states:

> The New York Philharmonic has retained an investigator to investigate new allegations of sexual harassment, violence and/or abuse alleged to have been committed by any musicians employed by the Philharmonic.

As to the second sentence of paragraph 31, Plaintiff has failed to provide admissible evidence as required by Fed. R. Civ. P. 56(c) and Local Civil Rule 56.1(d) supporting his assertion that the Philharmonic "suspended" him.  The April 19th email from Ginstling makes no reference to Plaintiff or a "suspension."  In contrast, the undisputed evidence demonstrates that the Philharmonic informed Plaintiff that it would continue to pay him but would not assign him to rehearse or perform for the time being and that the Philharmonic placed Plaintiff on paid administrative leave pending investigation. *See* Local 802's Response to ¶22.  A determination as to whether Plaintiff's placement on paid administrative leave constitutes discipline is a legal rather than factual issue.  Moreover, Plaintiff's unsupported supposition that the Levy investigation did not exist at the time of his "suspension" is not a "fact" which requires a response under Fed. R. Civ. P. 56(c) and Local Civil

Rule 56.1(d).  The April 19th email simply states that the Philharmonic retained an investigator.  It does not indicate the date of such retention.

**Plaintiff's Reply:**

**Defendant has ADMITTED SOF ¶ 31 in substance, directly as to first sentence and indirectly as to second.  *See* Gen. Obj. 2, 3 and 4.  To the extent Defendant objects to Wang's characterization of his employment status as a "suspension," for purported lack of admissible evidence, Wang disputes that assertion.  *See* Lewis Decl. at ¶¶ 2-8 and the exhibits referenced therein.**

32.      On April 19, 2024, Robbins emailed further direction to Lewis as follows:

> … [T]o add a detail to my prior communication that Mr. Wang should not report to rehearsals or performances until further notice, I would like to clarify that this means they should not **come into David Geffen Hall.**  If your client would like access to the building for some reason, please contact me about making such arrangements.

Compl. ¶51; Lewis Decl. Ex. B (bold in original).

**Local 802 Response to ¶ 32**

Admits that counsel for Philharmonic sent an email to counsel for Plaintiff on April 19 with this statement and refers to the email for its contents.  Further notes that in Exhibit A to the Lewis Declaration this statement does not appear in bold.

**Plaintiff's Reply:**

**Defendant has ADMITTED as to existence and contents (except bolding).**

33.      On April 17, 2024, Lewis sent a letter to Local 802 counsel Susan Davis requesting a meeting with Local 802 or its counsel in light of President's Cutler's public statement.  The letter stated that "[b]y endorsing Liang[] Wang's suspension in the statement made to the New York Times, based on a misimpression gained from a flawed magazine article – and about a matter in which the Union has both full access to the actual facts and a clear legal duty to Mr. Wang as a

union member – the Union has done a grave disservice to Mr. Wang and his reputation." Compl. ¶63; Lewis Decl. ¶9, Ex. E; Singer Decl. Ex. F.

**Local 802 Response to ¶ 33:**

Admits that counsel for Plaintiff sent a letter to counsel for Local 802 on April 17, 2024 and refers to the letter for its contents.  Lewis Decl. Ex. E.

**Plaintiff's Reply:**

**Defendant has ADMITTED as to existence and contents.**

34.     On April 18, 2024, Davis sent a letter to Lewis identifying an employee of the Union as the specific person to whom Wang's request for the Union to protest the suspension should be made. Compl. ¶63; Lewis Decl. ¶10, Ex. F; Singer Decl. Ex. G.

**Local 802 Response to ¶ 34:**

Admits that counsel for Local 802 sent a letter to counsel for Plaintiff on April 18, 2024 and refers to the letter for its contents.  Disputes that the letter characterized Plaintiff's placement on paid administrative leave as a "suspension." *See also* Local 802's Response to ¶¶ 22, 31.

**Plaintiff's Reply:**

**Defendant has ADMITTED as to existence and contents.**

35.     On April 19, 2024, Lewis sent a letter to Davis and the Union representative identified in the April 18th Davis letter, demanding that the Union seek enforcement of the Arbitration Award and/or otherwise take action in connection with the Philharmonic's indefinite suspension of Wang. Compl. ¶63; Lewis Decl. ¶11, Ex. G; Singer Decl. Ex. H.

