# Exhibit C

P2SEMUCC

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   Matthew Muckey,

 4                  Plaintiff,

 5           v.                              24 Civ. 3348 (AS)

 6   ASSOCIATED MUSICIANS OF
     GREATER NEW YORK, LOCAL 802,
 7   AMERICAN FEDERATION OF
     MUSICIANS, ET AL.,
 8                                           Conference

 9                  Defendants.

10   ------------------------------x

                                             New York, N.Y.
11                                           February 28, 2025
                                             12:00 p.m.
12
     Before:
13
                       HON. ARUN SUBRAMANIAN,
14
                                             District Judge
15
                             APPEARANCES
16
     MCLAUGHLIN AND STERN, LLP
17        Attorneys for Plaintiff Matthew Muckey
     BY:  STEVEN J. HYMAN
18        JACQUELINE C. GERRALD
          PAUL H. LEVINSON
19
     CARTER LEDYARD & MILBURN LLP
20        Attorney for Defendant Liang Wang
     BY:  ALAN S. LEWIS
21
     COHEN, WEISS, AND SIMON LLP
22        Attorneys for Defendant Associated Musicians of Greater
     New York, Local 802, American Federation of Musicians
23   BY:  OLIVIA R. SINGER
          SUSAN DAVIS
24

25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

P2SEMUCC

1     PROSKAUER ROSE LLP
           Attorneys for Defendant The Philharmonic-Symphony Society
2     of New York, Inc.
      BY:   HOWARD Z. ROBBINS
3            JOSHUA S. FOX

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

P2SEMUCC

```
1              (Case called)
2              THE COURT:  Let's have appearances, starting with
3    counsel for Mr. Muckey.
4              MR. HYMAN:  Steven Hyman.  Also with me, on behalf of
5    McLaughlin and Stern, is Jacqueline Gerrald and Paul Levinson.
6              THE COURT:  Good afternoon.
7              And, Mr. Hyman, are you going to be doing the speaking
8    on this call?
9              MR. HYMAN:  I will.
10             THE COURT:  All right.
11             Who do we have for Mr. Wang?
12             MR. LEWIS:  Good afternoon.
13             This is Alan Lewis.
14             THE COURT:  Good afternoon.
15             Who do we have for the union?
16             MS. SINGER:  Good afternoon.
17             This is Olivia Singer from Cohen, Weiss, and Simon.
18    We also have Susan Davis from Cohen, Weiss, and Simon on the
19    line.
20             THE COURT:  Good afternoon.
21             Ms. Singer, are you going to be doing the speaking for
22    the union?
23             MS. SINGER:  I will be.
24             THE COURT:  Okay.  And could you do me a favor?  If
25    there's a volume button, you're just coming in a little low on
```

P2SEMUCC

```
 1    the volume.  It just might be a technical issue.

 2                MS. SINGER:  Sure thing.

 3                Is this better?

 4                THE COURT:  Yeah, that's better.

 5                Thank you.

 6                MS. SINGER:  Yep.

 7                THE COURT:  And who do we have for the Society?

 8                MR. ROBBINS:  Good afternoon, your Honor.

 9                This is Howard Robbins representing the Philharmonic.

10    I'll be speaking on behalf of the Philharmonic.  With me is my

11    colleague, Josh Fox.

12                THE COURT:  All right.  Good afternoon.

13                Okay.  So, first of all, the Court appreciates the

14    letter that was submitted.  First thing first.  As we move

15    forward with these cases, please, if there are facts that arise

16    that change the circumstances of the case, especially where

17    they may be relevant to pending motions, please let us know

18    because it's important for us to know, and so we don't end up

19    in a situation where we are considering pending applications

20    unaware of relevant events that have happened since those

21    motions have been submitted.  So, the Court would appreciate

22    that.

23                And if you're not speaking, if you could just mute

24    your line, that would be helpful, because there's sometimes

25    some background noise.
```

P2SEMUCC

1          All right.  So, I have a few questions and then we're

2   going to figure out next steps here.

3          So, first, Mr. Singer?

4          MS. SINGER:  Your Honor, it's Ms. Singer.

5          THE COURT:  Ms. Singer, sorry.  My apologies.

6   Ms. Singer.

7          MS. SINGER:  No worries.

8          THE COURT:  Ms. Singer, just to help me understand the

9   union's position on the collective bargaining agreement, it's

10  the union's position that there was no breach of the CBA here;

11  right?

12         MS. SINGER:  Correct.

13         THE COURT:  So, the union agrees that under

14  paragraph 14 of the CBA, the Society can terminate any tenured

15  orchestra member, as long as they're given the required notice,

16  without any showing of cause; correct?

17         MS. SINGER:  Correct.  As long as they're given the

18  salary through the notice period.

19         THE COURT:  All right.  And given what you just said,

20  I was a little bit confused by the summary in the parties'

21  joint letter, because the parties' joint letter seems to

22  suggest that underlying the paragraph 14 termination, there was

23  an investigation, and it was because of the results of this

24  investigation that the union didn't take further steps to

25  grieve the termination through the arbitration right that's

P2SEMUCC

1   specified in the section right after paragraph 14.  So, is that

2   what happened, and this is a situation that was based on the

3   investigation that occurred, or, as you just said, can the

4   Society just terminate anyone for no reason based on

5   paragraph 14 and the union would never do anything about it?

6          MS. SINGER:  As long as the Society provides a reason

7   judgment for the grounds for the nonengagement, the Union

8   believes that they have the right to not reengage them.

