UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
                                     :

LIANG WANG,                              :

                      Plaintiff,         :

                 vs.                :  Case No.
                                     :  1:24-cv-03356 (AS) (RWL)
THE PHILHARMONIC SYMPHONY SOCIETY    :  [Rel: Case No. 1:24-cv-03348
OF NEW YORK, INC. AND ASSOCIATED       :  (AS)(RWL)]
MUSICIANS OF GREATER NEW YORK, LOCAL   :
802, AMERICAN FEDERATION OF MUSICIANS, :

                  Defendants.      :
                                       :
                                       :
                                       :
------------------------------------------------------------------ x

 

**REPLY MEMORANDUM OF LAW OF DEFENDANT
ASSOCIATED MUSICIANS OF GREATER NEW YORK, LOCAL 802,
AMERICAN FEDERATION OF MUSICIANS IN FURTHER SUPPORT
<u>OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT</u>**

 

                                      Susan Davis
                                       Olivia R. Singer
                                       COHEN, WEISS and SIMON LLP
                                       909 Third Avenue, 12th Floor
                                       New York, New York 10022-4869
                                       Tel: (212) 563-4100
                                       sdavis@cwsny.com
                                       *Attorneys for Defendant Associated Musicians*
                                       *of Greater New York, Local 802, American*
                                       *Federation of Musicians*

10217659.6

**TABLE OF CONTENTS**

Page(s)

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ..................................................................................................................... 1

I.     PLAINTIFF FAILS TO PLAUSIBLY STATE A CLAIM FOR BREACH OF
THE COLLECTIVE BARGAINING AGREEMENT. ....................................................... 1

II.    PLAINTIFF FAILS TO PLAUSIBLY STATE A CLAIM FOR BREACH OF
THE DUTY OF FAIR REPRESENTATION. ................................................................. 4

III.   PLAINTIFF FAILS TO STATE A PLAUSIBLE SEX DISCRIMINATION
CLAIM. ................................................................................................................. 10

CONCLUSION ................................................................................................................ 11

WORD COUNT CERTIFICATION ................................................................................... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aeronautical Indus. Dist. Lodge 91 of the Int'l Assoc. of Machinists & Aerospace Workers, AFL–CIO v. United Techs. Corp.*,
230 F.3d 569 (2d Cir. 2000)..................................................................................................3

*Air Line Pilots Ass'n, Int'l v. O'Neill*,
499 U.S. 65 (1991).................................................................................................................1

*Ali-Hasan v. St. Peter's Health Partners Med. Assocs., P.C.*,
No. 22-2669, 2023 WL 7320860 (2d Cir. Nov. 7, 2023) ......................................................10

*Beckman v. U.S. Postal Service*,
79 F. Supp. 2d 394 (S.D.N.Y. 2000)......................................................................................4

*Bejjani v. Manhattan Sheraton Corp.*,
567 F. App'x 60 (2d Cir. 2014) .............................................................................................7

*Bennett v. Local 66*,
958  F.2d 1429, 1435 (7th Cir. 1992)......................................................................................8

*C&D Techs., Inc. v. Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers*,
303 F. Supp. 2d 468 (S.D.N.Y. 2004)....................................................................................4

*Colletta v. Northwell Health*,
No. No. 17-CV-6652-SJF-GRB (E.D.N.Y. Aug. 19, 2019) ...................................................9

*Cote v. Eagle Stores, Inc.*,
688 F.2d 32 (7th Cir. 1982) ...................................................................................................9

*Drinks-Bruder v. Niagara Falls Police Club*,
No. 22-CV-268-LJV, 2023 WL 2043833 (W.D.N.Y. Feb. 16, 2023)....................................7

*Garcia v. Zenith Elecs. Corp.*,
58 F.3d 1171 (7th Cir. 1995) .................................................................................................7

*Jones v. Interlake S.S. Co.*,
No. 20-2210, 2021 .................................................................................................................8

*Lewis v. Tuscan Dairy Farms, Inc.*,
25 F.3d 1138 (2d Cir. 1994)...................................................................................................8

*Linton v. UPS*,
15 F.3d 1365 (6th Cir. 1994) .................................................................................................8

*Martin v. Curran*,
 303 NY 276 (1951) ...............................................................................................11