**Local 802 Response to ¶ 35**

Admits that counsel for Plaintiff sent a letter to counsel for Local 802 and Local 802 representative Dan Point on April 19, 2024 and refers to this letter for its contents.  Lewis Decl. Ex.

G.  Disputes Plaintiff's characterization of his placement on paid administrative leave pending investigation as an "indefinite suspension."  *See* Local 802's Response to ¶¶22, 31.

**Plaintiff's Reply:**

**Defendant has ADMITTED ¶ 35 in substance.  To the extent Defendant objects to Wang's characterization of his employment status as a "suspension," for purported lack of admissible evidence, Wang disputes that assertion.  *See* Lewis Decl. at ¶¶ 2-8 and the exhibits referenced therein.**

36.      By reply letter of Davis to Lewis dated April 26, 2024, Local 802 rejected Wang's request to enforce the Arbitration Award or otherwise protest or grieve his suspension. Among other things, Davis stated that "the NY Philharmonic engaged an investigator to determine whether there were any new or different allegations of sexual misconduct by any members of the Orchestra, including your client. Local 802 has determined to await the outcome of that investigation before determining how to proceed." Compl. ¶63; Lewis Decl. ¶12, Ex. H; Singer Decl. Ex. I.

**Local 802 Response to ¶ 36**

Admits that counsel for Local 802 sent a letter to counsel for Plaintiff on April 26, 2024 and refers to the letter for its contents.  Lewis Decl. Ex. H.  Disputes Plaintiff's characterization of the letter as "rejecting" Plaintiff's request to "otherwise protest or grieve his suspension."  In the letter, counsel for Local 802 stated that the Philharmonic had engaged an investigator to "determine whether there were any new or different allegations of sexual misconduct" and that "Local 802 has determined to await the outcome of that investigation before determining how to proceed."  Disputes plaintiff's characterization of his placement on paid administrative leave as a "suspension." *See* Local 802's Response to ¶¶22, 31.

**Plaintiff's Reply:**

**Defendant has ADMITTED as to existence and contents. To the extent Defendant objects to Wang's characterization of his employment status as a "suspension," for purported lack of admissible evidence, Wang disputes that assertion. *See* Lewis Decl. at ¶¶ 2-8 and the exhibits referenced therein. See also Gen Obj. 3, 4.**

37.     To date the Union has taken no steps to enforce the Arbitration Award in connection with Wang's ongoing suspension, to challenge Wang's suspension on that basis or based on the absence of just cause, or otherwise to demand that Wang be reinstated. Compl. ¶¶12, 63, 81, 83.

**Local 802 Response to ¶ 37**

This statement is not supported by admissible evidence as required under Fed. R. Civ. P. 56(c) and Local Civil Rule 56.1(d). Without waiver of this objection, Local 802 does not dispute that it has not sought enforcement of the 2020 Arbitration Award. Local 802 notes that the Society has already fully complied with the Award. *See* Local 802's Response to ¶¶16, 17. Local 802 disputes Plaintiff's characterization of his placement on paid administrative leave as a "suspension." *See* Local 802's Response to ¶¶22, 31. Local 802 further states that Local 802 has deferred its decision as to whether to file a grievance until the conclusion of the Philharmonic's investigation. *See* Local 802's Response to ¶36.

**Plaintiff's Reply:**

**Defendant has ADMITTED ¶ 37 in substance. *See* Gen. Obj. 1, 3, 4. To the extent Defendant objects to Wang's characterization of his employment status as a "suspension," for purported lack of admissible evidence, Wang disputes that assertion. *See* Lewis Decl. at ¶¶ 2-8 and the exhibits referenced therein.**

38.     By declining to take any steps to protest Wang's suspension, the Union deprived Wang of the rights he has by virtue of the CBA, including a right to arbitration of his grievance for wrongful termination before a neutral arbitrator. By refusing to take any action for Wang, the Union left Wang with only one legal option to challenge his unlawful suspension—the initiation of this lawsuit, which requires him to fully bear the cost of his representation by himself—as contrasted with funding by the Union of Union counsel in an arbitration.

**Local 802 Response to ¶ 38**

This statement contains legal conclusions and characterizations which do not constitute "facts" to which a response is required under Fed. R. Civ. P. 56(c) and Local Civil Rule 56.1(d). Additionally, this statement is not supported by a citation to admissible evidence as required by Fed. R. Civ. P. 56(c) and Local Civil Rule 56.1(d).  Without waiver of these objections, the Union disputes Plaintiff's characterization of his placement on administrative leave as a "suspension," *see* Local 802's Response to ¶¶22, 31, and disputes that Local 802 has declined to file a grievance on his behalf, *see* Local 802's Response to ¶36.