9   There's a disciplinary review committee that reviews the

10  non-reengagement and determines whether or not there was a

11  rational basis for the decision not to reengage.  And the

12  dismissal review committee in this case unanimously determined

13  that there was reason for the decision not to reengage, and

14  then proceeded through the process of going to the executive

15  board, who unanimously also upheld the determination that there

16  was not a basis to challenge the non-reengagement.

17         THE COURT:  All right.  Ms. Singer, you referred to a

18  reason judgment.  In this case, was that reason judgment

19  provided to Mr. Muckey or Mr. Wang?

20         MS. SINGER:  Well, it was an executive summary, but

21  the investigatory report was provided to them when they gave

22  their decision to contest the non-reengagement.  So, they were

23  provided with the basis that the Philharmonic brought them to

24  the decision to issue the non-reengagement.

25         THE COURT:  So, this was a for-cause dismissal?

P2SEMUCC

1          MS. SINGER:  The Article 14 of the collective

2    bargaining agreement doesn't require -- it's not a -- doesn't

3    have a cause standard, but one basis that might be the reason

4    for the Philharmonic to choose not to engage someone would be

5    the findings of an investigation.

6          The difference between the just cause standard under

7    the CBA and this standard is the notice requirements and the

8    amount of payment that has to be provided.  If they had chosen

9    to dismiss for cause, they wouldn't have had the notice

10    requirements or the payment requirements that they had under

11    the collective bargaining agreement.

12          THE COURT:  All right.  So, the union, moving forward,

13    is agnostic as to whether the Society proceeds under

14    paragraph 14 of the CBA, or paragraph seven of the CBA;

15    correct?  Meaning there are two routes to terminate tenured

16    orchestra members; the Society can take either path.  If they

17    choose to go under paragraph 14, then they need not provide any

18    cause for the termination, they would just need to satisfy the

19    notice requirements; is that fair, for tenured members of the

20    union?

21          MS. SINGER:  That's correct.  But as the union and the

22    Philharmonic recognize, the purpose of the non-reengagement

23    provision is not to cause an end run around the just cause

24    provisions of the CBA.  So, in circumstances that are -- I

25    think in this circumstance, there was a belief that there was

P2SEMUCC

```
 1    such an extreme violation that it was appropriate to use

 2    Article 14 for this purpose, but it is not meant to supplant

 3    the just-cause provision.

 4              THE COURT:  Well, help me with that.

 5              MS. DAVIS:  Your Honor, may I --

 6              THE COURT:  Well, help me with that.

 7              MS. DAVIS:  May I?

 8              THE COURT:  Well, hold on.  No.

 9              MS. DAVIS:  Okay.

10              THE COURT:  Hold on.  I don't know who is speaking.

11    You have to announce yourself when you're speaking or else the

12    court reporter can't get your name, so who is that?

13              MS. DAVIS:  I'm sorry.  This is Ms. Davis from Cohen,

14    Weiss, and Simon.  And when appropriate, I'd like to just add

15    something, but I'd like to hear your Honor's question.

16              THE COURT:  Of course.  Of course.  And thank you for

17    that.

18              So, Ms. Singer, and if you want to refer to Ms. Davis,

19    that's also fine.  So, what you just said -- well, let me take

20    a step back, because in the joint letter in the plaintiff's

21    summary, they point to texts from a document, and it's not

22    clear what the document is, but some communication between the

23    union and the Philharmonic, indicating concern about using

24    paragraph 14 as an end run around paragraph seven.  But what

25    you just said was that if there are extreme circumstances, then
```

P2SEMUCC

1  that would be an instance where paragraph 14 could be used, but

2  that was puzzling to me because it would seem that if there

3  were extreme circumstances, that would be where you would have

4  very good grounds for a just-cause dismissal under paragraph

5  seven, so you wouldn't want the Society to instead utilize

6  paragraph 14, which doesn't require any cause.  So, can you

7  help me kind of untangle that?  And maybe Ms. Davis would like

8  to address that issue if -- and I'm happy for either of you to

9  do that.

10          MS. DAVIS:  Thank you, your Honor.

11          This is Ms. Davis, and I will try to address the

12  issues, starting your question initially, was the union

13  agnostic about which provision is used.  The union is not

14  agnostic.  If there is a case of discipline, then the just

15  cause provision has to be applied.  And if there is a

16  nondisciplinary case but the Philharmonic feels it is

17  appropriate for another reason -- it could be artistic quality,

18  it could be circumstances similar to what happened here -- then

19  the Philharmonic has a right to use Article 14, but, as

20  Ms. Singer said, has to pay essentially a year of salary.  And

21  if the employer goes through an Article 1414 non-reengagement,

22  then there is an automatic process under article 15 where the

23  union convenes a committee of nine rank and file members of the

24  orchestra -- they're actually elected by the orchestra itself,

25  the union doesn't designate them -- they hear evidence and

P2SEMUCC

1   deliberate as to whether Article 14 was appropriately invoked.

2   And that happened here.  There was an election of rank and file

3   members, they deliberated, they were presented with the full

4   investigative report, and they determined after that to

5   recommend to the Local 802 executive board that the executive

6   board not proceed to arbitration because it was an appropriate

7   non-reengagement.

8        Mr. Wang and Mr. Muckey were provided both with a copy

9   of the executive summary of the Philharmonic's investigation as

10  well as the decision of the union executive board when it

11  determined not to proceed to arbitration.