*Messina v. 1199 SEIU United Healthcare Workers E.*,
 453 F. App'x 25 (2d Cir. 2011) ............................................................................6

*Muckey v. The Philharmonic-Symphony Society of New York, Inc., et al., 1:24-cv-03348-AS*,
 Docket No. 85 .......................................................................................................2

*Muldrow v. City of St. Louis, Missouri*,
 144 S. Ct. 967 (2024)............................................................................................3

*Murray v. Nine Mile Point Nuclear Station*,
 No. 07-CV-0147-GTS-GHL, 2010 WL 3909472 (N.D.N.Y. Sept. 30, 2010) .........8

*Naprstek v. Marriott Int'l*,
 No. 21-CV-08560-CM, 2024 WL 113804 (S.D.N.Y. Jan. 10, 2024)......................7

*Palladino v. CNY Centro, Inc.*,
 23 N.Y.3d 140 (2014) ..........................................................................................11

*Parkinson v. 1199 SEIU Nat'l Benefit Fund*,
 No. 22-CV-01004-HG-RER, 2023 WL 1368010 (E.D.N.Y. Jan. 31, 2023)............9

*Ramey v. Dist. 141*,
 378 F.3d 269 (2d Cir. 2004)...................................................................................8

*Rupe v. Spector Freight Sys., Inc.*,
 679 F.2d 685 (7th Cir. 1982) .................................................................................5

*Santiago v. ACACIA Network, Inc.*,
 634 F. Supp. 3d 143 (S.D.N.Y. 2022)...................................................................11

*Scales v. New York Hotel & Motel Trades Council, Loc. 6*,
 No. 21-cv-8142 ......................................................................................................5

*Smith v. Brookhaven Science Associations, LLC*,
 473 F. Supp. 3d 159 (E.D.N.Y. 2020) ...................................................................9

*Smith v. United Parcel Serv., Inc.*,
 96 F.3d 1066 (8th Cir. 1996) .................................................................................7

*Spellacy v. Airline Pilots Ass'n-Int'l*,
 156 F.3d 120 (2d Cir. 1998)...............................................................................5, 7

*Tavarez v. 32BJ*, No. 18-CV-8517-CM, 2019 WL 5683370, at *2 (S.D.N.Y. Nov. 1, 2019) ...............................................................................................................5

*Taylor v. Rohr Indus., Inc.*,
    8 F.3d 30, 1993 WL 385510 (9th Cir. 1993) ...........................................................................9

*Vaughn v. Air Lines Pilots Ass'n, Int'l*,
    604 F.3d 703 (2d Cir. 2010)...............................................................................................7

**Statutes**

Civil Rights Act § 2000e-2(a)(1) ...................................................................................3

**PRELIMINARY STATEMENT**

In evaluating whether a union breached its duty of fair representation ("DFR") in not pursuing a grievance, a court should not "substitute its own view" for that of the union even if, in hindsight, the union could have made a different decision. *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 78 (1991). Here, completely ignoring the "highly deferential" standard, *id.*, that must be afforded to Local 802 in its representational duties, Plaintiff requests that this Court do just that.

Plaintiff's opposition (Docket No. 119 ("Opp.")) is three-fold. *First*, he claims that the Society violated the collective bargaining agreement ("CBA") and a 2020 arbitration award (the "Award") by "suspending" him based on the allegations in the Award, and by issuing him a notice of non-reengagement "without a reason" rather than terminating him for just cause under Article VII. *Second*, disagreeing with the Union's interpretation of Article XIV of the CBA, he claims that the Union breached its DFR by declining to arbitrate his "suspension" and non-reengagement, by relying on the "truth" of the investigator's report rather than doing an independent investigation, and by certain procedural decisions. *Third*, he contends that he has pled plausible sex discrimination claims despite not identifying a single discriminatory comparator. Even accepting all of Plaintiff's factual allegations as true, he has failed to plausibly state a claim against Local 802.