**Plaintiff's Reply:**

**Defendant has ADMITTED ¶ 38 in substance. *See* Gen. Obj. 1, 3, 4. To the extent Defendant objects to Wang's characterization of his employment status as a "suspension," for purported lack of admissible evidence, Wang disputes that assertion. *See* Lewis Decl. at ¶¶ 2-8 and the exhibits referenced therein.**

39.     On May 21, 2024, Robbins sent Lewis an email that read in full:

> Please note that your client, Mr. Wang, remains on a paid leave pending the completion of the Philharmonic's ongoing investigation into allegations of sexual harassment or otherwise inappropriate conduct by musicians or other current employees of the Philharmonic.  As that investigation has not yet been completed, the Philharmonic will not be sending Mr. Wang to China or to China to perform given that the Philharmonic must soon finalize rosters and

logistics for both trips.  I will contact you following completion of the investigation.

Lewis Decl. ¶5, Ex. C.

**Local 802 Response to ¶ 39:**

Refers to the email for its contents. Admits that the May 21, 2024 email from Robbins to Lewis contained the above-cited language.

**Plaintiff's Reply:**

**ADMITTED, as Defendant does not dispute the fact set forth in SOF ¶ 39.**

40.    The May 21st email was the first writing known to Wang in which the Philharmonic characterized Wang's suspension as "paid leave pending the completion" of the Philharmonic's investigation focused on misconduct by any musician and any current employee. Lewis Decl. ¶6.

**Local 802 Response to ¶ 40:**

This statement is not supported by a citation to admissible evidence as required by Fed. R. Civ. P. 56(c) and Local Civil Rule 56.1(d).  Paragraph 6 of the Lewis Declaration is inadmissible hearsay.  Without waiver of this object, Local 802 denies information or knowledge sufficient to respond to this statement.

**Plaintiff's Reply:**

**Defendant has ADMITTED ¶ 40 in substance, as Defendant does not dispute the fact set forth in ¶40.  *See* Gen. Obj. 2.**

41.    Wang and Muckey are the only two members of the Philharmonic barred from rehearsals, performances, meetings, and other Philharmonic activity during the pendency of the Levy investigation and the "cultural assessment." Compl. ¶53. Neither the cultural assessment or Levy investigation were in existence, at the time that the Philharmonic suspended Wang. *See supra* ¶31, Compl. ¶50.

**Local 802 Response to ¶ 41:**

This statement is not supported by a citation to admissible evidence as required by Fed. R. Civ. P. 56(c) and Local Civil Rule 56.1(d).  Without waiver of this objection, Local 802 disputes Plaintiff's characterization that he has been "barred" from rehearsals, performances, meetings and other Philharmonic activity and states that the Society has placed Plaintiff and Muckey on paid administrative leave during the pendency of its investigations.  Admits that no other members of the Orchestra have been placed on paid administrative leave during the pendency of the investigation. Local 802 also refers to Local 802's Response to ¶¶22 and 31 with respect to the second sentence of ¶41.  Local 802 further notes that Local 802 became aware of safety concerns and complaints lodged by members of the Orchestra shortly after the publication of the *Vulture* article.  Cutler Decl. ¶¶5, 6.

**Plaintiff's Reply:**

**Defendant has ADMITTED in substance, as Defendant does not dispute the fact set forth in SOF ¶ 41, notwithstanding dispute over characterization of Wang's employment as "leave" versus "suspension." *See also* Gen. Obj. 1.**

42.     On May 28, 2024, Lewis emailed Robbins to request that Wang be permitted to attend a meeting for orchestra members described as an update on the Jenner and Block "cultural assessment".  Robbins replied, "Mr. Wang should not attend that meeting tomorrow."  Lewis replied:

> I respectfully ask that you provide a reason for prohibiting Mr. Wang from attending. If necessary he would agree to listen and not speak and to sit anywhere he is directed. In the alternative and at minimum, the Philharmonic should provide Zoom access to the meeting so that Mr. Wang may listen. He is as justifiably interested in the Philharmonic's culture as any other member of the orchestra.

Lewis received no response from Robbins.  Lewis Decl. ¶¶7, 8.