12       So, in our view, there was no violation of the

13  contract and this was handled entirely appropriately by the

14  union in making not just a reasoned judgment not to proceed to

15  arbitration but to make a very thoroughly vetted and

16  thought-out decision not to proceed to arbitration.

17       THE COURT:  Well, let me walk through that.  And

18  that's a helpful summary.  Because the letter says that the

19  disciplinary review committee unanimously recommended that the

20  union not contest the Society's decision.

21       This is all laid out in documents; is that fair?

22       MS. DAVIS:  That's correct.  Yes, that is correct.

23       THE COURT:  And there's documents -- no, please

24  continue.  I'm sorry to interrupt.  Please continue.

25       MS. DAVIS:  I'm sorry.  Phones are hard.

P2SEMUCC

1              Yes.  The disciplinary review committee reviewed all

2     the evidence and then, because they're not the deciders,

3     because the union holds collective bargaining rights, it went

4     to the union's executive board.  As Ms. Singer indicated, there

5     was very lengthy hearing, essentially.  Mr. Wang and Mr. Muckey

6     were both invited to that hearing, they both presented at some

7     length.  It wasn't required, but the union afforded them to

8     opportunity to do so, and at that point, the executive board

9     issued a decision exclaiming why it thought the Article 14

10    non-reengagement accompanied by a year of salary was

11    appropriate.

12              I'm not sure whether that answers your question or

13    not.  I hope it does.

14              THE COURT:  All right.  And so these documents were

15    all turned over to Mr. Muckey and Mr. Wang; right?

16              MS. DAVIS:  So, Mr. Muckey and Mr. Wang received a

17    very lengthy executive summary of the Philharmonic's

18    investigation, and they received a very lengthy written

19    decision from the Local 802 executive board explaining why they

20    thought the non-reengagement was appropriate in this

21    circumstance.

22              THE COURT:  All right.  So, just help me with this,

23    which is, so you have Mr. Muckey and Mr. Wang and they disagree

24    with the way the union kind of addressed this.  Isn't that the

25    kind of circumstance where you would have a hybrid 301 claim

1    because they would have wanted the union to challenge the

2    Society's decision in arbitration, which is set forth in this

3    Article 15 that you referenced.  The union said it wasn't going

4    to do that because it felt like it had grounds not to do that,

5    but Mr. Muckey and Mr. Wang disagree.  And they are concerned

6    that, in this circumstance, the union and the Society were

7    acting collaboratively against them.  And in support of that,

8    in the initial complaints, they pointed to, for instance, the

9    statement by Sara Cutler, but now in their letter they point to

10   all of this that happened with respect to Article 14 and the

11   fact that it seems to be a never-before-invoked article and one

12   in which there was an agreement that it wouldn't be applied

13   again in the circumstance of a disciplinary action where

14   Article 7 would otherwise apply.

15          So, do you see where I'm getting at?  You know,

16   they're putting all these pieces together, and they're not

17   saying that they should just automatically win the case, what

18   they're saying is there's a plausible claim that the rights

19   that are established for a hybrid claim are satisfied such that

20   they should at least be able to get discovery and figure out

21   what happened.  So, what's your response to that?

22          MS. DAVIS:  So, just sort of as a predicate, I will

23   respond to that.  But just to sort of pull a thread, their

24   current complaint complains that the union breached duty of

25   fair representation when it did not grieve the fact that they

P2SEMUCC

1    were put on a fully paid administrative leave while the

2    Philharmonic investigated it.  So, that is the subject matter

3    of their complaint.  So, that's sort of question one, is that

4    whether or not they have a plausible claim there.

5           The issue of them being not reengaged and the union

6    not grieving that is actually not -- they have not yet amended

7    their complaint to add that, but I think it's appropriate to

8    talk about it now because that really -- the subject matter of

9    their complaint has essentially been superseded by what

10   happened subsequently, which I think was your reference at the

11   beginning of the call to we should be giving you updated

12   information.  I agree with that.

13          The question, sure, I think it is a hybrid breach of

14   contract DFR claim.  I think that is the correct claim that was

15   filed.  The question is, is it a plausible claim.  And so on

16   those two prongs, which have to be proved against each party,

17   there was no breach of contract because Article 14 was invoked

18   properly, and the question as to whether or not the union

19   breached its duty has to do with as to whether or not there are

20   facts that show that the union acted arbitrarily,

21   discriminatorily, or in bad faith in going through this

22   elaborate process that I described and determining at the end

23   of the process that the non-reengagement with a year of pay was

24   appropriate.  And we just do not see any plausible basis for

25   either one of those claims.

P2SEMUCC

1          THE COURT:  And so just on the breach question, if you

2     can help me with this, I mean, is it the union's position that

3     the Society need not allow any of the union member tenured

4     orchestra members to actually play in the orchestra?  Meaning

5     that if they don't like someone or they have some issue with

6     them, they can just suspend them with pay and that's not a

7     breach?

8          MS. DAVIS:  No, that's not our position.  And I'm

9     sorry.  I'm in a hotel in Florida.  I hope you can hear me

10    because there's a little bit of background noise.

11         THE COURT:  I can hear you great.

12         MS. DAVIS:  Okay.  So that is not our position.

13         So, if, for example, the Society decided not to

14    reengage musicians because of the color of their skin or

15    because they didn't like what they wore, or because, quite

16    frankly, they didn't like their personality, we would not think

17    that was appropriate, and that's the standard in the contract,

18    is the notice of reengagement appropriate.  However, in

19    circumstances like this where you have the results of the

20    investigation, we think it was entirely appropriate to use that

21    provision here.  It's not a wide-open door that can be used at

22    any time.  And if one of those circumstances arose, I can

23    guarantee you that the union would take that case to

24    arbitration, but that is far, far from what the underlying

25    facts were here.