**ARGUMENT**

I.   **PLAINTIFF FAILS TO PLAUSIBLY STATE A CLAIM FOR BREACH OF THE COLLECTIVE BARGAINING AGREEMENT.**

Plaintiff argues that because the Society did not include the reasons for its decision in his non-reengagement notice and because his paid administrative leave began before the Society announced its investigation, the Court must infer that his so-called "suspension" and

dismissal were based on the allegations underlying the Award. Opp. 14, 46. Neither the CBA

nor federal law, however, requires the Society to state the reasons for dismissal in its non-

reengagement notice. Additionally, Plaintiff (and Muckey) concede that immediately after the

*Vulture* article's release and *before* their paid leave, numerous Orchestra members raised safety

concerns, including concerns about Plaintiff's (and Muckey's) sexual misconduct. FAC ¶¶38,

41, 49; *see also Muckey v. The Philharmonic-Symphony Society of New York, Inc., et al., 1:24-*

*cv-03348-AS*, Docket No. 85 ("Muckey FAC") ¶¶55, 58, 64, 66, 77.[1] He also admits that the

investigation, which was initiated days after he was put on administrative leave and significantly

before his non-reengagement, FAC ¶¶36, 49, uncovered "a laundry list" of new allegations of

sexual misconduct, Opp. 41, FAC ¶105. Although Plaintiff labels the investigator's findings as

"boorish," warranting "no more than a trip to the human resources office," Opp. 41, the

investigator, after interviewing 92 witnesses (69 Orchestra members and 29 other individuals),

concluded that Plaintiff had engaged in a "persistent pattern of sexual harassment," including

"rape." Docket No. 107 ("Lynam Decl.") Decl., Ex. F at 2. This timeline of events and the

investigator's findings foreclose any claim that Plaintiff's administrative leave and dismissal

were based on the Award's allegations.

Moreover, it is undisputed that the Award only required the Society to reinstate

Plaintiff in 2020. FAC ¶¶27–28. It placed no limits on the Society's right to act prospectively

in response to *subsequent events*. Docket No. 110 ("Union Br.") 13–14. Here, in response to

newly voiced safety concerns, the Society placed Plaintiff on paid administrative leave and

retained an independent professional to "investigate new allegations of sexual harassment,

---

[1] Plaintiff expressly incorporated by reference all factual allegations in Muckey's opposition. Opp. 12 n.2.

violence and/or abuse alleged to have been committed by any musicians employed by the

Philharmonic."  FAC ¶¶38, 41, 49; Muckey FAC ¶¶55, 58, 64, 66, 77, 96.  After interviewing

more than 90 witnesses, many of whom testified about substantial, *new* sexual abuse allegations

involving Plaintiff that the investigator credited, the Society issued Plaintiff a notice of non-

reengagement.  FAC ¶¶89, 90, 105.  Under these circumstances, there is no plausible argument

that a breach of the Award occurred.

Plaintiff's assertion that the Society breached the CBA by "suspending" and

dismissing him without "just cause" also is baseless.  *First*, a paid administrative leave is not a

"disciplinary measure" subject to the "just cause" requirements of the CBA.  Union Br. 14–16.

The Title VII cases Plaintiff cited in his original opposition are inapposite, as each involves an

analysis of whether an employer's conduct constituted "an adverse employment action" under

§ 2000e-2(a)(1) of the Civil Rights Act—an entirely distinct statutory text.  *See*, *e.g.*, *Muldrow v.*

*City of St. Louis, Missouri*, 144 S. Ct. 967 (2024).

*Second*, Plaintiff imbues Article XIV with a "just cause" requirement where none

exists.  Under the plain language of the CBA, which is uncontradicted by past practice or

bargaining history, Article XIV provides an alternate mechanism to dismiss a musician (with a

year of severance pay) and without the requirement of establishing just cause.  Both Local 802

and the Society have interpreted Article XIV consistent with its plain language, and this

interpretation is entitled to judicial deference.  *See Aeronautical Indus. Dist. Lodge 91 of the Int'l*

*Assoc. of Machinists & Aerospace Workers, AFL–CIO v. United Techs. Corp.*, 230 F.3d 569, 576

(2d Cir. 2000) ("When courts interpret CBAs, traditional rules of contract interpretation apply . .

. . When provisions in the agreement are unambiguous, they must be given effect as written.");

*see also Beckman v. U.S. Postal Service*, 79 F. Supp. 2d 394, 404 (S.D.N.Y. 2000) (union's interpretation of CBA should be "afforded great deference").