**Local 802 Response to ¶ 42:**

Admits that counsel for Plaintiff emailed counsel for Philharmonic on May 28, 2024 and that counsel for the Philharmonic responded. Refers to the email for its contents. Lewis Decl. Ex. D. Denies knowledge or information as to whether Robbins responded to counsel for Plaintiff's email sent on May 28, 2024 at 6:49:19 PM.

**Plaintiff's Reply:**

**ADMITTED, as Defendant does not dispute the fact set forth in SOF ¶ 42. *See* Gen. Obj. 2.**

43.    The CBA acknowledges that musicians may have individual agreements with the Philharmonic. Wang Decl. Ex. I, e.g., Article III(C)(2).

**Local 802's Response to ¶ 43:**

Refers to the document for its contents. Local 802 does not dispute that musicians may enter individual agreements with the Society.

**Plaintiff's Reply:**

**ADMITTED, as Defendant does not dispute the fact set forth in SOF ¶ 43.**

44.    Wang has an individual agreement, signed by the Philharmonic with a term of September 18, 2023 to September 15, 2024. Wang Decl. Ex. A.

**Local 802's Response to ¶ 44:**

Admits.

**Plaintiff's Reply:**

**ADMITTED.**

45.    That 2023-2024 individual agreement incorporates by reference an agreement dated March 2013 (together, the "Individual Agreement"). *Id.*

**Local 802's Response to ¶ 45:**

Admits.

**Plaintiff's Reply:**

**ADMITTED.**

46.     The Individual Agreement includes the following language:

> The Society considers you a premiere member of the orchestra and will use
> its best efforts to raise your profile and is committed to schedule a minimum
> of 6 solo performances every three seasons and will use its best efforts to
> provide additional solo opportunities.

*Id.*

**Local 802's Response to ¶ 46**

Refers to the documents for their contents.  Does not dispute that this language appears in the

March 6, 2013 individual agreement between the Plaintiff and the Philharmonic.  Pl. Dec. Ex. A at 3.

**Plaintiff's Reply:**

**ADMITTED, as Defendant does not dispute the fact set forth in SOF ¶ 46.**

47.     The Individual Agreement also provides that Wang is to receive "additional

remuneration" for "solo concerto appearances." *Id.*

**Local 802's Response to ¶ 47:**

Refers to the document for its contents. Does not dispute that Plaintiff's September 18, 2023

to September 15, 2024 individual agreement with the Philharmonic states:

> During the 2023-24 Season, Society agrees to pay Musician a weekly salary
> for services performed in accordance with the aforementioned Basic Trade
> Agreement, without any additional renumeration for any solos which may be
> performed by Musician, except for solo concerto appearances . . .

Pl. Decl. Ex. A at 2.

**Plaintiff's Reply:**

**ADMITTED, as Defendant does not dispute the fact set forth in SOF ¶ 47.**

48.     Throughout the term of the Individual Agreement up until April 13, 2024, the Philharmonic had been performing its obligations under the Individual Agreement by, (i) paying Wang at the rate specified in the Individual Agreement, and (ii) placing Wang on the schedule for solo concerto performances, including a series of solo performances of the Mozart oboe concerto that had been scheduled to begin starting on May 8, 2024.

**Local 802's Response to ¶ 48:**

This statement is not supported by a citation to admissible evidence as required by Fed. R. Civ. P. 56(c) and Local Civil Rule 56.1(d).

**Plaintiff's Reply:**

**Defendant has ADMITTED ¶ 48 in substance. Local 802's response does not properly controvert or explicitly deny Plaintiff's SOF ¶ 48 and should be disregarded.  *See* Gen. Obj. 2;  *See also* Wang Decl. ¶¶ 11-13.  The lack of citation in SOF ¶ 48 was inadvertent error.**

49.     Wang continues to be paid at the rate specified in the Individual Agreement. Wang Decl. ¶11.

**Local 802's Response to ¶ 49:**

This statement is not supported by a citation to admissible evidence as required by Fed. R. Civ. P. 56(c) and Local Civil Rule 56.1(d).  Paragraph 11 of Plaintiff's Declaration does not support this statement.  Without waiver of this objection, to the extent Plaintiff intended to rely on Paragraph 12 of his Declaration, Local 802 does not dispute that Plaintiff has continued to be paid at the rate specified in his Individual Agreement.