P2SEMUCC

1          THE COURT:  All right.  Understood.  Thank you for

2     that.

3          Let me ask if counsel for the orchestra, Mr. Robbins,

4     I mean, you don't need to say anything else, but do you have

5     anything to add to what Ms. Singer and Ms. Davis said?  I'm

6     happy to hear you out, and then we'll turn to counsel for

7     Muckey and Wang.

8          MR. ROBBINS:  If it is helpful, your Honor, I have

9     just one brief thought and then I'll answer anything else that

10    the Court would like to know.

11         I think, as Ms. Davis said, the reasons for

12    non-reengagement may be things like musical quality or getting

13    along with other members of the orchestra, being disruptive.

14    And here was a pretty extreme situation where there were real

15    concerns by many members of the orchestra expressed to the

16    Philharmonic that there are people who did not ever want --

17    they said they would quit if -- and this is what we were told

18    in this dismissal review committee, you know, that there were

19    real issues about the cohesion of the orchestra, and there was

20    just a lot of considerations about -- and, again, there's no

21    complaint, as Ms. Davis said, and this hasn't been briefed, but

22    there were a lot of very valid reasons, and there is no just

23    cause standard with respect to non-reengagement.  It doesn't

24    mean that it can be just, you know, like the clothing somebody

25    wears one day and that's enough, there is this sort of

P2SEMUCC

1   expectation of appropriateness.  It is not clearly defined.

2              And with respect to the issue of the note to the union

3   which was cited in the letter that you received, your Honor,

4   about the intended future use of this process because this was

5   the first use that I'm aware of and, I think, that even the

6   union is aware of, of the invocation of this provision.  They

7   just want to have a sense about, some comfort, that this wasn't

8   going to be abused by the Philharmonic, and this was

9   Philharmonic's way of saying, no, we don't intend this to be --

10  you know, there's not going to be any gamesmanship with the use

11  of this provision.  But there was never any question about the

12  appropriateness, and that's why there was a unanimous view by

13  the dismissal review committee of the orchestra about the

14  appropriateness of these non-reengagements.  That was never a

15  question.  This was about the union faced, I think, with a

16  novel invocation of this provision, wanting to have an

17  understanding and being able to say to its members -- and,

18  look, I'm not going to speak to the union, they can speak for

19  themselves on this front -- but on behalf of the Philharmonic,

20  I felt it was reasonable and the Philharmonic felt it was

21  reasonable to give some assurances that this isn't going to be

22  an everyday thing where we just toss people out with no reason

23  at all.  That's all that goes to, your Honor.

24              THE COURT:  All right.  Thank you, Mr. Robbins.

25              Ms. Singer or Ms. Davis, just one last question.

P2SEMUCC

```
1          Help me understand what the difference is between what
2    happened the last time these issues came up where the orchestra
3    had an investigation that was undertaken at great expense with
4    Judge Jones supervising that, and the union, in that context,
5    did take the case to arbitration, and this situation where a
6    different provision was invoked and the union has kind of had
7    this other thing that it did with a review committee and
8    decides not to proceed to an arbitration to just, you know, get
9    an arbitrator's stamp of approval that there were no violations
10   here.  Why the different conduct from the union between the two
11   instances?
12         MS. DAVIS:  So, this is Ms. Davis.  I'll try to answer
13   the Court's question.
14         In the first instance -- and I actually was not
15   involved and one of my partners was involved -- the union
16   looked at the evidence the Philharmonic had at the time and
17   determined that it was not sufficient, it was a disciplinary
18   termination, so there was no pay that attended it, and the
19   union at the time made the determination that they thought that
20   it was appropriate for an arbitrator to see whether there was
21   sufficient just cause.  Hindsight is always 20/20, but that is
22   what occurred then.
23         What occurred now was not a disciplinary termination
24   but when -- let me just sort of spin it back.  What the
25   Philharmonic did in this case was, because they could not, in
```

P2SEMUCC

```
 1    my view, take action based on the same facts that were subject
 2    to the arbitration, that that would not have been appropriate,
 3    so what they did, when complaints started coming in again
 4    concerning the behavior of Mr. Muckey and Mr. Wang, the
 5    Philharmonic -- and the union agreed to this -- hired an
 6    investigator to see whether there were any additional
 7    complaints against either of those gentleman that might create
 8    a different situation in 2024.
 9            And so another independent investigation with an
10    outside investigator was conducted.  There were numerous
11    complaints raised that had nothing to do with the original
12    termination, and so there was an investigative report that was
13    prepared, the union reviewed it, the union determined that, in
14    accordance with the CBA, they had to have an election for a
15    dismissal review committee.  I inadvertently referred to it in
16    maybe a Freudian way earlier as a disciplinary review
17    committee; it's not, it's a dismissal review committee.  So, it
18    met with those elected members of the orchestra, went over the
19    entire investigative report for many, many hours -- I
20    represented the union in that process -- and then took the
21    unanimous recommendation of those members, took it to the
22    executive board, the executive board reviewed everything anew,
23    the full investigative report as well as the dismissal review
24    committee's input and decided, based on that evidence, that it
25    was not appropriate to proceed to arbitration, not just
```

P2SEMUCC

1    standing alone because of the conduct that was brought to the

2    Philharmonic's attention about these gentleman, but because the

3    union became convinced that if they were put back, the majority

4    of the members of the orchestra would not take the stage and

5    the Philharmonic would not be able to stage a production.  And

6    because the union owes the duty of fair representation not just

7    to Mr. Muckey and to Mr. Wang but to every member of that

8    bargaining unit, the union made the decision, under these

9    circumstances, not to proceed to arbitration.