Whether the Society had "just cause" to dismiss Plaintiff under Article VII is irrelevant to whether the Society breached the CBA by utilizing Article XIV. Opp. 24; Docket No. 114 ("Davis Decl."), Ex. A at 20. Nothing in either Article XIV or Article VII precludes the Society from utilizing Article XIV in circumstances that also could be considered "disciplinary." Opp. 9. The fact that the Society had not previously invoked this provision does not affect its right to do so here. *See C&D Techs., Inc. v. Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers*, 303 F. Supp. 2d 468, 474 (S.D.N.Y. 2004) ("past practice may not defeat clear and unambiguous contract language").

Finally, Plaintiff cannot plausibly assert that the Society invoked Article XIV "without a reason." Opp. 27. Plaintiff concedes that his non-reengagement immediately followed the conclusion of the Society's investigation, which revealed at least eleven newly reported incidents of sexual misconduct. FAC ¶¶4; 105. The Society publicly stated that it chose not to re-engage Plaintiff because "an inquiry found credible claims against [him] of sexual assault and harassment." FAC ¶17. There is no plausible basis to assert that the independent investigator's findings were insufficient to support the Society's decision to dismiss Plaintiff, and thus no plausible CBA breach occurred.

## II.   PLAINTIFF FAILS TO PLAUSIBLY STATE A CLAIM FOR BREACH OF THE DUTY OF FAIR REPRESENTATION.

Plaintiff cannot plausibly assert that Local 802 acted arbitrarily in declining to process his grievance because there was no meritorious grievance to process. The Union rationally concluded that Plaintiff's paid leave and non-reengagement did not violate the Award because each was based on events that occurred *after* those underlying the Award, *i.e.*, safety

4

complaints from Orchestra members and the independent investigator's credited allegations of

new sexual misconduct.  FAC ¶¶57, 105.  The Union made a reasoned judgment that because

paid leave pending an investigation is distinct from a disciplinary suspension, the CBA's "just

cause" provisions were inapplicable.  Union Br. 14–16.  With respect to his non-reengagement,

after carefully reviewing the relevant CBA provisions and the investigator's report, the Union

determined that the CBA provides two distinct dismissal routes *and* that the Society had

appropriately employed Article XIV in this case.  Union Br. 16.

Plaintiff's disagreement with the Union's contractual interpretation does not

render it arbitrary, discriminatory or in bad faith, even if this Court would have interpreted it

differently.  In this and other Circuits, disagreement with a union's contractual interpretation

does not establish a DFR breach.  *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 128 (2d

Cir. 1998); *see also Rupe v. Spector Freight Sys., Inc.*, 679 F.2d 685, 693 (7th Cir. 1982)

(dismissing DFR claim where union's interpretation of CBA, "while not necessarily correct, was

clearly reasonable"); *Connor v. Elmhurst Dairy*, Inc., No. 13-CV-4769 (ENV) (LB), 2015 WL

5159185, at *7 (E.D.N.Y. Aug. 17, 2015) (rejecting DFR claim where union's interpretation of

contract was reasonable).

*Scales v. New York Hotel & Motel Trades Council, Loc. 6*, No. 21-cv-8142 -JPC,

2023 WL 1779617 (S.D.N.Y. February 6, 2023), *aff'd*, 2025 WL 883053 (2d Cir. Mar. 21,

2025));, on which Plaintiff relies, is in accord.  There, the union decided not to further investigate

or file a grievance because it decided, "after consideration," not to pursue the claim.  *Id*. at *7

(alteration omitted).  In dismissing the DFR claim, the court held that a union's decision, "correct

or not," is not arbitrary if it involves a reasonable interpretation of the CBA.  *Id.* (citing *Tavarez

v. 32BJ*, No. 18-CV-8517-CM, 2019 WL 5683370, at *2 (S.D.N.Y. Nov. 1, 2019) (A union may

"make discretionary decisions and choices, even if those judgments are ultimately wrong.")); *see also Messina v. 1199 SEIU United Healthcare Workers E.*, 453 F. App'x 25, 27 (2d Cir. 2011) (same).  Such is the case here.