**Plaintiff's Reply:**

**Defendant has ADMITTED SOF ¶ 49 in substance. *See also* Wang Decl. ¶ 12; Gen. Obj. 2, 3, 4. as Defendant does not dispute the fact set forth in SOF ¶ 49.**

50.     All of Wang's previously scheduled solo appearances during the period from April 13, 2024 through the present have been cancelled, including three concerto appearances. Compl. ¶58; Wang Decl. ¶12.

**Local 802's Response to ¶ 50:**

This statement is not supported by a citation to admissible evidence as required by Fed. R. Civ. P. 56(c) and Local Civil Rule 56.1(d). Paragraph 12 of Plaintiff's Declaration does not support this statement. Without waiver of this objection, Local 802 does not dispute that the Society has not assigned Plaintiff to perform or rehearse during the period of his paid administrative leave and notes that on April 17, 2024 counsel for the Society informed counsel for Plaintiff that "the New York Philharmonic is changing its program and Mr. Wang will not be appearing in the concerts where he was to be a soloist beginning May 8." Lewis Decl. Ex. B.

**Plaintiff's Reply:**

**Defendant has ADMITTED SOF ¶ 50 in substance. *See also* Gen. Obj. 1, 2; Wang Decl. ¶ 13. The initial citation to Wang Decl. ¶12 rather than ¶ 13 was inadvertent error.**

51.     Wang has not been paid for the cancelled concerto appearances that have been on the schedule for over a year. Wang Decl. ¶11.

**Local 802's Response to ¶ 51:**

This statement is not supported by a citation to admissible evidence as required by Fed. R. Civ. P. 56(c) and Local Civil Rule 56.1(d). Paragraph 11 of Plaintiff's Declaration does not support this statement.

**Plaintiff's Reply:**

**ADMITTED as Defendant does not dispute the fact set forth in SOF ¶ 51. *See* Gen. Obj. 2. Defendant does not dispute the substance of SOF ¶ 51, and its technical objection is cured by a corrected paragraph reference. *See* Wang Decl. ¶ 12.**

52.     On April 29, 2024, Marc Neikrug, the director of the Santa Fe Chamber Music Festival, and composer of the arrangement of the Mozart Oboe Concerto Mr. Wang had been scheduled to perform on May 8, notified Mr. Wang that he had no choice but to find "another place for his piece." Compl. ¶72.

**Local 802's Response to ¶ 52:**

This statement is not supported by a citation to admissible evidence as required by Fed. R. Civ. P. 56(c) and Local Civil Rule 56.1.

**Plaintiff's Reply:**

**Defendant has ADMITTED SOF ¶ 52 in substance.** *See* **Gen. Obj. 1. Local 802 does not dispute the fact set forth in Plaintiff's SOF ¶ 52. Local 802's response does not properly controvert or explicitly deny Plaintiff's SOF ¶ 52 and should be disregarded.** *See* **Gen. Obj. 2.**

53.     On April 15, 2024, the Taipei Music Academy and Festival informed Mr. Wang that it was canceling Mr. Wang's participation in the festival. Compl. ¶69.

**Local 802's Response to ¶ 53:**

This statement is not supported by a citation to admissible evidence as required by Fed. R. Civ. P. 56(c) and Local Civil Rule 56.1(d).

**Plaintiff's Reply:**

**Defendant has ADMITTED SOF ¶ 53 in substance.** *See* **Gen. Obj. 1. Local 802's response does not properly controvert or explicitly deny Plaintiff's SOF ¶ 53 and should be disregarded.** *See* **Gen. Obj. 2.**

54.     On April 17, 2024, the ARD International Music Competition notified Mr. Wang that it was suspending its collaboration with Mr. Wang, who was scheduled to serve on the jury for

the 2024 competition. ARD cited as a reason for the suspension the fact that "the Philharmonic had released you from your duties." Compl. ¶70.

**Local 802's Response to ¶ 54:**

This statement is not supported by a citation to admissible evidence as required by Fed. R. Civ. P. 56(c) and Local Civil Rule 56.1(d).

**Plaintiff's Reply:**

**Defendant has ADMITTED SOF ¶ 54 in substance.** *See* **Gen. Obj. 1. Local 802's response does not properly controvert or explicitly deny Plaintiff's SOF ¶ 54 and should be disregarded.** *See* **Gen. Obj. 2.**

55.    On April 19, 2024, the Manhattan School of Music publicly announced the suspension of Mr. Wang as a member of MSM's precollege faculty. Compl. ¶71.