10          And there's no obligation to take a grievance to

11   arbitration, even with a disciplinary dismissal.  The union is

12   allowed to make a reasoned judgment as to whether, under a

13   particular set of circumstances, it should or should not do so,

14   and that's what occurred here.

15          THE COURT:  All right.  Thank you.

16          Let's turn to Mr. Muckey's counsel, Mr. Hyman.

17          Are you still with us?  You may be on mute.

18          MR. HYMAN:  Do you hear me now, your Honor?

19          THE COURT:  Yeah, we can hear you now.

20          MR. HYMAN:  Thank you.

21          THE COURT:  All right.  Just want to see if I can at

22   least narrow some of the issues here.

23          MR. HYMAN:  Of course.

24          THE COURT:  So, you had voluntarily dismissed your

25   *prima facie* tort claim against the union but I don't think you

P2SEMUCC

1  dismissed the claim against the orchestra.  That may have been

2  an oversight.  I take it that you are not pursuing your *prima*

3  *facie* tort claims.  Mr. Wang has dropped both of his, but I

4  just wanted to get that clarification from you.

5       MR. HYMAN:  I think we believe that there is a claim

6  against the Philharmonic, your Honor.

7       THE COURT:  All right.  And so --

8       MR. HYMAN:  In terms of the *prima facie* tort, but I

9  don't think that that is a significant issue in the discussion

10  we have right now, your Honor.

11       THE COURT:  Well, it's significant because when you're

12  filing a complaint, you shouldn't just throw in everything in

13  the kitchen sink, you should try to focus on your strongest

14  claims.

15       MR. HYMAN:  Exactly.

16       THE COURT:  And so the difficulty is that even if you

17  want to put the claim in there, the defendants, as you saw from

18  their papers, had at least three different reasons for

19  dismissing that particular claim, which is that you can't

20  assert it under New York law where it's duplicative and

21  intertwined with other claims that you've asserted, you have to

22  show disinterested malevolence, which means not only that you

23  can't show a good reason that someone had for taking particular

24  action, you have to show that their sole goal was to harm the

25  plaintiff and not any other self-interested reason, and then

P2SEMUCC

1    there's the issue of just preemption under the LMRA, which is

2    broad in this context.  So, you've got a lot of things you've

3    got to overcome and issues that you would have to brief if, for

4    instance, I were to permit an amended complaint.  And so I

5    think there's a reason why you dropped the claim against the

6    union and why Mr. Wang dropped both claims against the union

7    and the orchestra, and so I just ask you to consider that

8    moving forward.  But I agree with you that it's the tail and

9    not the dog here.

10           MR. HYMAN:  Right.  And I respect what the Court said

11   and certainly will consider it and get back to the Court within

12   a very short time.  If I can discuss it with my client and then

13   we can --

14           THE COURT:  Sure.

15           MR. HYMAN:  -- resolve that issue, your Honor.  I hear

16   what your Honor has said and I respect and appreciate the

17   direction you've given us to consider.

18           THE COURT:  All right.  So, look, there are three

19   different bases for the fundamental claims that your client has

20   brought forth.  And so you've got the CBA, and I understand

21   your argument there, but then you have the individual contract

22   that Mr. Muckey had, and there's no provision cited as to what

23   was breached.  So, again, you know, you can just think about

24   these issues, and I'm going to give you some next steps at the

25   conclusion of this, but no provision of Mr. Muckey's individual

P2SEMUCC

1    contract was identified.  And so what provision is that?

2              MR. HYMAN:  Well, the provision would be the tenure

3    provision, which does not appear to be in writing in any

4    document that Mr. Muckey has with the Philharmonic other than

5    when he was told that he was being given a lifetime tenure

6    position.

7              It is, your Honor, I believe, incorporated in part

8    into the CBA itself.  And --

9              THE COURT:  So, then why would it not be preemptive?

10             MR. HYMAN:  It very well may be, your Honor.  I don't

11   think we contend that it necessarily has to be independent of

12   the CBA.  In fact, in listening here, tenure is a recognized

13   facet of the orchestra and its members.  And how that gets

14   incorporated into the CBA has not been litigated, as far as I

15   know, but it has come up in this conversation here today very

16   significantly.  So, it is an aspect of the CBA, your Honor.

17             THE COURT:  Okay.  All right.  So, I'll just ask you

18   to consider that, you know, as you move forward.

19             Same thing with the award.  Now, the award, all it

20   says is that Mr. Muckey and Mr. Wang be reinstated and made

21   whole for all contractual benefits lost, including full back

22   pay and seniority.  And the defendants say, yeah, that all

23   happened, but that's 2018, and the arbitrator didn't say

24   anything else.  He didn't say, well, the orchestra can never

25   take any future action against Mr. Muckey or Mr. Wang because

P2SEMUCC

1   something else happens.  And you haven't pointed me to any

2   language in the arbitration award that indicates anything else.