Plaintiff's conclusory statement that the Union "admitted" that Article XIV required just cause but "capitulat[ed]" to an "end run" around this requirement in his case is completely unsupported.  Opp. 26, 31; FAC ¶¶122, 230.  The Executive Board's decision (Davis Decl., Ex. H) demonstrates that Local 802 did not agree with the Society to make "an exception to their normal practices."  FAC ¶121.  Rather, it sought the Society's assurance that its invocation of Article XIV was based on the specific circumstances in this case—including credited allegations of predatory conduct by Plaintiff and the widespread concerns of a supermajority of the bargaining unit—and that it had not used, and would not use, Article XIV to "supplant or do an end-run" around the "just cause" requirements for dismissals under Article VII, either in this case or in the future.  Davis Decl., Ex. H at 4.[2]

In short, the facts alleged by Plaintiff demonstrate that, after due consideration, Local 802 reasonably determined that neither Plaintiff's placement on paid administrative leave nor his non-reengagement violated the Award or the CBA.  Consequently, there was no basis for initiating an enforcement action or an arbitration of a meritless grievance.

*Second*, Local 802's decision not to arbitrate Plaintiff's non-reengagement was not "discriminatory." Opp. 36, or made in bad faith.  Plaintiff does not allege any facts even inferring that Local 802 treated him differently from any other bargaining unit member or bore

---

[2] Plaintiff misleadingly inserted the phrase "[in the future]" into his quotation of this portion of Local 802's decision, adding a prospective temporal element where none existed.  Opp. 10.

him any ill will.[3]  *See e.g.*, *Naprstek v. Marriott Int'l*, No. 21-CV-08560-CM, 2024 WL 113804, at \*12 (S.D.N.Y. Jan. 10, 2024) (no DFR breach where no discriminatory comparators); *see also Smith v. United Parcel Serv., Inc.*, 96 F.3d 1066, 1069 (8th Cir. 1996) (same).  Muckey, the only other bargaining unit member Plaintiff identifies, received the identical treatment.  FAC ¶69.

Plaintiff's conclusory claim that the Union acquiesced to the "public outcry," Opp. 33–34, is unsupported.  Although he belittles Local 802's consideration of his colleagues' safety concerns, he does not deny that they raised them.  Opp. 42–44, FAC ¶83.  Consequently, there is no plausible claim that the Union's decision not to pursue arbitration was "unrelated to legitimate union objectives," *Lockridge*, 403 U.S. at 301, or the result of "an improper intent, purpose, or motive," *Spellacy*, 156 F.3d at 126.  The Second Circuit has repeatedly held that unions may balance competing concerns when deciding whether to arbitrate a grievance.  *See, e.g.*, *Vaughn v. Air Lines Pilots Ass'n, Int'l*, 604 F.3d 703, 712 (2d Cir. 2010) ("no requirement that unions treat their members identically as long as their actions are related to legitimate union objectives"); *Bejjani v. Manhattan Sheraton Corp.*, 567 F. App'x 60, 63 (2d Cir. 2014) (even if union's agreement with employer disadvantaged some members, "it was hardly irrational, dishonest, or unrelated to Union objectives . . . given its benefits for other Union members"); *Drinks-Bruder v. Niagara Falls Police Club*, No. 22-CV-268-LJV, 2023 WL 2043833, at \*11 (W.D.N.Y. Feb. 16, 2023) (legitimate union objectives include "promoting [the] safety" of the bargaining unit).

In fact, unions may consider the interests of the whole bargaining unit, even where they conflict with those of an individual employee.  *See e.g.*, *Garcia v. Zenith Elecs.*

---

[3] The fact that Local 802 took Plaintiff's sexual misconduct case to arbitration in 2018, FAC ¶26, belies the notion that it treated him discriminatorily or in bad faith.

*Corp.*, 58 F.3d 1171, 1175–76 (7th Cir. 1995) ("interests of individual employees sometimes

may be compromised for the sake of the larger bargaining collective" and union may consider

"effect on the larger collective bargaining unit in making various strategic decisions during the

grievance procedure").[4]

> *Third*, the alleged deficiencies in the dismissal review process do not plausibly

state a DFR breach.  Article XV expressly allows the Union to evaluate the "propriety" of a

termination under Article XIV, Davis Decl., Ex. A at 20, which is what occurred here.  And it

was eminently reasonable for the Union to request and evaluate the investigator's report—which

detailed interviews with 92 witnesses and made resultant credibility determinations—in order to

make a reasoned decision.