**Local 802's Response to ¶ 55:**

This statement is not supported by a citation to admissible evidence as required by Fed. R. Civ. P. 56(c) and Local Civil Rule 56.1(d).

**Plaintiff's Reply:**

**Defendant has ADMITTED in substance.** *See* **Gen. Obj. 1. Local 802's response does not properly controvert or explicitly deny Plaintiff's SOF ¶ 55 and should be disregarded.** *See* **Gen. Obj. 2.**

56.    On April 30, 2024, the Chinese American Arts Council informed Mr. Wang that it was cancelling his contract as Artistic Director to the Council in connection with New York Chinese Film Festival. Compl. ¶73.

**Local 802's Response to ¶ 56:**

This statement is not supported by a citation to admissible evidence as required by Fed. R. Civ. P. 56(c) and Local Civil Rule 56.1(d).

**Plaintiff's Reply:**

**Defendant has ADMITTED SOF ¶ 56 in substance.** *See* **Gen. Obj. 1. Local 802's response does not properly controvert or explicitly deny Plaintiff's SOF ¶ 56 and should be disregarded.** *See* **Gen. Obj. 2.**

**RULE 56.1 STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS OF DEFENDANT ASSOCIATED MUSICIANS OF GREATER NEW YORK, LOCAL 802, AFM**

1.    Since the 2020 arbitration award concerning the 2018 terminations of Plaintiff and Muckey was confidential, many Orchestra members learned of the allegations against Muckey and Wang for the first time when they read the 2024 Vulture article.  Cutler Decl. ¶4.

**Plaintiff's Response:**

**Deny knowledge sufficient to admit or deny what any individual member of the Orchestra read.  However, Orchestra members could not have "learned of the [actual] allegations against . . . Wang" by reading the Article because, as is known to the Union, the Vulture article grossly mischaracterized the allegations against Wang  by reporting that the allegations against Wang included an allegation of misconduct against Cara Kizer – the main subject of the article.**

2.    Within hours of the publication of the Vulture article, Local 802 became aware that numerous Local 802-represented musicians in the Orchestra had expressed safety concerns about continuing to work alongside Plaintiff and Muckey.  Some of these musicians stated that they would refuse to take the stage if Plaintiff and Muckey continued to perform.  Cutler Decl. ¶5.

**Plaintiff's Response:**

**The statement is insufficiently specific to respond, as it does not specify to whom members expressed their "concerns." Deny knowledge sufficient to admit or deny what Local 802 "became aware" or what any individual Orchestra member expressed to Local 802.**

3.    Local 802-represented members of the Orchestra also expressed the belief that the allegations against Plaintiff and Muckey in the article were not isolated incidents and that prior complaints made by musicians in the Orchestra had not been taken seriously.  Cutler Decl. ¶6.

**Plaintiff's Response:**

The statement is insufficiently specific to respond, as it does not specify to whom members expressed their beliefs.  Plaintiff denies any first-hand knowledge as to what "beliefs" "Local 802-represented members of the Orchestra" expressed.

4.   On April 13, 2024, the Orchestra Committee of the New York Philharmonic issued the following statement:

> In light of recent events, we, the Orchestra Committee of the New York Philharmonic, believe it is imperative that you hear our voices.
>
> We wholeheartedly denounce and find abhorrent all conduct that violates and degrades the women in our Orchestra.  Such conduct is an affront to women everywhere.  It must never be tolerated.
>
> We call on our fellow musicians and the Philharmonic-Symphony Society to provide a safe environment so that no one is afraid to come to work.

Cutler Decl. ¶ 7, Ex. A.

**Plaintiff's Response:**

Plaintiff has no first-hand knowledge of what the Orchestra Committee issued or when, but admits he subsequently became aware such statement was publicly posted.

Dated:  New York, New York
        October 30, 2024

                                        Respectfully submitted,

                                        CARTER LEDYARD & MILBURN LLP

                            By:    _____/s/ Alan S. Lewis_____
                                        Alan S. Lewis
                                        Karen E. Meara
                                        28 Liberty Street, 41st Floor
                                        New York, NY 10005
                                        (917) 544-2524
                                        lewis@clm.com
                                        meara@clm.com

                                        *Attorneys for Plaintiff Liang Wang*