3   And so --

4           Yeah.  Go for it, please.

5           MR. HYMAN:  I don't mean to cut you off, your Honor.

6           THE COURT:  No, no, no.  I'm just -- you get what I'm

7   getting at with all these questions --

8           MR. HYMAN:  Absolutely.

9           THE COURT:  -- which is, like, there's the CBA, I

10  understand that, I understand your Section 301 claim, and what

11  I'm inviting you to do is to just consider these other things

12  that have been brought because, you know, not to do a spoiler

13  here, but I am going to permit an amendment to the complaint,

14  and what I'd like you to do is just think about whether these

15  other things really need to be part of the case or whether

16  they're really just a side show for the primary claim that

17  you're asserting, which is just that there was a breach of the

18  CBA and the union didn't fulfill its right under a hybrid claim

19  that you can assert.  That's all I'm saying.

20          MR. HYMAN:  Actually, on that issue, your Honor, I

21  have some different views I'd like to put forward.

22          With regard to the award, at the time that our client

23  was suspended, there were no allegations against him.  In fact,

24  there had been no allegations since the 2010 incident that was

25  adjudicated in the 2020 award.  And our position is that that

P2SEMUCC

1    suspension was directly related to the award of Mr. Muckey that

2    he be reinstated and that they cannot now use that award and

3    ignore it and take him out of the orchestra and bar him from

4    any activity of the Philharmonic.  It's our view, and I hope we

5    expressed it, that that disciplinary act was a violation of the

6    award because there were no new events.  And the subsequent

7    events that were now pointed out to the Court in our letter,

8    those are different events and present a different issue.  But

9    the April 14 suspension was, in our view, a violation of the

10   very terms of the award.

11        The one thing I would say is if Mr. Muckey had been

12   reinstated in 2020 or 2021 when the award was given, they could

13   not have then suspended him and said you can't come to any

14   Philharmonic activities.  So, under those circumstances, that's

15   where we say the union and the Philharmonic violated

16   Mr. Muckey's rights.

17        I hope I've clarified at least our position, your

18   Honor.

19        THE COURT:  All right.  Thank you.  That's helpful.

20        Mr. Lewis, maybe you can help me with this.

21        MR. LEWIS:  Yes.

22        THE COURT:  If your Section 301 claim were to move

23   forward to discovery, would you need any of the other claims?

24   Meaning, you can get full relief under the Section 301 claim

25   without, for instance, having a *prima facie* tort claim, you

P2SEMUCC

1   know, just to use an example.  Am I right about that or am I

2   missing something?

3          MR. LEWIS:  So, we don't have the tort claim.  You

4   correctly pointed out that we withdrew it.  Our state law

5   claims are discrimination claims, and there are indeed remedies

6   available under the discrimination claims that are in addition

7   to the remedies that are available under the hybrid claim.

8          THE COURT:  Yeah.  Sorry.  I asked that question

9   poorly.

10         So, in terms of the economic damages that you point to

11  in your pleadings, are you able to recover those under the

12  banner of the Section 301 claim?

13         MR. LEWIS:  I think that we have additional and

14  different arguments for recovery of damages as a result of

15  discrimination.

16         THE COURT:  Now, don't get hung up on the

17  discrimination issue, I'm just asking a more general question,

18  which is that it's not as if the Section 301 claim only permits

19  injunctive relief; right?

20         MR. LEWIS:  That's correct.  I think we might litigate

21  what damages are available, but our position is we're entitled

22  to damages, including attorney's fees but not limited to

23  attorney's fees.

24         THE COURT:  Right.  So, your position at least is that

25  if there was a violation of the duty of fair representation and

P2SEMUCC

```
1    a breach of the CBA, then you would be able to recover the

2    kinds of economic damages that you point to in the complaint,

3    which is missed opportunities, loss of income and future

4    earning potential, things of that nature.

5                MR. LEWIS:  That is our position.

6                THE COURT:  All right.  Okay.

7                As to the discrimination claims, I don't see a

8    plausible allegation in the complaint that the defendant's

9    actions were because of Mr. Wang's gender.  And so help me with

10   this because, I mean, are there no other men in the orchestra?

11               MR. LEWIS:  If I could, I think that the evidence to

12   support the conclusion that the way that he was treated was, in

13   part, a function of the fact that he is a man -- and, really,

14   the combination of the fact that he is a man who was accused of

15   sexual misconduct against a woman, he was treated differently.

16   And I think that the events that took place subsequent to the

17   filing of the initial complaint, things that were said

18   surrounding the terminations, will reinforce that, and, as a

19   result, both Mr. Wang and Mr. Muckey are intending to very

20   shortly seek a right to sue letter from the Equal Employment

21   Opportunity Commission.  So, I believe I speak correctly that

22   both plaintiffs will each be asserting title seven claims in

23   the amended complaint.

24               I appreciate the Court's question, but I think that

25   the best time to assess the sufficiency of the evidence to
```

P2SEMUCC

1    support discrimination claims is after you have all of it,

2    which you will have after the filing of the amended complaints

3    and the proceedings that follow up from that.

4          I would like to correct, if I could, just one

5    misstatement that I heard in response to the Court's question.

6    You asked a few times whether Mr. Muckey and Mr. Wang have a

7    copy of the investigative report that the Philharmonic

8    prepared.  We do not.  We would like to have it.  We were only

9    permitted to read it in the presence of the union's counsel,

10   not to make a copy, and not to make notes.  So, on the one

11   hand, they're not relying upon the investigation because the

12   termination letters make no reference to any investigative

13   findings.