> Likewise, Local 802 did not breach its DFR by signing a confidentiality

agreement as a condition of reviewing the report.  *See e.g.*, *Murray v. Nine Mile Point Nuclear

Station*, No. 07-CV-0147-GTS-GHL, 2010 WL 3909472, at *14 (N.D.N.Y. Sept. 30, 2010) (no

DFR where union and employer entered confidentiality agreement).  The agreement only

allowed the Union to use the report in the dismissal review process, and restricted disclosure to

Plaintiff (and Muckey), the dismissal review committee ("DRC"), and the Executive Board, all

under identical conditions.  Opp. 38; August 19, 2025 Declaration of Susan Davis, Ex. A at 1–3.

---

[4] The cases cited by Plaintiff are inapposite.  *See Jones v. Interlake S.S. Co.*, No. 20-2210, 2021 WL 3719355, at *6 (6th Cir. Aug. 23, 2021) (no rational basis for union agreeing to exclude some employees from just cause protection); *Ramey v. Dist. 141*, 378 F.3d 269, 277 (2d Cir. 2004) (union acted out of pure animus in stripping plaintiffs' seniority); *Lewis v. Tuscan Dairy Farms, Inc.*, 25 F.3d 1138, 1142 (2d Cir. 1994) (union president concealed self-serving deal); *Linton v. UPS*, 15 F.3d 1365, 1372 (6th Cir. 1994) (union acknowledged grievance had merit but still refused to pursue case despite having done so for others in same situation); *Bennett v. Local 66*, 958 F.2d 1429, 1435 (7th Cir. 1992) (union, ithout justification, modified CBA for select employees).  Here, the Union's decision to arbitrate was based on a good-faith assessment of the CBA, the underlying facts, and the entire bargaining unit's interests.

Additionally, given the painstaking DRC process and Plaintiff's presentation to the Executive Board, he cannot plausibly allege that Local 802 failed to adequately investigate his dismissal or "hear his versions of events."  Opp. 39–40.  Under the DFR, unions have a duty to perform only "some minimal investigation."  *Parkinson v. 1199 SEIU Nat'l Benefit Fund*, No. 22-CV-01004-HG-RER, 2023 WL 1368010, at *5 (E.D.N.Y. Jan. 31, 2023) (no DFR breach where union's executive board reviewed evidence from employer's investigation and grievant's statement and determined arbitration would be futile); *see also Taylor v. Rohr Indus., Inc.*, 8 F.3d 30, 1993 WL 385510, at *1 (9th Cir. 1993) (no DFR breach where union representatives attended investigatory interviews conducted by employer); *Cote v. Eagle Stores, Inc.*, 688 F.2d 32, 34 (7th Cir. 1982) (no requirement that investigation be independent); *Smith v. Brookhaven Science Associations, LLC*, 473 F. Supp. 3d 159, 165 (E.D.N.Y. 2020) (no DFR breach where union relied on evidence gathered by employer's outside investigator).

Here, Local 802 provided Plaintiff with a union representative to accompany him *and his lawyer* in the investigatory interviews, Lynam Decl., Ex. F at 2 n.3, reviewed the investigatory report, FAC ¶100[5] and, without any contractual or legal obligation, let Plaintiff submit a written statement and present his case to the Executive Board.  FAC ¶110.  It had no contractual or legal duty to provide an "independent" representative or to allow Plaintiff to appear before the DRC, a rank-and-file advisory committee with no decision-making authority. If anything, the Union afforded Plaintiff substantially more input into its decision than it was legally obligated to provide.  *See e.g.*, *Colletta v. Northwell Health,* No. No. 17-CV-6652-SJF-

---

[5] While Plaintiff dislikes the report, he cannot dispute that a professional investigator made credibility determinations after interviewing scores of witnesses, including Plaintiff. Additionally, he only "categorically denies" one allegation of sexual assault, Opp. 41 n.12, while flippantly dismissing the rest as "not criminal conduct."  Opp. 41.

GRB, at *8 (E.D.N.Y. Aug. 19, 2019), *report and recommendation adopted,* No.

17CV6652SJFGRB, 2019 WL 5287961 (E.D.N.Y. Oct. 18, 2019) (DFR does not require union

to consult with or even keep grievant informed of the status of grievance).