14         On the other hand, the Philharmonic has told the union

15   about the investigation to try to persuade the union not to

16   grieve the termination, they've done investigative findings

17   that the Philharmonic did not itself cite in the termination

18   letter.  I think at the end of the day, our position will be,

19   as a matter of law, Article 14 can't be used in this way.  But

20   given, in particular, the union's reliance on the investigative

21   findings for the reason for its defense of a hybrid claim, we

22   should get a copy of those investigative results, all of it,

23   and we don't have it.

24         THE COURT:  All right.  Well, turning back to the

25   discrimination claim, I mean, you connected two things, which

P2SEMUCC

1    was men who were accused of sexual misconduct.  I mean, even

2    taking everything in your favor in terms of what you've

3    alleged, your position is that they jumped the gun on

4    allegations of misconduct that you believe are unfounded but

5    that colored their view, the defendant's view, and they took

6    actions based on that colored view.  And that is not because of

7    gender, but if you were going to try to prove that it was

8    because of gender, you would need plausible allegations

9    consistent with *Twombly* and *Eghbal* that would show that the

10   defendant's actions were, at least in part, because of the fact

11   that they were men, and I don't see that in the complaint that

12   you filed.  And if you're going to try to assert those kinds of

13   claims in an amended complaint, then you need to make sure that

14   they are Rule 11 compliant, that you have plausible factual

15   allegations that would support your right to relief for that

16   kind of claim, and that you have a good-faith basis to assert

17   it.  You're going to face a motion to dismiss if you do file an

18   amended complaint, just in the same way that you've faced it

19   here, and you're going to have to have cases that indicate that

20   in these circumstances, those types of claims have survived a

21   motion to dismiss.

22          And so I'm just asking in the same way that I asked

23   Mr. Hymen, that you take a look and make sure that you're

24   narrowing the claims that you're asserting to those that you

25   believe you have a right to relief; okay?  I mean, it's your

P2SEMUCC

1    prerogative what claims you assert in a complaint, but I'll

2    just give you that guidance.  Fair?

3        MR. LEWIS:  We very much appreciate the Court's

4    perspective and guidance, and I will certainly consider it as

5    we draft the amended complaint.

6        THE COURT:  All right.  And are you aware of any women

7    who have been accused of sexual misconduct who were treated

8    better by either of the defendants?  Is there any situation

9    like that?

10       MR. LEWIS:  No.  I think that the idea of gender-based

11   discrimination arises from statements like we believe the

12   women.  That in a circumstance in which women have purportedly

13   accused men of misconduct, unique to that circumstance, the

14   response of the employer and the union should be, because of

15   gender, to accept one side's perspective in that dispute

16   against the other.

17       But I appreciate the Court's observations, and I can

18   only tell the Court that we will carefully consider them when

19   we draft the amended complaint, and we don't intend to file

20   claims that we don't think are sufficient to survive a motion

21   to dismiss, and will be very mindful of those considerations.

22       THE COURT:  All right.

23       MR. HYMAN:  Your Honor, this is Mr. Hymen.

24       May I interject with regard to the discrimination

25   issues you've raised?

P2SEMUCC

1          We did not raise that in our initial complaint, but we

2      believe and will raise a very substantial issue in the amended

3      complaint if we're permitted to do so.  And it arises, your

4      Honor, not from a comparative issue of discrimination between

5      men and women, it's the manner in which it is handled.  And

6      there are two cases I would just refer the Court to for

7      purposes of just understanding where we're coming from.  One is

8      called *Doe v. Columbia*, 831 F.3d 46, and the other is

9      *Menaker v. Hofstra University*, 935 F.3d 20.  Both of those

10     dealt with the issue of where there is a question of whether

11     there is, in fact, a valid basis for finding wrongdoing when

12     there is an abuse of the process and when there is a community

13     demand for women to be protected, that raises a title seven

14     claim and can give a basis for a discriminatory action.  And

15     based on that, we will be filing with the EOC a request for the

16     right to sue under title seven, and that won't be preemptive,

17     in our view, by 301 because they're sister federal statutes.

18          So, I just wanted to clarify where we're coming from

19     with regard to that, your Honor.

20          THE COURT:  No, I understand that.  And I'll take a

21     look at those authorities, but just the same guidance that I

22     just gave to Mr. Lewis, is just take a close look at that.

23          All right.  Just very briefly, I want to make sure

24     that, Ms. Singer or Ms. Davis, if you have anything that you

25     want to add, I'm happy to hear you out.

P2SEMUCC

```
1            And then, Mr. Robbins, if you have anything just
2    briefly.
3            MS. DAVIS:  Thank you, your Honor.
4            This is Ms. Davis, and I will be mercifully brief.
5            I want to answer one of the Court's questions to, I
6    believe, Mr. Hyman that was not answered, which is that the
7    majority of the orchestra, I believe, is male.  With respect to
8    the orchestra members and others who brought complaints to the
9    investigator in this second investigation, many of them were
10   men, they were not all women, and so I'm not going to gauge on
11   the discrimination claim further.
12           I do want to just correct two misstatements,
13   respectively, of Mr. Hyman and Mr. Lewis.
14           First of all, the April 14 event was not a suspension.
15   A suspension under federal labor law includes a suspension of
16   pay.  Mr. Muckey and Mr. Wang were put on administrative leave
17   because the Philharmonic received a number of complaints about
18   subsequent bad behavior, to just label it, and determine that
19   they needed to investigate them.  There was no loss of pay,
20   there was no loss of benefits.  The investigation occurred.
21           Mr. Alan's reference to a termination is also
22   incorrect.  If they were terminated as they were in the
23   original case, they would have immediately not received any
24   pay, which is what happened before, and there would not have
25   been the process that ensued.  They were not terminated, they
```

P2SEMUCC

| 1 | were non-reengaged in accordance with Article 14, and then the |

1    were non-reengaged in accordance with Article 14, and then the

2    union engaged in the Article 15 process.