Finally, Plaintiff's allegation that Local 802 improperly did not "settle the

dispute," Opp. 44, is baseless.  In accordance with Article XV, the Union and the DRC met with

the Society to determine if the dispute could be settled.  Opp. 44; Davis Decl., Ex. H at 3.  At the

meeting, the DRC stated that Plaintiff's dismissal was proper, and the Union then advised the

Society that the Executive Board would decide whether to pursue arbitration.  *Id.*; FAC ¶112.

No plausible DFR breach occurred merely because the Union did not settle Plaintiff's claim.[6]

## III.    PLAINTIFF FAILS TO STATE A PLAUSIBLE SEX DISCRIMINATION CLAIM.

Plaintiff urges the Court to apply a unique line of Second Circuit decisions

involving sex discrimination at academic institutions, Opp. 58, which have never been extended

beyond the academic setting, let alone to a union.  *See Ali-Hasan v. St. Peter's Health Partners*

*Med. Assocs., P.C.,* No. 22-2669, 2023 WL 7320860, at *2 (2d Cir. Nov. 7, 2023).

Even applying the academic institution test, Plaintiff fails to plausibly allege any

procedural irregularities in the dismissal review process, as there were none.  Union Br. 7–9, 18–

20.  Nor was there any public criticism of *the Union* for how it handled the sexual misconduct

allegations.  The press coverage Plaintiff cites, *see* FAC ¶¶40–43, contains no criticism of the

Union.  And Cutler's statement evinced no intent to privilege female union members over men.

---

[6] Additionally, Plaintiff acknowledges that he does not allege a DFR breach based on
Cutler's statement, but again mischaracterizes it.  Opp. 32, Union Br. 20–22.  Cutler did not say
that Plaintiff's "suspension" was "good."  Opp. 32.  Rather, taking into consideration the
interests of the Union's constituency, she praised the Society's decision to initiate an
investigation into sexual harassment at the Philharmonic.  Union Br. 20–22; *see also* Davis
Decl., Ex. C.

*Cf. Santiago v. ACACIA Network, Inc.*, 634 F. Supp. 3d 143, 153–53 (S.D.N.Y. 2022) (remark

explicitly indicated intent to privilege Puerto Rican employees).[7]

Next, seeking to avoid preemption, Plaintiff argues that his state and city

discrimination claims do not require an "in-depth, or even cursory, analysis of the provisions of

the CBA." Opp. 66. However, to determine whether Plaintiff's dismissal was based on "an

unprecedented reading of the CBA" and "was an end run around the CBA's just cause

requirements," FAC ¶¶230, the Court must necessarily interpret the CBA.

Finally, Plaintiff misreads the holding in *Palladino v. CNY Centro, Inc.*, 23

N.Y.3d 140, 150–51 (2014), which held that *Martin v. Curran*, 303 NY 276 (1951) foreclosed a

statutory duty of fair representation claim.

## **CONCLUSION**

For all the foregoing reasons, the Court should grant Local 802's motion and

dismiss the claims against it with prejudice.

---

[7] Plaintiff also misleadingly adds the word "[female]" to his quotation of the Orchestra Committee's April 15 *New York Times* statement. Opp. 5. The actual quote did not reference gender and stated simply that the Orchestra had a culture of "not taking musicians complaints seriously . . . " Davis Decl., Ex. C. In any event, the Orchestra Committee had no role in the decision not to pursue arbitration.

12

Dated: August 19, 2025
          New York, New York

                                   Respectfully submitted,

                                   */s/ Susan Davis*
                                   Susan Davis
                                   Olivia R. Singer
                                   COHEN, WEISS and SIMON LLP
                                   909 Third Avenue, 12th Floor
                                   New York, New York 10022-4869
                                   Tel: (212) 563-4100
                                   sdavis@cwsny.com
                                   *Attorneys for Defendant Associated Musicians of*
                                   *Greater New York, Local 802, American*
                                   *Federation of Musicians*

13

## WORD COUNT CERTIFICATION

Pursuant to Local Rule 7.1(c) of the United States District Courts for the Southern

and Eastern Districts of New York, the undersigned, an attorney admitted to practice in this

Court, hereby certifies that, excluding the parts of the document exempted by Rule 7.1(c), this

document contains 3,356 words and therefore complies with the Rule's word-count limitation.

Dated:  August 19, 2025
        New York, New York

                                        */s/ Susan Davis*_____