3        So those were just a couple things I wanted to

4    correct.

5        THE COURT:  All right.

6        Mr. Robbins, anything further?  And you don't have to

7    if you don't have anything further.

8        MR. ROBBINS:  I was just going to say, your Honor,

9    nothing further unless you have questions for me.

10        THE COURT:  All right.  Okay.

11        So, here's what we're going to do.  I do believe that

12    the --

13        MR. LEWIS:  Can I --

14        THE COURT:  Yes.  Mr. Lewis, is that you?

15        MR. LEWIS:  Yes.  Mr. Lewis.

16        So, just to what Ms. Davis just said, that the

17    plaintiffs were put on leave because of complaints, I don't

18    know that to be true.  It wasn't what we were told when they

19    were put on leave.  And everything that we know about the

20    investigation suggests it was started after they were put on

21    leave and that there were no complaints at the time they were

22    put on leave.

23        But this, again, points to the sort of informational

24    disadvantage that we have.  The defendants have the

25    Philharmonic's full report and the executive summary.  The

P2SEMUCC

1    plaintiffs have never seen the report and have only been

2    allowed to read the executive summary once and not take any

3    notes.

4              THE COURT:  Okay.  Understood.  All right.

5              So, here's what we're going to do.  The plaintiffs

6    will be permitted to file amended complaints within two weeks.

7    I believe that, based on everything I've heard here today and

8    based on the parties' submissions, the terrain here in this

9    case has changed with the subsequent events that have

10   transpired subsequent to the filing of the pending complaint

11   and the pending motions.  So, you'll be permitted to file

12   amended complaints within two weeks.

13             As I said to Mr. Hyman, focus on the claims that you

14   feel strongest about.  In particular, consider whether a single

15   hybrid claim against the defendants based on the collective

16   bargaining agreement would suffice.

17             If you want to allege the breach of a contract or

18   another document, then, in your complaint, you should quote the

19   language that you are saying was breached.  And if there's no

20   language that directly supports your right to relief, you

21   should deal with that issue directly or drop that issue if you

22   can't.  And you should also be mindful of what we've said about

23   the awards, claims that seem to be preempted, and the

24   discrimination claims, which we addressed.

25             The pending motions to dismiss will be denied as moot

P2SEMUCC

1    given the superseding complaints that will be filed.  The

2    pending motion for summary judgment in Mr. Muckey's case and

3    the motion for partial summary judgment in Mr. Wang's case are

4    denied.  Plainly, these claims, even if the legal challenges

5    made by the defendants are unsuccessful, raise a variety of

6    factual issues, and so there's no grounds at this juncture for

7    summary judgment in the plaintiff's favor, especially

8    considering that they bear the burden of proof on the claims

9    that they have asserted, so those motions are denied.

10           Finally, the parties should really consider sitting

11    down to try to settle this.  There are very experienced private

12    mediators who could really help.  And if you want the Court's

13    help, you can jointly ask and I will do what I can to try to

14    assist the parties, and I can certainly refer you to a

15    magistrate judge for a settlement conference.  But given the

16    issues and given how experienced the union and the orchestra

17    and plaintiff's counsel are at settling cases of this kind, I

18    am sure that there is a well-versed private mediator who could

19    really perhaps help you avoid further proceedings here in this

20    unique situation, and so I would just invite the parties to

21    meet and confer with each other to see if there's any daylight

22    to try to settle this.

23           A lot of times people don't want to be the first one

24    to suggest settlement because it makes you seem weak.  I am

25    ordering you to discuss with each other whether that is an

P2SEMUCC

```
 1   option, so no one is going to seem weak by raising the issue of

 2   potential settlement.

 3          With that, before we adjourn, anything further from

 4   either side?

 5          MR. HYMAN:  Just --

 6          MS. DAVIS:  Thank you, your Honor, for your time.

 7          I'm sorry.  This is Susan Davis.

 8          We just wanted to thank the Court for your time.

 9          THE COURT:  All right.  Thank you, Ms. Davis.

10          Anything further?

11          MR. LEWIS:  Yes.  This is Alan Lewis.

12          Just with respect to the two weeks within which to

13   filed amended complaints, I would ask for more time for a

14   combination of reasons.  My father is very seriously ill and

15   I'm spending a lot of my time there, and I have a number of

16   deadlines within the next two weeks.  While the work on the

17   amended complaint is well ongoing, as you would imagine, given

18   everything else that I have in my life in the next two weeks, I

19   just don't think that's realistic for Mr. Wang.  We would ask

20   for four weeks.

21          THE COURT:  All right.

22          Defendants, any objection to that timeline?  I think

23   that it's fine here under the circumstances.  But any issues

24   that you see on your end?

25          MR. ROBBINS:  This is Howard Robbins.
```

P2SEMUCC

1            No objection.

2            MS. DAVIS:  No, your Honor.

3            THE COURT:  All right.  Okay.  So, we'll do four

4    weeks.

5            And thank you very much for your appearances here.  I

6    apologize for having to reschedule this at the last minute.

7            Please have a great weekend.

8            With that, we are adjourned.

9            (Adjourned)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25